# EXHIBIT C

PAMELA PALMITER,                         :   IN THE COURT OF COMMON PLEAS
                                         :   OF LACKAWANNA COUNTY
                        Plaintiff        :
                                         :
                    vs.                  :   CIVIL ACTION - LAW
                                         :
                                         :
COMMONWEALTH HEALTH SYSTEMS,             :
INC. d/b/a COMMONWEALTH HEALTH,          :
PHYSICIANS HEALTH ALLIANCE d/b/a         :
COMMONWEALTH HEALTH, and                 :
MOSES TAYLOR HOSPITAL d/b/a              :
COMMONWEALTH HEALTH,                     :
                                         :
                                         :
                        Defendants       :   NO.  19 CV 1315


## MEMORANDUM AND ORDER

NEALON, J.

    The employers' preliminary objections in this employment litigation raise an issue

of first impression that has not yet been addressed by a state or federal court in

Pennsylvania: whether Section 2103(b)(1) of the Medical Marijuana Act ("MMA"), 35

P.S. § 10231.2103(b)(1), which states that "[n]o employer may discharge…or otherwise

discriminate or retaliate against an employee…solely on the basis of such employee's

status as an individual who is certified to use medical marijuana," creates a private cause

of action for a medical assistant who was terminated by her health care employers for

prescribed use of medical marijuana while not working at her place of employment?  The

employers have filed a demurrer to the employee's wrongful termination claim under Section 2103(b)(1) the MMA, and contend that the Department of Health ("the Department") has the exclusive authority to enforce the MMA's provisions, such that the employee's sole remedy for her firing is to seek the assessment of a civil penalty by the Department on the employers. They likewise demur to the employee's common law wrongful discharge claim on the basis that she has not articulated a clear mandate of public policy that was violated by her discharge. The employers also challenge the legal sufficiency of the employee's claims for breach of oral contract and invasion of privacy/intrusion upon seclusion.

The MMA grants broad administrative power to the Department with respect to certified medical marijuana users, registered physicians, medical marijuana organizations, independent testing laboratories, health care medical marijuana organizations, academic clinical research centers, and clinical registrants, and reflects a legislative intent to empower the Department to exercise regulatory control over those people and entities that have opted to participate in Pennsylvania's "Medical Marijuana Program" and thereby submit to the administrative oversight of the Department. However, nothing in the MMA or the promulgated regulations vests the Department or any other state agency with the authority to enforce Section 2103(b)(1) against private employers that have not chosen to voluntarily take part in that program, and those anti-discrimination provisions would be rendered meaningless if an aggrieved employee could not pursue a private cause of action and seek to recover compensatory damages from an employer that violates Section 2103(b)(1). Recognition of an implied right of action under Section 2103(b)(1) is consistent with the MMA's stated purpose of providing safe and effective access to

- 2 -

medical marijuana for eligible patients, while simultaneously protecting them from adverse employment treatment in furtherance of the legislative intent in Section 2103(b)(1). Therefore, the employers' demurrer to the employee's private cause of action based upon Section 2103(b)(1) will be overruled.

Similarly, since the employee has alleged that she was terminated for a reason expressly prohibited by the MMA, she has identified a clear mandate of public policy that was implicated by her firing, as a result of which the employers' preliminary objection to the legal sufficiency of the employee's alternative claim for common law discharge will be overruled. However, inasmuch as the employee has not alleged sufficient additional consideration to negate the presumption of at-will employment and support a claim for breach of contract, the demurrer to the employee's breach of oral employment contract claim will be sustained. Additionally, the employee's contention that her employers discovered the identity of her treating physician from their review of her medical records is insufficient as a matter of law to sustain her claims for invasion of privacy/intrusion on seclusion, and the employers' demurrers to those claims will also be sustained.

## I.  FACTUAL BACKGROUND

Plaintiff, Pamela Palmiter ("Palmiter"), avers that she became employed as a medical assistant by Medical Associates of NEPA ("Medical Associates") on January 9, 2017. (Docket Entry No. 16 at ¶¶ 1, 9). Because of a "medical condition of chronic pain, chronic migraines, and persistent fatigue," she reportedly "became a patient able to use medical marijuana through[out] the Commonwealth of Pennsylvania for her medical conditions" in December 2018. (Id. at ¶¶ 10-11). Palmiter maintains that she

- 3 -

immediately informed Medical Associates, which was comprised of Tracy Galardi, M.D., Michael G. Gilhooley, M.D., and Daniel Kazmierski, M.D., "that her doctor authorized her to use medical marijuana to treat her medical conditions." (Id. at ¶ 12).

While Medical Associates was in the process of being acquired by Physicians Health Alliance ("PHA"), Moses Taylor Hospital ("Moses Taylor"), and Commonwealth Health Systems, Inc. ("Commonwealth Health"), Palmiter was allegedly "told that she would be grandfathered in related to Medical Associates' acceptance of the use of medical marijuana off the job site for treatment of her medical conditions." (Id. at ¶ 13). It is further averred that "[i]n November/December 2018, Dr. Gilhooley and Dr. Kazmierski stated that everything would be fine related to [Palmiter's] getting approval for medical marijuana and her continuing to work for [PHA, Moses Taylor, and Commonwealth Health]." (Id. at ¶ 22). Palmiter asserts that "[o]n or about January 2019, [Medical Associates'] Office Manager, Pam Doto, told [Palmiter] that everything would stay the same [and] she would keep her job and her seniority." (Id. at ¶ 23).

On January 11, 2019, Palmiter apparently "applied for the position of Certified Medical Assistant," and on January 15, 2019, she was notified via email that she was "a new employee of Moses Taylor Hospital." (Id. at ¶¶ 14-15, Exhibit A). On January 22, 2019, Palmiter "was scheduled to undergo a drug test related to her employment with" PHA, Moses Taylor, and Commonwealth Health, and "[a]t that time, [she] reported to the lab that [she] was on prescribed medical marijuana." (Id. at ¶¶ 16-17). On January 25, 2019, Palmiter also "faxed a copy of her certification that Dr. [Christopher] Connor approved her for medical marijuana to treat her medical conditions." (Id. at ¶ 18).

- 4 -

Palmiter contends that on January 29, 2019, she "received a call" from Jessica Vaccaro of PHA, Moses Taylor, and Commonwealth Health advising her that her employers "would not allow [her] to work" for them based upon her drug test. (Id. at ¶ 19). On February 21, 2019, Palmiter commenced this litigation against PHA, Moses Taylor, and Commonwealth Health asserting a single claim for violation of Section 2103(b) of the MMA. (Docket Entry No. 1 at ¶¶ 9-19). She further maintains that on March 1, 2019, she was advised by her treating physician, Dr. Galardi, that PHA, Moses Taylor, and Commonwealth Health had "informed Dr. Galardi that she could no longer treat [Palmiter] because of the lawsuit and [that] it was a conflict of interest." (Docket Entry No. 16 at ¶ 29).

In her third amended complaint, Palmiter advances five causes of action for "Violation of Medical Marijuana Act," "Breach of Contract," "Invasion of Privacy," "Violation of Public Policy," and "Intrusion on Seculusion (*sic*)." (Id. at pp. 3, 5-6, 8-9). She first asserts that her termination violated Section 2103(b) of the MMA which provides that no employer may discharge or otherwise discriminate against an employee "solely on the basis of such employee's status as an individual who is certified to use medical marijuana." (Id. at ¶ 20) (quoting 35 P.S. § 10231.2103(b)). Her breach of contract claim contends that she relied upon the foregoing promises by Dr. Gilhooley, Dr. Kazmierski, and Office Manager Pam Doto that her prescribed use of medical marijuana would not affect her employment status, that "[t]here was consideration for the oral promises since [she] continued to work at the medical facility," and that PHA, Moses Taylor, and Commonwealth Health "breached their oral promises since [she] was not allowed to work for [them]." (Id. at ¶¶ 22-25, 27).

- 5 -

In Count III of the third amended complaint, Palmiter references her alleged conversation with Dr. Galardi on March 1, 2019, and claims that PHA, Moses Taylor, and Commonwealth Health "invaded [her] privacy when they accessed her medical records to see who was her medical treating physicians and direct[ed] them to no longer treat [her]." (Id. at ¶ 31). Palmiter's cause of action asserting a "public policy" violation likewise cites Section 2103(b) of the MMA, avers that it "is illegal to terminate an employee or refuse to hire an employee simply because she is prescribed medical marijuana," and posits that "it is a violation of public policy to terminate or fail to hire an employee because she tests positive for the use of prescribed medical marijuana and exercises her statutory rights under the MMA." (Id. at ¶¶ 39-40, 42). Last, Palmiter's intrusion upon seclusion claim is premised upon her assertion that the drug testing policy of PHA, Moses Taylor, and Commonwealth Health "required her to disclose her private use of medical marijuana and her medical conditions," "invaded [her] private, medical[ly] authorized use of medical marijuana," and "improperly intruded on [her] private medical conditions and authorized medical marijuana use." (Id. at ¶¶ 45-47).

PHA, Moses Taylor, and Commonwealth Health have filed preliminary objections in the nature of a demurrer seeking to dismiss the five causes of action asserted by Palmiter on the grounds of legal insufficiency.[1] (Docket Entry No. 18). First, they demur

---

[1] In their preliminary objections, PHA, Moses Taylor, and Commonwealth Health identify themselves as "Scranton Quincy Clinic Company, LLC d/b/a Physicians Health Alliance and Scranton Quincy Hospital Company, LLC d/b/a Moses Taylor Hospital." (Docket Entry No. 18 at p. 1). On December 31, 2011, Moses Taylor was purchased by Community Health Systems, Inc., and became affiliated with the Commonwealth Health network comprised of six hospitals, Berwick Hospital Center, First Hospital Wyoming Valley, Moses Taylor, Regional Hospital of Scranton, Tyler Memorial Hospital, and Wilkes-Barre General Hospital, that are owned by Community Health Systems, Inc. *See* Venosh v. Henzes, 31 Pa. D. & C. 5th 411, 417 (Lacka. Co. 2013), *aff'd*, 105 A.3d 788 (Pa. Super. 2014). Following that 2011 acquisition, Moses Taylor became Scranton Quincy Hospital Company, LLC d/b/a Moses Taylor Hospital, and PHA transitioned to Scranton Quincy Clinic Company, LLC d/b/a Physicians Health Alliance. *See* Kellock v. Wilkes-Barre Hospital Company, 2018 WL 986052, at *3 (Lacka. Co. 2018); Hughes v. Wilkes-Barre Hospital Company, LLC, 2017 WL 3479383, at *17 n.1 (Lacka. Co. 2017).

- 6 -

to her claim based upon the MMA, and assert that Palmiter "cannot pursue a private right of action under the MMA" since such a remedy is not expressed or implied by the statutory language or the intent of that statute which purportedly vests the Department with the exclusive authority to enforce Section 2103(b)(1) of the MMA. (Id. at ¶¶ 27-34). Second, noting that the common law presumption of at-will employment status may only be rebutted by proper proof of an intent to create an employment contract, they seek to dismiss Palmiter's breach of contract claim on the basis that she has not alleged the requisite consideration necessary to form such a contract. (Id. at ¶¶ 36-51). Third, PHA, Moses Taylor, and Commonwealth Health submit that Palmiter has not stated a cause of action for invasion of privacy inasmuch as she "has not alleged facts that could show a substantial, highly offensive, intentional intrusion by [them]." (Id. at ¶¶ 53-81). Fourth, they challenge the viability of Palmiter's "violation of public policy" claim by arguing that her claimed exception to the at-will employment doctrine requires a "clear mandate of public policy" which demands much more than a mere termination "based on the result of a drug test." (Id. at ¶¶ 83-90). Fifth, they demur to Palmiter's "intrusion on seclusion" claim, and submit that she "has not alleged any facts that would support her contention that the drug test unduly intruded on her privacy interest." (Id. at ¶¶ 92-109).

In response, Palmiter maintains that "[t]he courts in Delaware, Arizona, Rhode Island, and Connecticut, which all have similar anti-discrimination provisions [in their medical marijuana laws], have ruled that a private cause of action exists," and contends that there is no "justification why Pennsylvania should not follow suit with Delaware, Arizona, Rhode Island, and Connecticut." (Docket Entry No. 22 at pp. 3-4, 12-13). To that end, she argues that the Department's enforcement power under Section 1308 of the

- 7 -

MMA "does not cover an unlawful discharge" that is in contravention of Section 2103(b)(1). (Id. at pp. 6-7). With respect to her breach of "oral contract for employment" claim, Palmiter asserts that she has specifically averred that representatives of PHA, Moses Taylor, and Commonwealth Health "made promises of continued employment with the same benefits" notwithstanding her medical marijuana status, and that she justifiably relied upon those assurances, thereby providing "sufficient additional consideration" to sustain her contract claim and rebut the presumption of at-will employment. (Id. at pp. 13-15). Palmiter opposes the demurrer to her invasion of privacy claim by alleging that her former employers "access[ed] her medical records to find out who her treating physician was" and "intentionally invaded her private, confidential medical history to direct her treating physician not to treat her anymore," which "conduct was 'highly offensive'…to any reasonable man." (Id. at pp. 16-18). Arguing that a public policy may be derived from the "Constitution, legislation, an administrative regulation, or a judicial decision," Palmiter posits that her "violation of public policy" claim must stand inasmuch as "an employer cannot discharge an employee because he or she exercised her statutory rights" and "became a state certified user of medical marijuana." (Id. at pp. 19-20). Finally, Palmiter contends that she has stated a cognizable claim for intrusion upon seclusion "because the drug lab shared private medical information o[f] the fact that [she] was using legalized medical marijuana." (Id. at pp. 22-23).

## II. DISCUSSION

### (A) STANDARD OF REVIEW

"Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." American Interior Construction & Blinds, Inc. v. Benjamin's Desk, LLC, 206 A.3d 509, 512 (Pa. Super. 2019). When considering preliminary objections, all material facts set forth in the challenged pleading are admitted as true, as well as all inferences reasonably deducible from those facts. John v. Philadelphia Pizza Team, Inc., 209 A.3d 380, 383 (Pa. Super. 2019). "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." Keller v. Bank of New York Mellon, 212 A.3d 52, 56 (Pa. Super. 2019). "If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections." John, supra; American Interior Construction & Blinds, Inc., supra.

### (B) PRIVATE RIGHT OF ACTION UNDER MMA

The first demurrer filed by PHA, Moses Taylor, and Commonwealth Health asserts that the MMA cannot serve as the basis for a private right of action by an employee who is discharged by an employer for lawful use of medical marijuana outside of her hours of employment. Citing federal precedent from the United States Court of Appeals for the Third Circuit, they contend that "[l]egislative intent is the 'sole touchstone' of the court's inquiry" in making that determination, and argue that "[t]here is nothing in the MMA that indicates that the General Assembly intended to create a private right of action under the MMA." (Docket Entry No. 19 at pp. 8, 11). Noting that Section 1308 of the MMA authorizes the Department "to issue civil penalties for violations of the MMA," they posit that "[t]he delegation of enforcement to the Department by the Legislature is a strong indication that the General Assembly intended to preclude private enforcement" of the

- 9 -

MMA's anti-discrimination prohibition in Section 2103(b)(1) of the MMA. (<u>Id.</u> at pp. 12, 14).

In matters involving statutory interpretation, courts must apply the Statutory Construction Act, 1 Pa.C.S. §§ 1501, *et. seq.*, "which directs us to ascertain and effectuate the intent of the General Assembly." <u>Pennsylvania Restaurant and Lodging Association v. City of Pittsburgh</u>, 211 A.3d 810, 822 (Pa. 2019) (citing 1 Pa. C.S. § 1921(a)). "As [the Supreme] Court has noted time and again, the plain language of a statute is the best indicator of its intent." <u>Reuther v. Delaware County Bureau of Elections</u>, 205 A.3d 302, 306 (Pa. 2019). Furthermore, in ascertaining the intention of the General Assembly, it must be presumed that "the General Assembly intended the entire statute to be effective and did not intend a result that is absurd, impossible of execution or unreasonable." <u>Harmon v. Unemployment Compensation Board of Review</u>, 207 A.3d 292, 304 (Pa. 2019) (citing 1 Pa.C.S. § 1922).

The language of the MMA does not expressly grant or deny a private statutory cause of action to an employee who, in violation of Section 2103(b)(1), is terminated for being certified by a physician to use medical marijuana. If statutory language does not explicitly create or foreclose a private right of action, the Supreme Court of Pennsylvania has employed the three-prong analysis derived from <u>Cort v. Ash</u>, 422 U.S. 66, 78 (1975) to determine whether a private remedy is implicit in a statute that does not expressly provide such a cause of action. *See* <u>Schappel v. Motorists Mut. Ins. Co.</u>, 594 Pa. 94, 103, 934 A.2d 1184, 1189 (2007) ("This Court has adopted a three-prong test used to determine whether a statute provides a private remedy where the statutory language is not explicit."); <u>Estate of Witthoeft v. Kiskaddon</u>, 557 Pa. 340, 346, 733 A.2d 623, 626 (1999)

- 10 -

("We believe that the <u>Cort</u> decision offers a beneficial framework within which to analyze whether the statute at issue implicitly creates a private right of action."). In the context of litigation by private parties, that test considers: (1) whether the plaintiff is one of the class for whose "especial" benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, to create or deny such a remedy; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a cause of action. <u>MERSCORP, Inc. v. Delaware County</u>, 207 A.3d 855, 870 n. 14 (Pa. 2019) (citing <u>Estate of Witthoeft</u>, 557 Pa. at 346, 733 A.2d at 626); <u>Schappell</u>, <u>supra</u> (same).[2] To resolve those questions, a comprehensive review of the MMA's legislative scheme and intent is necessary.

Pennsylvania enacted the MMA effective May 17, 2016, based upon the expressed legislative finding that medical marijuana is a "potential therapy that may mitigate suffering in some patients and also enhance quality of life." 35 P.S. § 10231.102(1). The stated intent of the MMA is to provide "a program of access to medical marijuana which balances the need of patients to have access to the latest treatments with the need to promote patient safety," to furnish "a safe and effective method of delivery of medical marijuana to patients," and to promote "high quality research into the effectiveness and

---

[2] PHA, Moses Taylor, and Commonwealth Health claim that Pennsylvania courts "[p]reviously...applied the three-part test established in <u>Cort</u>," but "have moved away from that test in recent years." (Docket Entry No. 19 at p. 8 n.5) (citing <u>NASDAQ OMX PHLX, Inc. v. PennMont Securities</u>, 52 A.3d 296 (Pa. Super. 2012)). As noted above, our Supreme Court embraced the <u>Cort</u> analysis in <u>Schapell</u> and <u>Estate of Witthoeft</u>, just as the Superior Court of Pennsylvania had done in earlier rulings. <u>See</u> <u>D'Errico v. DeFazio</u>, 763 A.2d 424, 429 (Pa. Super. 2000), <u>app. denied</u>, 566 Pa. 663, 782 A.2d 546 (2001); <u>Alfred M. Lutheran Distributors, Inc. v. A. P. Weilersbacher, Inc.</u>, 437 Pa. Super. 391, 399, 650 A.2d 83, 87 (1994), <u>app. denied</u>, 540 Pa. 627, 658 A.2d 791 (1995). In <u>NASDAQ</u>, the Superior Court discussed the United States Supreme Court's subsequent modification of the <u>Cort</u> framework in addressing the existence or absence of private causes of action under federal statutes. <u>See</u> <u>NASDAQ</u>, 52 A.3d at 304-314. However, in <u>MERSCORP</u>, the Supreme Court of Pennsylvania continued to recognize the three-prong analysis in <u>Cort</u> as controlling when deciding whether a private cause of action exists under a Pennsylvania statute. <u>MERSCORP</u>, <u>supra</u>.

- 11 -

utility of medical marijuana." 35 P.S. § 10231.102(3)(i)-(iii).  The Act is divided into 14

chapters addressing a variety of relevant matters.  *See* 35 P.S. §§ 10231.101-10231.2110.

Chapter 3 of the MMA establishes the "Medical Marijuana Program" which is to

"be implemented and administered by the [D]epartment," and defines both the "lawful

use" and "unlawful use" of medical marijuana.  *See* 35 P.S. §§ 10231.301(a), 10231.303-

10231.304.  In connection with that program, the Department is vested with the authority

to:

- issue permits to "medical marijuana organizations" authorizing them "to grow, process or dispense medical marijuana;"

- register "practitioners and ensure their compliance" with the MMA;

- regulate "the growing, processing, sale and use of medical marijuana;"

- establish "an electronic database" of "activities and information relating to medical marijuana organizations, certifications and identification cards issued, practitioner registration, and electronic tracking of all medical marijuana as required" by the MMA;

- maintain "a directory of patients and caregivers approved to use or assist in the administration of medical marijuana;"

- develop a "four-hour training course for physicians, pharmacists, certified registered nurse practitioners, and physician assistants regarding the latest scientific research on medical marijuana;"

- develop "a two-hour course for the principals and employees of a medical marijuana organization" concerning "[m]ethods to recognize and report unauthorized activity, including diversion of medical marijuana for unlawful purposes and falsification of identification cards," and the "[p]roper handling of medical marijuana and recordkeeping;"

- establish "enforcement procedures, including announced and unannounced inspections of facilities of the grower/processors and dispensaries and all records of the medical marijuana organizations,"

- create "a program to authorize the use of medical marijuana to conduct medical research relating to the use of medical marijuana to treat serious medical conditions, including the collection of data and the provision of research grants;"

- develop "public outreach programs about the medical marijuana program;"

- collaborate "with other Commonwealth agencies or contract with third parties as necessary to carry out" the MMA;

- determine "the minimum number and type of medical marijuana products to be produced by a grower/processor and dispensed by a dispensary;"

- formulate "recordkeeping requirements for all books, papers, any electronic database or tracking system data, and other information of a medical marijuana organization;"

- restrict "the advertising and marketing of medical marijuana;" and

- "promulgate all regulations necessary to carry out" the MMA.

35 P.S. § 10231.301(a)-(b).  Section 302 of Chapter 3 requires the Department to

"maintain a confidential list of patients and caregivers to whom it has issued identification

cards" authorizing access to medical marijuana, with the caveat that "[a]pplications for

permits submitted by medical marijuana organizations," the "names, business addresses

and medical credentials of practitioners authorized to provide certifications to patients to

enable them to obtain and use medical marijuana," and information "relating to penalties

or other disciplinary actions taken against a medical marijuana organization or practitioner

by the [Department]" remain subject to public disclosure pursuant to the Right-to-Know

Law.  35 P.S. § 10231.302(a)-(b).

Chapter 4 addresses physicians who are registered by the Department to issue

certifications, on forms developed by the Department, to patients enabling them to use

medical marijuana to "receive therapeutic or palliative benefits" for a "serious medical

- 13 -

condition," including the practitioners' eligibility criteria, their application to the Department for approval to issue such certifications, their approval by and registration with the Department, and their prohibited acts and practices.[3]  35 P.S. §§ 10231.401 – 10231.405.  Chapter 5 concerns medical marijuana patients and their caregivers, and contains provisions governing the Department's issuance of "an identification card to a patient who has a certification approved by the [D]epartment and to a caregiver designated by the patient" entitling "the patient to obtain and use medical marijuana" or "the caregiver to obtain medical marijuana on behalf of the patient."  35 P.S. §§ 10231.501 – 10231.502, 10231.507.  Section 503.1 requires the Department to "verify the information in a patient or caregiver's application and on any renewal form," and Section 509 provides that the identification card of a patient or caregiver may be suspended or revoked if "a patient or caregiver intentionally, knowingly or recklessly violates any provision of [the MMA] as determined by the [Department]."  35 P.S. §§ 10231.503, 10231.509.

Chapter 6 covers the Department's issuance of permits to "grower/processors" and "dispensaries" to operate "as a medical marijuana organization to grow, process or dispense medical marijuana," including the Department's establishment of "a minimum of three regions within this Commonwealth for the purpose of granting permits" to those

---

[3]The MMA identifies the following 17 conditions as constituting "serious medical conditions" which warrant medical marijuana use upon certification by a practitioner and the Department's issuance of a medical marijuana identification card: (1) cancer; (2) positive status for human immunodeficiency virus or acquired immune deficiency syndrome; (3) amyotrophic lateral sclerosis; (4) Parkinson's disease; (5) multiple sclerosis; (6) damage to the nervous tissue of the spinal cord with objective neurological indication of intractable spasticity; (7) epilepsy; (8) inflammatory bowel disease; (9) neuropathies; (10) Huntington's disease; (11) Crohn's disease; (12) post-traumatic stress disorder; (13) intractable seizures; (14) Glaucoma; (15) sickle cell anemia; (16) severe chronic or intractable pain of neuropathic origin or severe chronic or intractable pain in which conventional therapeutic intervention and opiate therapy is contraindicated or ineffective; and (17) Autism.  35 P.S. 10231.103.

- 14 -

organizations, the publication of its boundaries' "determination in the Pennsylvania

Bulletin," its renewal, suspension, or revocation of an issued permit, and its promotion

and implementation of diversity goals in the permitting process. 35 P.S. §§ 10231.601 –

10231.604, 10231.607 – 10231.609, 10231.612 – 10231.615.  Chapter 7 sets forth specific

"medical marijuana controls" such as (a) the establishment of "an electronic inventory

tracking system" by each grower, processor, or dispensary "that electronically tracks all

medical marijuana on a daily basis," (b) restrictions upon how a grower or processor may

"grow, store, harvest or process medical marijuana in an indoor, enclosed, secure facility,"

(c) the Department's development of regulations "relating to the storage and

transportation of medical marijuana among grower/processors, testing laboratories and

dispensaries," (d) the testing of all "medical marijuana produced by [a] grower/processor"

which must be conducted by "an independent laboratory" that has been approved by the

Department, and (e) the Department's monitoring of "the price of medical marijuana sold

by grower/processors and by dispensaries," which may include the implementation of "a

cap on the price of medical marijuana being sold for a period of six months." 35 P.S. §

10231.701 – 10231.705.  Dispensaries are also addressed by Chapter 8 of the MMA

which requires dispensaries to "provide to the patient or caregiver a receipt" containing

certain information, to "have a physician or a pharmacist onsite at all times during the

hours the dispensary is open to receive patients and caregivers," to "file the receipt

information with the [D]epartment utilizing the electronic tracking system," to dispense

medical marijuana with "a safety insert" and "in a sealed and properly labeled package,"

and to refrain from dispensing medical marijuana in "an amount greater than a 30-day

supply." 35 P.S. § 10231.801.  Section 802 generally bars a dispensary from operating

- 15 -

"on the same site as a facility used for growing and processing medical marijuana" or being "located within 1,000 feet of the property line of a public, private or parochial school or day-care center," and Section 803 obligates the dispensary to "post a copy of its permit" in an "easily observable" location within its facility.  35 P.S. §§ 10231.802 – 10231.803.

Chapter 9 enacts a gross receipts tax of 5% on growers and processors of medical marijuana, and provides for the deposit of those tax proceeds into the "Medical Marijuana Program Fund…as a special fund in the State Treasury" and the allocation of those proceeds among the Department, the Department of Drug and Alcohol Programs, and the Pennsylvania Commission on Crime and Delinquency.  *See* 35 P.S. §§ 10231.901 – 10231.902.  The administration of the MMA is governed by Chapter 11 which contains provisions regarding the filing of periodic reports by medical marijuana organizations, the Department's notification of law enforcement "relating to any violation or suspected violation" of the MMA, the Department's "analysis and evaluation of the implementation and effectiveness" of the MMA, and its submission of biennial reports to the Governor, General Assembly, and Attorney General regarding the same.  35 P.S. §§ 10231.1102 – 10231.1105.  Section 1107 of the MMA empowers the Department to "promulgate temporary regulations" in order to facilitate the prompt implementation of the MMA.  35 P.S. § 10231.1107.

Chapter 12 creates the "Medical Marijuana Advisory Board" within the Department, and Section 1201 delineates the composition and duties of that board.  *See* 35

P.S. § 1023.1201. Section 1202 states that after the Medical Marijuana Advisory Board

has issued its written report to the Governor and the General Assembly setting forth its

recommendations and findings, the Department "may promulgate regulations to effectuate

recommendations made by the advisory board." 35 P.S. § 10231.1202. Within 12 months

of the Department's receipt of the advisory board's report, it must issue a "notice in the

Pennsylvania Bulletin" outlining "the recommendations of the advisory board" and stating

"the specific reasons for the decision of the [Department's] secretary on whether or not to

effectuate each recommendation." Id.

Chapter 13 establishes criminal offenses and penalties pertaining to medical

marijuana, such as the "criminal diversion of medical marijuana" by practitioners,

patients, caregivers, or medical marijuana organizations to unauthorized individuals, the

"criminal retention of medical marijuana" by patients or caregivers in "an amount in

excess of the amount legally permitted," the falsification of identification cards, the

adulteration of medical marijuana, and the disclosure of protected information related to

the use of medical marijuana. *See* 35 P.S. §§ 10231.1301 – 10231.1307. Section 1308(a)

creates criminal penalties for "a practitioner, caregiver, patient, employee, financial

backer, operator or principal of any medical marijuana organization, health care medical

organization or university participating in a research study under Chapter 19 [footnote omitted],

and an employee, financial backer, operator or principal of a clinical registrant or

academic or clinical research center under Chapter 20, [footnote omitted] who violates any of the

provisions of [the MMA], other than those specified in section 1301, 1302, 1303, 1304,

- 17 -

1305, 1306 or 1307, [footnote omitted] or any regulation promulgated under [the MMA]."[4]   35 P.S. § 10231.1308(a).  In addition, Section 1308(b) provides that the Department "may assess a civil penalty for a violation of [the MMA], a regulation promulgated under [the MMA], or an order issued under [the MMA] or regulation as provided in this subsection." 35 P.S. § 10231.1308(b).  Among the factors to be considered by the Department in determining the penalty for any violation "as provided in this subsection" are the "gravity" and "willfulness" of the violation, the "potential harm resulting from the violation to patients, caregivers or the general public," any "previous violations…by the person being assessed," the "economic benefit to the person being assessed," and whether the "violation did not threaten the safety or health of a patient, caregiver, or the general public."  35 P.S. § 10231.1308(b)(1)-(2).  Section 1308(c) further authorizes the Department to impose additional "sanctions" for violations of the MMA, the Department's regulations, or an order issued under the MMA or a regulation by revoking or suspending "the permit of a person found to be in violation" or "the registration of a practitioner for a violation" and "order[ing] restitution of funds or property unlawfully obtained or retained by a permittee or registrant."  35 P.S. § 10231.1308(c)(1).

---

[4]Chapter 19 directs the Department to "establish and develop a research program to study the impact of medical marijuana on the treatment and symptom management of serious medical conditions," and imposes specific statutory duties upon it in that regard, including "engag[ing] universities within this Commonwealth to participate" in the study, the approval of "vertically integrated health systems" to participate in the study, and the promulgation of regulations setting forth "the procedure to be used by a health care medical marijuana organization that grows and processes medical marijuana." 35 P.S. §§ 10231.1902 – 10231.1904, 10231.1907. In an effort to facilitate "research programs and studies" by accredited medical schools that are "approved and certified by the [D]epartment" as "academic clinical research centers," and the accompanying need for the Department to approve "additional grower/processors and dispensaries" and "clinical registrants" which have " a contractual relationship with a medical school that operates or partners with a hospital to provide advice about medical marijuana so that patient safety may be enhanced," Chapter 20 sets forth procedures for the approval and certification of "academic clinical research centers" and "clinical registrants" and the filing of their research study findings with the Department.  35 P.S. §§ 10231.2000, 10231.2001.1 – 10231.2004.

The final chapter, Chapter 21, contains "Miscellaneous Provisions" concerning the MMA, and imposes certain duties upon identified state agencies and commissions. Sections 2101, 2102, and 2107 state that the growth, distribution, possession or consumption of medical marijuana which is permitted under the MMA may not be deemed a violation of the Controlled Substances Act, 35 P.S. §§ 780-101, *et seq.*, that nothing in the MMA shall be construed as requiring an insurer or health plan "to provide coverage for medical marijuana," and that a grower/processor and dispensary must "meet the same municipal zoning and land use requirements" as other comparable facilities "that are located in the same zoning district." 35 P.S. §§ 10231.2101, 10231.2102, 10231.2107. Section 2104 requires the Department of Education to promulgate regulations regarding the possession and use of medical marijuana "by a student on the grounds of a preschool, primary school and a secondary school" and "an employee of a preschool, primary school and a secondary school on the grounds of such school," whereas Section 2105 directs the Department of Human Services to adopt regulations concerning such possession and use by (a) a child under the care of a child-care or social service center licensed or operated by the Department of Human Services," (b) "an employee" of such a center, and (c) "employees of a youth development center or other facility which houses children adjudicated delinquent." 35 P.S. §§ 10231.2104 – 10231.2105.

Section 2101.1 establishes restrictions upon individuals who may possess a financial interest in or be employed by a medical marijuana organization or its holding company, affiliate, intermediary, or subsidiary. Subsections (a) and (b) of Section 2101.1 state that no "executive-level public employee, public official or party officer, or an immediate family member thereof" may hold such employment or financial interest

- 19 -

"while the individual is an executive-level public employee, public official or party officer and for one year following termination of the individual's status as an executive-level public employee, public official or party officer." 35 P.S. § 10231.2101.1(a)-(b). Any individual who does so "commits a misdemeamor and shall, upon conviction, be sentenced to pay a fine of not more than $1,000 or to imprisonment for not more than one year, or both." 35 P.S. § 10231.2101.1(c). Subsection (d) of Section 2101.1 authorizes the State Ethics Commission, upon written request, to "[i]ssue a written determination of whether a person is subject to subsection (a) or (b)," and to publish in the Pennsylvania Bulletin biennially "a list of all State, county, municipal and other government positions that meet the definitions 'public official' or 'executive-level public employee'" for purposes of this proscription. 35 P.S. § 10231.2101.1(d).

Section 2103, which is the subject of Palmiter's employer-related claims, contains specific protections for identified individuals or entities in connection with their licensure, employment, and child custody disputes. Subsection (a) provides that a patient, caregiver, practitioner, medical marijuana organization, health care medical marijuana organization or university participating in a research study, clinical registrant or academic research center, employee, principal or financial backer of a medical marijuana organization, employee of a health care medical marijuana organization, university participating in a research study, clinical registrant, or academic clinical research center, or a pharmacist, physician assistant, or certified registered nurse practitioner may not "be subject to arrest, prosecution or penalty in any manner, or denied any right or privilege, including civil penalty or disciplinary action by a Commonwealth licensing board or commission, solely for lawful use of medical marijuana" or its manufacture, distribution, or sale, "or for any

- 20 -

other action taken in accordance with [the MMA]." 35 P.S. § 10231.2103(a).  Section

2103(b) states that "[n]o employer may discharge, threaten, refuse to hire or otherwise

discriminate or retaliate against an employee regarding an employee's compensation,

terms, conditions, location or privileges solely on the basis of such employee's status as

an individual who is certified to use medical marijuana," although an employer is not

required "to make any accommodation of the use of medical marijuana on the property or

premises of any place of employment," nor is the employer restricted in the "ability to

discipline an employee for being under the influence of medical marijuana in the

workplace or for working while under the influence of medical marijuana when the

employee's conduct falls below the standard of care normally accepted for that position."

35 P.S. § 10231.2103(b)(1)-(2).  Subsection (c) of Section 2103 addresses custody

determinations, and provides that "[t]he fact that an individual is certified to use medical

marijuana and acting in accordance with the [MMA] shall not by itself be considered by a

court in a custody proceeding."  35 P.S. § 10231.2103(c).

Unlike other "miscellaneous provisions" in Chapter 21 which vest the State Ethics

Commission, the Department of Education, and the Department of Human Services with

the authority to take certain action, *see* 35 P.S. §§ 10231.2101.1(d), 10231.2104,

10231.2105, Section 2103 of the MMA does not grant any state agency or commission the

power to enforce or regulate the licensing, employment, and custody litigation protections

set forth therein.  In its sole reference to the Department, Chapter 21 states that upon the

legislative amendment "removing marijuana from Schedule I of the Controlled Substances

Act, the [D]epartment shall publish notice of the effective date of the amendment in the

Pennsylvania Bulletin," and that "[t]he issuance of permits and other authorizations shall

- 21 -

begin upon publication of a notice by the [D]epartment in the Pennsylvania Bulletin that

adequate temporary or permanent regulations have been adopted to initiate the program

under [the MMA]." 35 P.S. §§ 10231.2108 – 10231.2109. No other provision in Chapter

21 references the Department.

The statutory framework of the MMA grants the Department considerable

regulatory authority with respect to individuals and entities that opt to participate in the

"Medical Marijuana Program" in this Commonwealth. Chapters 3, 4, 5, 6, 7, 11, 19, and

20 confer specific powers upon the Department relative to registered practitioners,

certified medical marijuana users and their caregivers, medical marijuana organizations,

independent testing laboratories, health care medical marijuana organizations, academic

clinical research centers, and clinical registrants. *See* 35 P.S. §§ 10231.301, 10231.302,

10231.401, 10231.404, 10231.501, 10231.503.1, 10231.509, 10231.603 – 10231.604,

10231.607 – 10231.609, 10231.612 – 10231.613, 10231.615, 10231.703 – 10231.705,

10231.1102 – 10231.1105, 10231.1902 – 10231.1904, 10231.1907, 10231.2001.1 –

10231.2004. This scheme evinces a legislative intent to empower the Department to

exercise regulatory control over those people and entities that have affirmatively chosen to

take part in the Medical Marijuana Program, and in the process, to submit to the

administrative jurisdiction of the Department.

Although employers are not parties that have voluntarily decided to participate in

the Medical Marijuana Program and to subject themselves to regulation by the

Department, PHA, Moses Taylor, and Commonwealth Health nevertheless argue that the

MMA vests the Department with the exclusive authority to enforce Section 2103(b)(1) by

assessing civil penalties against culpable employers pursuant to Section 1308(b). (T.P.

- 22 -

9/25/19 at pp. 2-4, 8). However, when asked at oral argument whether any such civil penalty was payable to the aggrieved employee as a personal remedy, rather than to the Department itself, PHA, Moses Taylor, and Commonwealth Health replied that they were "not certain as to where that [money] goes." (Id. at p. 8). Additionally, while PHA, Moses Taylor, and Commonwealth Health insisted that "the Department has a wide swath within which to create and fashion a remedy that it believes to be appropriate" for a violation of Section 2103(b)(1), they could not state whether the proffered remedy purportedly available to an employee includes reinstatement, an award of backpay, and/or reimbursement of counsel fees. (Id. at pp. 9-10).

Throughout the MMA, the General Assembly has designated the appropriate state agencies to regulate specific matters within their administrative authority. By way of illustration, the Department of Revenue is obligated to "monitor the price of medical marijuana sold by growers/processors and by dispensaries," 35 P.S. § 10231.705, the Department of Education is tasked with developing regulations governing the possession and use of medical marijuana on school grounds, 35 P.S. § 10231.2104, the Department of Human Services is responsible for promulgating regulations regarding such possession and use at child-care, social service, and youth development centers, 35 P.S. § 10231.2105, and the State Ethics Commission is empowered to issue written determinations concerning the eligibility of certain public officials and their family members to own a financial interest in or be employed by a medical marijuana organization. 35 P.S. § 10231.2101.1(d). Section 2103 of the MMA does not grant the Department or any other agency the administrative authority to enforce the anti-discrimination mandate in 35 P.S. § 10231.2103(b)(1). *See* Doe v. Franklin County, 644

- 23 -

Pa. 1, 26, 174 A.3d 593, 608 (2017) ("Where the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded."). If the General Assembly had intended to restrict an employee, who has been wrongfully discharged simply for being a certified medical marijuana user, to an administrative remedy under the MMA, the General Assembly could have vested the proper state agency with that enforcement authority in Section 2103. Assuming *arguendo* that the Legislature had intended to limit such an aggrieved employee to administrative redress only, it presumably would have vested either the Department of Labor and Industry, 71 P.S. §§ 561-579, or the Pennsylvania Human Relations Commission, 43 P.S. §§ 951-963, with that authority over employers who violate Section 2103(b)(1).

The regulations which have been promulgated by the Department support the conclusion that, contrary to the argument being advanced by PHA, Moses Taylor, and Commonwealth Health, an employee's recourse against an employer for wrongful termination in violation of Section 2103(b) is not confined to a civil penalty by the Department under Section 1308(b). The Department has published sweeping regulations relating to its administrative authority under Chapters 3, 4, 5, 6, 7, 11, 19, and 20 of the MMA. *See* 28 Pa. Code §§ 1141.21 – 1141.52, 1151.21 – 1151.45, 1161.21 – 1161.41, 1171.21 – 1171.39, 1181.21 – 1181.34, 1191.21 – 1191.34, 1211.21 – 1211.37. With regard to the Department's power to assess civil penalties under Section 1308(b), the Department has promulgated 28 Pa. Code § 1141.47(a)(1)-(6) which mirrors much of the language contained in Section 1308(b)-(c) of the MMA. Notably, Section 1141.47(a) speaks largely to medical marijuana organizations and the Department's administrative power to suspend or revoke a medical marijuana organization's permit, to issue "cease

- 24 -

and desist" orders "to immediately restrict" a medical marijuana organization's

operations, to "[o]rder the restitution of funds or property unlawfully obtained or retained

by a medical marijuana organization," to issue "a written warning if the Department

determines" that "the medical marijuana organization took immediate action to remedy

the violation," and to "require a medical marijuana organization to develop and adhere to

a plan of correction approved by the Department." 28 Pa. Code § 1141.47(a)(1), (3)-(6).

However, as for the prohibition in Section 2103(b) barring employers from discharging or

otherwise discriminating against employees based upon their status as certified medical

marijuana users, the Department has not issued a single regulation.

    In determining whether the MMA implicitly creates a private right of action for an

employee who is discharged for being a certified medical marijuana user, we must

consider whether (1) Palmiter is a member of the class of people for whose special benefit

the MMA was enacted, (2) there is any explicit or implicit indication of legislative intent

to establish or deny such a remedy, and (3) it is consistent with the underlying purpose of

the legislative scheme to imply a private cause of action.[5]  MERSCORP, 207 A.3d at 870

n.14; Solomon v. U. S. Healthcare Systems of Pennsylvania, Inc., 797 A.2d 346, 352 (Pa.

Super. 2002), *app. denied*, 570 Pa. 688, 808 A.2d 573 (2002).  By enacting the MMA, the

General Assembly expressly declared "that medical marijuana is one potential therapy

that may mitigate suffering in some patients and also enhance quality of life," and that

regulating the Medical Marijuana Program "which allows access to medical marijuana

---

[5]The Cort decision contains a fourth consideration, to wit, "is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" Cort, 422 U.S. at 78.  "Obviously, the fourth prong is inapplicable to a state statute." Estate of Witthoeft, 557 Pa. at 346 n.3, 733 A.2d at 626 n.3.

- 25 -

will enhance patient safety while research into its effectiveness continues." 35 P.S. §

10231.102(1)-(2).  The stated intent of the legislature in adopting the MMA is to provide

"a program of access to medical marijuana which balances the need of patients to have

access to the latest treatments with the need to promote patient safety," to furnish "a safe

and effective method of delivery of medical marijuana to patients," and to promote "high

quality research into the effectiveness and utility of medical marijuana." 35 P.S. §

10231.102(3).  To ensure that certified medical marijuana patients have safe "access to the

latest treatment" involving medical marijuana while simultaneously being gainfully

employed, Section 2103 of the MMA establishes specific "[p]rotection for patients and

caregivers" and bars any employer from discharging or otherwise discriminating against

an employee based upon the employee's status "as an individual who is certified to use

medical marijuana." 35 P.S. § 10231.2103(b)(1).  Therefore, it is clear from the plain

language of the MMA that, as a certified medical marijuana user, Palmiter is one of the

class for whose special benefit the MMA was enacted, and that implying a private right of

action is consistent with the stated purposes of the MMA and effectuates the legislative

intent evident in Section 2103(b)(1) by preventing employers from firing or

discriminating against lawful medical marijuana users.

  As for the second prong of the controlling analysis, no Pennsylvania court has had

occasion to consider whether there is an express or implied indication of legislative intent

in the MMA to create or reject a private cause of action for a violation of Section

2103(b)(1).  (T.P. 9/25/19 at pp. 5, 28, 35).  When confronted with an issue unaddressed

by the courts of this Commonwealth, it is appropriate to consider decisions from other

jurisdictions for persuasive guidance. Com. v. Manivannan, 186 A.3d 472, 483-484 (Pa.

- 26 -

Super. 2018); Newell v. Montana West, Inc., 154 A.3d 819, 823 & n.6 (Pa. Super. 2017).

Some state medical marijuana statutes expressly prohibit authorized medical marijuana

users from suing their employers for wrongful discharge based upon their lawful use of

medical marijuana. *See, e.g.*, Fla. Stat. § 381.986 (15)(c) ("This section does not create a

cause of action against an employer for wrongful discharge or discrimination."); Ohio

Rev. Code Ann. § 3796.28(A)(2), (5) ("Nothing in this chapter...prohibits an employer

from discharging...a person because of that person's use...of medical marijuana" or

"permits a person to commence a cause of action against an employer

for...discharging...a person...related to medical marijuana."). Other jurisdictions, whose

medical marijuana statutes do not contain anti-discrimination provisions such as 35 P.S. §

10231.2103(b)(1), have declined to recognize an implied cause of action due to the

absence of any statutory language providing any employment protection to a medical

marijuana user.[6] *See*, Roe v. TeleTech Customer Care Management (Colorado), LLC, 171

Wash.2d. 736, 748, 257 P.3d 586, 591-592 (2011) ("The language of [Washington's

Medical Use of Marijuana Act] MUMA is unambiguous - - it does not regulate the

conduct of a private employer or protect an employee from being discharged because of

authorized medical marijuana use."); Ross v. RagingWire Telecommunications, Inc., 42

---

[6]In Barbuto v. Advantage Sales and Marketing, LLC, 477 Mass. 456, 78 N.E.3d 37 (2017), the Supreme Judicial Court of Massachusetts concluded that Massachusetts' separate anti-discrimination statute prohibits employers from terminating employees for medical marijuana use outside the workplace, and held that a discharged employee stated a claim for handicap discrimination under that general anti-discrimination law. Id. at 461-462, 78 N.E.3d at 43-44. With respect to that employee's independent claim based upon Massachusetts' medical marijuana statute which does not contain an anti-discrimination provision protecting employees, Barbuto reasoned that "where a comparable cause of action already exists under our law prohibiting handicap discrimination, a separate, implied private right of action is not necessary to protect a patient using medical marijuana from being unjustly terminated for its use." Id. at 470, 78 N.E.3d at 49. As a result, it did "not imply a separate cause of action for aggrieved employees under the medical marijuana act, where such employees are already provided a remedy under our discrimination law, and where doing so would create potential confusion." Id. at 470, 78 N.E.3d at 50.

- 27 -

Cal. 4th 920, 928, 932, 70 Cal. Rprtr. 3d, 382, 388, 392, 174 P.3d 200, 205, 208 (2008)

(medical marijuana statutory provisions at issue only granted defenses to certain criminal

charges, but "do not speak to employment law" and "do not mention employment law,"

and "[n]othing in the Act's text or history indicates the voters intended to articulate any

policy concerning marijuana in the employment context, let alone a fundamental policy

requiring employers to accommodate marijuana use by employees.").

  In those jurisdictions where the courts have considered the availability of a private

right of action under medical marijuana statutes that contain anti-discrimination language,

but do not expressly authorize a cause of action, the courts have applied the three-part test

in Cort, including the second factor regarding explicit or implicit indication of legislative

intent to create or deny such a remedy, and have uniformly concluded that an implied

private right of action exists.  The federal district court in Noffsinger v. SSC Niantic

Operating Company, LLC, 273 F.Supp.3d 326 (D. Conn. 2017), addressed the viability of

a private right of action under Connecticut's medical marijuana law which provides that

"[n]o employer may refuse to hire a person or may discharge, penalize or threaten an

employee solely on the basis of such person's or employee's status as a qualifying patient

or primary caregiver" under the statute.[7]  Id. at 331 n.2.  The employer argued that

Connecticut's statute "lacks an explicit authorization for a private right of action" and

"delegates administrative oversight and enforcement authority to the Connecticut

Department of Consumer Protection," and, therefore, "does not give rise to a private right

of action."  Id. at 338, 340.

---

[7]Connecticut adopted the Cort test in Napoletano v. CIGNA Healthcare of Connecticut, Inc., 238 Conn. 216, 249, 680 A.2d 127, 145 (1996), cert. denied, 520 U.S. 1103 (1997).

This district court noted Connecticut's presumption "that private enforcement does not exist unless expressly provided in a statute," and the rule that a plaintiff "bears the burden of overcoming this presumption." Id. at 338. Citing Napoletano, it stated that "[w]ith respect to the second factor, there is no indication of legislative intent to deny a private cause of action." Id. at 339. Not unlike Pennsylvania's MMA, Connecticut's medical marijuana law assigns certain "administrative authority to the Department," but does not expressly grant it any power with regard to the anti-discrimination provision. Id. at 340-341. In finding that the anti-discrimination section in Connecticut's medical marijuana statute "contains an implied private right of action," Id. at 341, Noffsinger concluded that "without a private cause of action, [the anti-discrimination clause] would have no practical effect, because the law does not provide for any other enforcement mechanism." Id. at 340. The Superior Court of Connecticut subsequently agreed with Noffsinger, and held that the Connecticut law implied a private right of action to enforce its anti-discrimination provision. See Bulerin v. City of Bridgeport, 2019 WL 1766067, at *5 (Conn. Super. 2019) ("This court finds that the Department is responsible for promulgating regulations under [the medical marijuana statute], overseeing registration of qualifying patients and primary caregivers who can issue written certifications to qualifying patients, licensing dispensaries and producers of marijuana for palliative use, creating a Board of Physicians knowledgeable about palliative use of marijuana, and regulating laboratories and research programs regarding marijuana," but "[t]here is no mention of the Department in the anti-discrimination provisions of Section 21a-408p."); Smith v. Jensen Fabricating Engineers, Inc., 2019 WL 1569048, at *7 (Conn. Super. 2019) (recognizing "an implied private right of action," and reasoning that "[t]here is no

- 29 -

explicit language in the statute itself regarding whether the General Assembly intended to create a private right of action, but the court cannot ignore the plain intent of § 21a-408p(b)(3) that employers be prohibited from terminating or refusing to hire individuals solely on the basis of their use of medical marijuana.").

The Superior Court of Rhode Island considered whether a private right of action was implied in its medical marijuana law which contains a provision stating that "[n]o...employer may refuse to employ, or otherwise penalize, a person solely for his or her status as a cardholder" for lawful use of medical marijuana. Callaghan v. Darlington Fabrics Corp., 2017 WL 2321181, at *2 (R.I. Super. 2017) (quoting Section 21-28.6-4(d)). "Despite this direct prohibition, the statute fails to provide an express private right of action," not unlike 35 P.S. § 10231.2103(b)(1). Id. Comparable to Section 2103(b)(1), "there are no listed penalties for violations of § 21-28.6-4(d)" in the Rhode Island law, and "no state department is given authority to administer § 21-28.6-4(d)" and "to intervene on behalf of...an employee who was denied employment." Id. at *5. Applying "the first three factors discussed in Cort," Callaghan concluded "that there is only one sensible interpretation of § 21-28.6-4(d)," and that it "must have an implied private right of action" to avoid "be[ing] meaningless." Id. at *8.

The Superior Court of Delaware similarly addressed the question of an implied private right of action under Delaware's medical marijuana law, which states that "[a]n employer may not discriminate against a person in hiring, termination, or any term or condition of employment...if the discrimination is based upon...[t]he person's status as a cardholder, or [a] registered qualifying patient's positive drug test for marijuana components or metabolites...." Chance v. Kraft Heinz Foods Company, 2018 WL

- 30 -

6655670, at *3 (Del. Super. 2018) (quoting 16 Del. C. § 4905A(a)(3)). Like PHA, Moses

Taylor, and Commonwealth Health, the employer in <u>Chance</u> argued that the second <u>Cort</u>

factor militated against "an implied private right of action" since (1) "had the legislature

wanted to create a private right of action, it could have done so expressly," (2) Delaware's

medical marijuana law "should not be construed liberally," and (3) "the legislative history

contains no indication of an intent to create an implied private right of action." <u>Id.</u> at *5.

Characterizing the holdings in <u>Noffsinger</u> and <u>Callaghan</u> as "persuasive," <u>Id.</u> at *3, the

Superior Court of Delaware rejected the employer's arguments, found that "no agency or

commission has been tasked with enforcement of the anti-discrimination provision,"

observed that "[s]tatutes prohibiting discrimination are generally deemed remedial

and...granted a liberal construction," and concluded that "a private right of action is the

only means of effectuating the statute's remedial purpose." <u>Id.</u> at *6-7.

More recently, the federal district court in <u>Whitmire v. Wal-Mart Stores, Inc.</u>, 359

F.Supp.3d 761 (D. Ariz. 2019), was confronted with the issue of whether an implied

private cause of action existed under A.R.S. § 36-2813(B), which states that "an employer

may not discriminate against a person in hiring, termination or imposing any term or

condition of employment or otherwise penalize a person based upon...a registered

qualifying patient's positive drug test for marijuana components or metabolites...."[8] <u>Id.</u> at

774. <u>Whitmire</u> agreed with the employer that "Section 36-2813(B) of the AMMA does

not provide an express cause of action," but nevertheless found that "an implied private

cause of action exists under § 36-2813(B) because this subsection imposes on employers

---

[8]Arizona adopted the <u>Cort</u> test in <u>City of Tucson v. Superior Court of Pima County</u>, 127 Ariz. 205, 208, 619 P.2d 33, 36 (1980).

an affirmative obligation to abide by the anti-discrimination mandate of the statute." Id. at

775-776.  Discussing and relying upon Noffsinger, Callaghan and Chance, the district

court held that "there is no indication of legislative intent to deny a private cause of

action" in the Arizona statute, and that recognition of an implied private cause of action

"effectuates the evident legislative purpose of preventing discrimination in employment

against qualifying patients using medical marijuana outside of the workplace since the law

lacks any explicit enforcement mechanism." Id. at 781.

The sound and insightful reasoning in Noffsinger, Callaghan, Chance, and

Whitmire support the recognition of an implied right of action for an employee who is

discharged in violation of 35 P.S. § 10231.2103(b)(1).[9]  There is no indication of any

legislative intent in the MMA to deny a wrongfully discharged employee a private cause

of action under Section 2103(b)(1).  The MMA imposes an affirmative obligation on

employers to refrain from discharging or discriminating against an employee solely based

upon the employee's status as a certified medical marijuana user.  Contrary to the defense

contention regarding an alleged administrative remedy in the form of a civil penalty by the

Department, neither the MMA nor the regulations promulgated by the Department provide

an independent enforcement mechanism against employers who violate Section

2103(b)(1).[10]  Cf. Smith, supra, at *7 ("[T]o expect the [Department of Consumer

---

[9]At least eight other states have anti-discrimination provisions in their medical marijuana laws which prohibit employers from discriminating against employees based upon their status as lawful medical marijuana users. See Ark. Const. Amend. 98, § 3(f)(3)(A); 410 Ill. Comp. Stat. 130/40(a)(1); Minn. Stat. Ann. § 152.32 subd. 3(c); Nev. Rev. Stat. § 613.333; N.J. Stat. Ann. 24:6I-6.1; N.Mex. Stat. Ann. § 26-2B-9; 63 Okla. Stat. Ann. § 425(B); W.Va. Code § 16A-15-4(b)(1).  However, no court in those jurisdictions has issued a reported ruling addressing the merits of an employee's wrongful termination claim under those anti-discrimination provisions.
[10]In addition to barring discrimination in employment, Section 2103 also provides protection for patients and caregivers in child custody proceedings by precluding "a court in a custody proceeding" from considering "[t]he fact that an individual is certified to use medical marijuana."  35 P.S. § 10231.2103(c).  Taking to its logical conclusion the defense argument that Section 1308(b) of the MMA vests the Department with the exclusive

- 32 -

Protection] to bring an action every time a Connecticut citizen believes they have been discriminated against under § 21a-408p(b)(3), with all the costs in attorney time, investigation, and litigation, is to ignore the reality of limited government resources."). Unless a private cause of action is granted to an employee who is terminated or discriminated against solely for being properly certified as a medical marijuana user, the mandate contained in Section 2103(b)(1) will ring hollow.

Although it concerned a common law wrongful discharge claim predicated upon a public policy violation, rather than an implied private cause of action under a statute, the rationale and holding in Roman v. McGuire Memorial, 127 A.3d 26 (Pa. Super. 2015), *app. denied*, 635 Pa. 744, 134 A.3d 57 (2016) are instructive on the issue of whether, as alleged by PHA, Moses Taylor, and Commonwealth Health, Palmiter's sole remedy is the assessment of a civil penalty by the Department under Section 1308(b) of the MMA.  In Roman, a direct care health care worker, who allegedly was discharged in retaliation for refusing to accept overtime work, filed an action against her former employer and asserted that her discharge "offend[ed] the public policy of the Commonwealth of Pennsylvania as embodied" in The Prohibition of Excessive Overtime in Health Care Act ("Act 102"), 43 P.S. §§ 932.1 – 932.6.  Id. at 27-28.  Section 3(a)(1) of Act 102 states that a health care facility "may not require an employee to work in excess of an agreed to, predetermined and regularly scheduled daily work shift," whereas Section 3(b) provides that "[t]he refusal of an employee to accept work in excess of the limitations set forth in subsection

---

authority to enforce Section 2103 by imposing civil penalties, a judge who erroneously considers a patient's status as a medical marijuana user in a child custody ruling would be subject to the assessment of a civil penalty by the Department for violating Section 2103(c). Clearly, the General Assembly did not intend such an absurd result. *See* 1 Pa. C.S. § 1922(1) (in ascertaining the intention of the General Assembly, it is presumed that it "does not intend a result that is absurd, impossible of execution or unreasonable.").

(a) shall not be grounds for discrimination, dismissal, discharge or any other employment decision adverse to the employee." 43 P.S. § 932.3(a)(1), (b). Section 6 of Act 102 expressly authorizes the Department of Labor and Industry to impose "an administrative fine on a health care facility or employer that violates this act" and to "order a health care facility to take an action which the department deems necessary to correct a violation of [43 P.S. § 932.3]." 43 P.S. § 932.6(a) – (b).

After the trial court rendered a non-jury verdict in favor of the employee "in the amount of $121,869.93 and reinstat[ed] her to her former position as a direct care worker," Roman, 127 A.3d at 26, the employer appealed and asserted that the "administration and implementation of Act 102 was vested in the Pennsylvania Department of Labor and Industry," that the Department had implemented regulations "that cover complaint and investigation procedures, remedies and penalties," and that there was "no basis for a common pleas court to have jurisdiction while there is a statutory/administrative remedy." Id. at 33. In rejecting the employer's claim that the employee had failed to identify a cognizable public policy to overcome her at-will employment status, (see Section II(E), infra), the Superior Court stated that "Act 102 establishes the public policy that 'a health care facility may not require an employee to work in excess of an agreed to, predetermined and regularly scheduled daily work shift.'" Id. (quoting 43 P.S. § 932.3(a)(1)). More importantly, with respect to the employer's argument that the legislature had provided the discharged employee with a statutory and administrative remedy in the form of fines and corrective action orders against the employer, Roman concluded:

- 34 -

> However, Act 102 does not provide any administrative or statutory remedies to employees who are fired in retaliation for refusing to work forced overtime. Rather, it provides for fines to be levied against the facility and allows for orders directing facilities to take certain actions to correct violations. Act 102 contains nothing that allows for an employee in Ms. Roman's position to seek any remedy or even what administrative procedure she should follow to recover from [the employer] for its actions.

Id. at 34. Likewise, although 35 P.S. § 10231.1308(b) and 28 Pa. Code § 1141.47(a) generally empower the Department to assess civil penalties for violations of the MMA, no statutory provision in the MMA or regulation promulgated by the Department expressly provides for a wrongfully discharged medical marijuana user to recover lost wages or to secure reinstatement via the Department's administrative authority.

It is also noteworthy that the only commentators who have published any analyses of the MMA have not suggested that certified medical marijuana users are restricted to a civil penalty or administrative remedy by the Department as their sole relief for employers' violations of 35 P.S. § 10231.2103(b)(1). An attorney who "represents employers in the public and private sectors" has stated that "an applicant for employment may not be denied a position or otherwise discriminated or retaliated against solely based on his or her status as a medical-marijuana patient" and "may not be discharged or otherwise discriminated or retaliated against regarding compensation, terms, conditions or other privileges of employment solely on the basis of the employee's status as an individual certified to use medical marijuana." George A. Voegele, Jr., "The Impact of Pennsylvania's New Medical Marijuana Act on Employers," *The Pennsylvania Lawyer*, Vol. 38, No. 5 at p. 21 (September/October 2016). Another commentator has concluded that "[i]n the employment context, courts should expect wrongful termination suits from employees fired for using state-legal medical marijuana." Thomas G. Wilkinson, Jr.,

- 35 -

"Pennsylvania's New Medical Marijuana Law: The Legal Roadmap For a Growing Industry," 87 Pa. B.A.Q. 147, 154 (Oct. 2016). Moreover, since a prospective or existing employee may become a certified medical marijuana user only if [s]he has a defined "serious medical condition," (*see* n.3, supra), "an employer who learns that an employee or job applicant uses medical marijuana necessarily learns that the individual has a serious health condition that may result in additional protections for them under federal or state law." Voegele, supra. As a consequence, "*not only is the employer potentially exposed to liability under the Medical Marijuana Act should it take some adverse action against the individual*, it is also exposed to a potential claim under the Americans with Disabilities Act and/or the Pennsylvania Human Relations Act." Id. (emphasis added). *Accord* Wilkinson, 87 Pa. B.A.Q. at 158 ("Further, the MMA may restrict curious employers from asking employees whether they have valid medical marijuana certifications. As certification requires demonstration of a serious medical condition, an affirmative answer may expose employers to liability under the Americans with Disabilities Act and/or the Pennsylvania Human Relations Act."). Thus, the only published commentaries on the MMA have reasoned that employers may be civilly liable for wrongful discharge if they terminate an employee for being a certified medical marijuana user.

With the exception of penal laws, retroactive provisions, or statutory provisions that impose taxes, confer the power of eminent domain, exempt persons or property from taxation or the power of eminent domain, or decrease the jurisdiction of a court, "[a]ll other provisions of a statute shall be liberally construed to effect their objects and to promote justice." 1 Pa.C.S. § 1928(b)-(c). Anti-discrimination statutes involve remedial

- 36 -

provisions aimed at prohibiting discrimination, *see* <u>Gomez-Perez v. Potter</u>, 553 U.S. 474, 481 (2008), *and* <u>Hull v. Rose, Schmidt, Hasley & DiSalle, P.C.</u>, 700 A.2d 996, 1000 (Pa. Super. 1997), and "[r]emedial legislation enjoys liberal construction, while any exceptions to its remedial provisions must be narrowly construed." <u>In re A.B.</u>, 987 A.2d 769, 775 (Pa. Super. 2009), *app. denied*, 608 Pa. 644, 12 A.3d 369 (2010). Based upon the foregoing discussion, Palmiter is a member of the class of people for whose special benefit the MMA was enacted, there is implicit indication of legislative intent to establish a private cause of action for an employee who is terminated in violation of Section 2103(b)(1), and recognizing such a private right of action is consistent with the MMA's stated purpose of providing safe and effective access to medical marijuana for certified patients while ensuring their equal opportunities for employment. Neither the MMA nor any regulation promulgated by the Department provides the Department with the administrative authority to enforce the anti-discrimination provisions of Section 2103(b)(1) by imposing civil penalties upon employers pursuant to Section 1308(b). Without the availability of an implied right of action for an employee who is fired solely for being certified as a medical marijuana user, the anti-discrimination directive in Section 2103(b)(1) would be rendered impotent. Since PHA, Moses Taylor, and Commonwealth Health have not established that it is clear and free from doubt that Palmiter cannot recover compensatory damages based upon an implied private right of action under 35 P.S. § 10231.2103(b)(1), their demurrer to Count I of the third amended complaint will be overruled.

### (C) BREACH OF ORAL CONTRACT

Palmiter advances a breach of contract claim in Count II of the third amended complaint, and "seeks all remedies available pursuant at law, including but not limited to enforcement of oral contract...." (Docket Entry No. 16 at p. 6). She asserts that Dr. Gilhooley, Dr. Kazmierski, and Pam Doto assured her that her certification as a medical marijuana user would not affect her continued employment. (Id. at ¶¶ 22-23). Palmiter alleges that "[t]here was consideration for the oral promises since [she] continued to work at the medical facility and relied on the oral promises when she obtained her medical certification for the use of marijuana." (Id. at ¶ 25). She contends that "going without required, authorized and legal medication is undergoing a substantial hardship since [Palmiter's] medical condition was not being treated as authorized by her treating physician." (Id. at ¶ 26). PHA, Moses Taylor, and Commonwealth Health submit that the foregoing allegations are insufficient to establish the requisite "additional consideration" to rebut Palmiter's at-will employment status. (T.P. 9/25/19 at pp. 18-20).

"'The presumption under Pennsylvania law is that all employment is at-will, and, therefore, an employee may be discharged for any reason or no reason.'" Babb v. Geisinger Clinic, 2019 WL 5265300, at *11 (Pa. Super. 2019) (quoting Luteran v. Loral Fairchild Corp., [455 Pa. Super. 364], 688 A.2d 211, 214 (Pa. Super. 1997), app. denied, 549 Pa. 717, 701 A.2d 578 (1997)). To rebut the presumption of at-will employment, a party "must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." Grose v. Procter & Gamble Paper Products, 866 A.2d 437, 431 (Pa. Super.

- 38 -

2005), *app. denied*, 585 Pa. 697, 889 A.2d 89 (2005); Janis v. AMP, Inc., 856 A.2d 140,

144 (Pa. Super. 2004), *app. denied*, 583 Pa. 663, 875 A.2d 1075 (2005).  Palmiter does

not contend that she had "an agreement for a definite duration" or one stating that she

would be "discharged for just cause only."  Her "breach of contract" claim in Count II of

the third amended complaint is predicated solely on the allegation that she provided

"additional consideration" to PHA, Moses Taylor, and Commonwealth Health so as to

overcome the presumption of at-will employment.[11]

        A court may find additional consideration "when an employee affords his

employer a substantial benefit other than the services which the employee is hired to

perform, or when the employee undergoes a substantial hardship other than the services

which he is hired to perform."  Donahue v. Federal Express Corp., 753 A.2d 238, 245 (Pa.

Super. 2000); Rapagani v. Judas Co., 736 A.2d 666, 671 (Pa. Super. 1999).  Palmiter has

not alleged a "substantial benefit" that she supposedly provided to PHA, Moses Taylor, or

Commonwealth Health so as to demonstrate some form of "additional consideration" to

overcome the presumption of at-will employment.  *See* Donahue, supra (holding that

"superior work performance is insufficient to establish additional consideration" inasmuch

as "performing well on the job does not generally confer a substantial benefit on an

employer beyond that which the employee is paid to do.").  Nor has she identified a

"substantial hardship" that she underwent which establishes the requisite "additional

consideration."  Such a hardship has been found to exist where the employee

detrimentally relied upon a promise of employment "for a definite minimum time period

---

[11]Palmiter also alleges a "recognized public policy exception" to at-will employment status in Count IV of her
pleading, and that argument is addressed in Section II(E) below.

- 39 -

of three to five years" by "selling his home in Pennsylvania" and moving "to a foreign, economically deprived country" to assume the role of industrial engineer, Janis, 856 A.2d at 145, or where, in response to the employer's persistent recruitment efforts, the employee gave up a stable position in another state, sold his house, and relocated to a new city with his pregnant wife and two year old child, only to be fired after 16 days on the job. Cashdollar v. Mercy Hospital of Pittsburgh, 406 Pa. Super. 606, 612-613, 595 A.2d 70, 73 (1991). However, such a "substantial hardship" has been determined not to exist as a matter of law where a musician closed his studio in California to join a touring company "on the road" and was terminated eight months later, Rapagnani, 736 A.2d at 670-671, or an employee transferred to a new position, agreed to confidentiality and non-competition clauses, and assigned the title to all his future inventions to his employer. Luteran, 455 Pa. Super. at 374-376, 688 A.2d at 216-217.

While the fact-finder must usually consider whether the employee's alleged circumstances support a finding of "additional consideration," Greene v. Oliver Realty, Inc., 363 Pa. Super. 534, 556, 526 A.2d 1192, 1202 (1987), app. denied, 517 Pa. 607, 536 A.2d 1331 (1987), the discharged employee "'must first present averments which would raise a legally sufficient factual dispute'" concerning the existence of such "additional consideration." Rapagnani, 736 A.2d at 671 (quoting Scott v. Extracorporeal, Inc., 376 Pa. Super. 90, 103, 545 A.2d 334, 340 (1988)). Instantly, Palmiter merely avers that she was assured by Dr. Gilhooley, Dr. Kazmierski, and Pam Doto that her medical marijuana patient status would not affect her employment and that she would remain employed by PHA, Moses Taylor, and Commonwealth Health. A promise of continued employment notwithstanding an employee's specific conduct does not "raise a legally sufficient factual

- 40 -

dispute" regarding the "additional consideration" necessary to negate the presumption of at-will employment. *See* Cathcart v. Micale, 2019 WL 4076089, at *2 (E.D. Pa. 2019) (employer's assurance that employee's employment "would not be affected" by the employee's complaint concerning a supervisor, which the employer's human resources director had concluded "was well-founded," did not constitute "a substantial hardship" so as to create a factual issue as to the "additional consideration" needed to rebut the at-will employment status). Palmiter's claims of "undergoing a substantial hardship" are insufficient as a matter of law to establish sufficient "additional consideration" to support her breach of oral contract claim, as a result of which the demurrer to Count II of the third amended complaint will be sustained.

### (D)   INVASION OF PRIVACY/INTRUSION ON SECLUSION

In Counts III and V of the third amended complaint, Palmiter appears to contend that PHA, Moses Taylor, and Commonwealth Health invaded her privacy by (1) "inform[ing] Dr. Galardi that she could no longer treat [Palmiter] because of the lawsuit a[s] it was a conflict of interest," and (2) implementing a "drug testing policy [that] invaded [Palmiter's] private, medical authorized use of medical marijuana" by "requir[ing] her to disclose her private use of medical marijuana." (Docket Entry No. 16 at ¶¶ 29, 32, 45-46). Defense counsel noted at the time of oral argument that Pennsylvania law permits employment-related drug screening, *see* Katera's Kove, Inc. v. Unemployment Compensation Board of Review, 130 A.3d 800, 803 (Pa. Cmwlth. 2015) (employee terminated for positive drug test was ineligible for unemployment compensation benefits under 43 P.S. § 802(e.1) since the test was conducted pursuant to the employer's established substance abuse policy), as a result of which Palmiter cannot

- 41 -

claim that her privacy was improperly invaded merely by the lawful administration of an

employment drug screen test. (T.P. 9/25/19 at p. 25). In response, Palmiter's counsel

confirmed on the record that Palmiter is alleging that the actionable "invasion [wa]s

finding out the fact that Dr. Galardi was her treating physician."[12] (Id. at p. 41).

"It is well established in Pennsylvania that a violation of the right of privacy is an

actionable tort." Tagouma v. Investigative Consultant Services, Inc., 4 A.3d 170, 174 (Pa.

Super. 2010); Dunbar v. Rivello, 34 Pa. D. & C. 5th 87, 107 (Lacka. Co. 2013). "A cause

of action for invasion of privacy is 'actually comprised of four analytically distinct torts:

(1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to

private life, (4) publicity placing a person in false light.'" Krajewski v. Gusoff, 53 A.3d

793, 805 (Pa. Super. 2012) (quoting Larsen v. Philadelphia Newspapers, Inc., 375 Pa.

Super. 66, 543 A.2d 1181, 1188 (1988), app. dismissed, 624 Pa. 224, 84 A.3d 1057

(2014)). Based upon the factual averments contained in Palmiter's pleading and the

representation made by her counsel during oral argument, the only privacy tort that is

being asserted in this case is "intrusion upon seclusion." (T.P. 9/25/19 at p. 24).

---

[12]Referencing Dr. Galardi's alleged statement that, per the advice of PHA, Moses Taylor, and Commonwealth Health, "she could no longer treat [Palmiter] because of the lawsuit," Palmiter asserted during the oral argument that she has the right "to be treated by a physician who has an oath to make sure they take care of their patients." (Id. at p. 42). Some jurisdictions have recognized a patient's cause of action against a third party for tortiously inducing a physician to terminate the physician-patient relationship with the patient. See Phoebe Carter, Liability for Interference with Physician-Patient Relationship, 87 A.L.R. 4th 845 at §21 (1991). It is unclear whether such a claim is cognizable in Pennsylvania. See Richette v. Solomon, 410 Pa. 6, 15, 187 A.2d 910, 915 (1963) (stating in obiter dictum that anyone has a right to advise a person to change doctors and "may recommend him to a doctor other than the one presently prescribing for him," but such advice "must not be accompanied with threats" which "may well be interpreted as reflecting malice, vindictiveness, and wanton disregard of the…doctor's rights which would call for punitive damages."). A physician may arguably recover for the intentional and improper interference with the physician's continuing and prospective business relations with the physician's patients. See, e.g., Posner v. Lankenau Hospital, 645 F.Supp. 1102, 1111-1112 (E.D. Pa. 1986), aff'd, 865 F.2d 252 (3rd Cir. 1988); McMorris v. Williamsport Hospital, 597 F.Supp. 899, 917 (M.D. Pa. 1984) (Nealon, C.J.). Since Palmiter has not asserted a claim for tortious interference with the physician-patient relationship, the viability of such a cause of action in this Commonwealth need not be addressed.

Section 652B of the Restatement (Second) of Torts describes the tort of "intrusion upon seclusion" as follows: "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Burger v. Blair Medical Associates, Inc., 600 Pa. 194, 203, 964 A.2d 374, 379 (2009); Dunbar, 34 Pa. D. & C. 5th at 108. It is not sufficient that the plaintiff was "subjectively offended" by the intrusion since the test requires that "a reasonable person would be *highly* offended." Spencer v. General Telephone Co. of Pennsylvania, 551 F.Supp. 896, 899 (M.D. Pa. 1982)(emphasis in original). "The invasion may be (1) 'by physical intrusion into a place where the plaintiff has secluded himself;' (2) 'by use of the defendant's senses to oversee or overhear the plaintiff's private affairs;' or (3) 'some other form of investigation or examination into plaintiff's private concerns.'" Tagouma, 4 A.3d at 174 (quoting Restatement (Second) of Torts § 652B, Comment b). To state a claim for intrusion upon seclusion, "a plaintiff must aver that there was an intentional intrusion on the seclusion of their private concerns which was substantial and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities." Pro Golf Manufacturing, Inc. v. Tribune Review Newspaper Co., 570 Pa. 242, 248, 809 A.2d 243, 247 (2002); Moon v. Garibotto, 2010 WL 2812270, at * 3 (Lacka. Co. 2010). Hence, there can be no tort liability for intrusion upon seclusion "'unless the interference with the plaintiff's seclusion is substantial and would be highly offensive to the ordinary reasonable person.'" Tagouma, supra (quoting Restatement (Second) of Torts § 652B, Comment d).

Palmiter contends that PHA, Moses Taylor, and Commonwealth Health are liable for intrusion upon seclusion since "they accessed her medical records to see who was her medical treating physician," their "unauthorized access to her private medical file was substantial" and "highly offensive," and she "suffered mental suffering and humiliation as a result of [their] invasion of privacy." (Docket Entry No. 16 at ¶¶ 31, 36-37). Affording Palmiter the benefit of "all inferences reasonably deducible" from those allegations, McIlawin v. Saber Healthcare Group, LLC, 208 A.3d 478, 483 (Pa. Super. 2019), that unauthorized access occurred subsequent to Palmiter's filing of her original complaint demanding her "reinstatement" and damages for "backpay, front pay, [and] emotional distress" since PHA, Moses Taylor, and Commonwealth Health allegedly advised that treating physician, Dr. Galardi, "that she could no longer treat [Palmiter] because of the lawsuit." (Docket Entry No. 1 at p. 4; Docket Entry No. 16 at ¶ 29). Based upon that alleged intrusion upon seclusion, Palmiter seeks "compensatory damages, emotional distress, [and] punitive damages." (Docket Entry No. 16 at p. 8).

Pennsylvania case law generally does not consider unauthorized access to medical records or information sufficiently offensive to cause mental suffering or humiliation so as to sustain a cause of action for intrusion upon seclusion. In Chicarella v. Passant, 343 Pa. Super. 330, 494 A.2d 1109 (1985), the plaintiff sued a liability insurer, its investigator, and a hospital for intrusion upon seclusion after the hospital's credit manager privately provided the investigator with information concerning the plaintiff's treatment at the hospital. Id. at 334-335, 494 A.2d at 1111-12. The records at issue contained information regarding the plaintiff's "medical complaint, diagnosis, and charge for each visit," and reflected that plaintiff "was treated for bronchitis, hematemisis, a shoulder injury, and a

- 44 -

series of migraine headaches." Id. at 339, 494 A.2d at 1114. In rejecting the plaintiff's

contention that the defendants "intentionally intruded upon his private affairs by securing

the hospital's records," the Superior Court noted that "liability will not attach to that act

unless the intrusion is *substantial* and *highly offensive*," and concluded that the discovery

of the plaintiff's "medical treatment cannot be deemed a substantial intrusion" and that

"the information disclosed by the hospital records is not of the sort which would cause

mental suffering, shame or humiliation to a person of ordinary sensibilities." Id.

(emphasis in original). *Accord*, Adamski v. Johnson, 80 Pa. D. & C. 4th 69, 71-74

(Monroe Co. 2006) (employer, who improperly learned "the particulars of [the

employee's] pending surgery by questioning [her] fellow employees" after she "refused to

divulge" requested "information on the nature of the surgery," could not be found liable

for intrusion upon seclusion claim since the employee did not allege "sufficient facts to

establish a substantial intrusion of a highly offensive nature" and the disclosure of the

employee's "prospective surgery, which was certainly her private affair," would not

"cause her mental suffering, shame or humiliation."); Yerger v. Landis Manufacturing

Systems, Inc., 1989 WL 66443, at *7 (E.D. Pa. 1989) ("Medical reports or brief

descriptions of common ailments or treatments are insufficient as a matter of law to meet

the standard" of being "offensive to a reasonable person" and "caus[ing] mental suffering,

shame or humiliation to a person of ordinary sensibilities.").

Based upon Chicarella, the alleged actions of PHA, Moses Taylor, and

Commonwealth Health in discovering Dr. Galardi's status as Palmiter's treating physician

via unauthorized access to her medical records are insufficient as a matter of law to

establish an intrusion that "was substantial and highly offensive to a reasonable person"

- 45 -

and which disclosed information that "would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities."[13] Pro Golf Manufacturing, Inc., 570 Pa. at 248, 809 A.2d at 247. Thus, "on the facts averred, the law says with certainty that no recovery is possible" by Palmiter for invasion of privacy/intrusion upon seclusion. Keller, 212 A.3d at 56. As a result, the demurrers to Counts III and V of the third amended complaint will be sustained.

### (E) VIOLATION OF PUBLIC POLICY

"It is well-settled that Pennsylvania is an at-will employment state," Greco v. Myers Coach Lines, Inc., 199 A.3d 426, 435 (Pa. Super. 2018), app. denied, 208 A.3d 462 (Pa. 2019), and as a general rule, "there is no common law cause of action against an employer for termination of an at-will employment relationship." McLaughlin v. Gastrointestinal Specialists, Inc., 561 Pa. 307, 313-314, 750 A.2d 283, 287 (2000) (quoting Paul v. Lankenau Hospital, 524 Pa. 90, 95, 569 A.2d 346, 348 (1990)). Rather, "absent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason." Weaver v. Harpster, 601 Pa. 488, 500, 975 A.2d 555, 562 (2009). An at-will employee "may bring a cause of action for a termination of that relationship only in the most limited circumstances, where the

---

[13]As noted above, it appears that the alleged access to Palmiter's medical records occurred after she commenced this lawsuit on February 21, 2019. (Docket Entry No. 1). A plaintiff waives the physician-patient privilege, 42 Pa.C.S. § 5929, by filing a civil action for personal injuries, Moses v. McWilliams, 379 Pa. Super. 150, 160-161, 549 A.2d 950, 955 (1988), app. denied, 521 Pa. 630, 558 A.2d 532 (1989), and similarly waives the psychiatrist/licensed psychologist-privilege, 42 Pa.C.S. § 5944, by filing a lawsuit alleging anxiety, mental injury, severe emotional trauma requiring treatment, or any comparable psychiatric/psychological condition. Gormley v. Edgar, 995 A.2d 1197, 1205-06 & n.8-9 (Pa. Super. 2010). The implied waivers of those privileges do not entitle a treating physician, psychiatrist, or licensed psychologist to privately discuss the patient's medical or psychological information with the patient's adversary in litigation. See Marek v. Ketyer, 733 A.2d 1268, 1270 (Pa. Super. 1999), app. denied, 561 Pa. 677, 749 A.2d 471 (2000); White v. Behlke, 65 Pa. D. & C. 4th 479, 486-489 (Lacka. Co. 2004). Palmiter merely alleges that PHA, Moses Taylor, and Commonwealth Health advised Dr. Galardi to terminate her physician-patient relationship with Palmiter, and does not contend that any medical or mental health information was privately discussed or disclosed.

termination implicates a clear mandate of public policy." <u>Id.</u> at 502, 975 A.2d at 563;

<u>Stewart v. FedEx Express</u>, 114 A.3d 424, 427 (Pa. Super. 2015), *app. denied*, 633 Pa. 781,

126 A.3d 1285 (2015).

"Our Supreme Court first recognized in <u>Geary v. U. S. Steel Corp.</u>, 456 Pa. 171,

319 A.2d 174 (1974), that an at-will employee may have a cause of action against an

employer for wrongful discharge when the discharge threatens a clear mandate of public

policy." <u>Owens v. Lehigh Valley Hospital</u>, 103 A.3d 859, 862 (Pa. Cmwlth. 2014).

However, "[i]n our judicial system, the power of the courts to declare pronouncements of

public policy is sharply restricted," and "it is for the legislature to formulate the public

policies of the Commonwealth." <u>Weaver, supra</u>; <u>Gross v. Nova Chemicals Services, Inc.</u>,

161 A.3d 257, 262 (Pa. Super. 2017). To that end, "we declare the public policy of this

Commonwealth by examining the precedent within Pennsylvania, looking to our own

Constitution, court decisions, and statutes promulgated by our legislature." <u>McLaughlin</u>,

561 Pa. at 315-216, 750 A.2d at 288. Applying this standard, Pennsylvania courts have

found actionable public policy exceptions to the at-will employment doctrine where the

termination was in retaliation for filing a worker's compensation claim, <u>Shick v. Shiery</u>,

552 Pa. 590, 716 A.2d 1238 (1998), for failing to dissuade a subordinate employee from

filing a worker's compensation claim, <u>Rothrock v. Rothrock Motor Sales, Inc.</u>, 584 Pa.

297, 883 A.2d 511 (2005), for filing an unemployment compensation claim, <u>Highhouse v.</u>

<u>Avery Transportation</u>, 443 Pa. Super. 120, 660 A.2d 1374 (1995), for refusing to submit

to a polygraph test in contravention of 18 Pa.C.S. § 7321, <u>Kroen v. Bedway Security</u>

<u>Agency, Inc.</u>, 430 Pa. Super. 83, 633 A.2d 628 (1993), for reporting a nuclear safety

violation to the Nuclear Regulatory Commission in compliance with federal law, <u>Field v.</u>

- 47 -

Philadelphia Electric Company, 388 Pa. Super. 400, 565 A.2d 1170 (1989), for exercising

First Amendment rights by refusing to participate in the employer's legislative lobbying

efforts and by opposing the employer's political position, Novosel v. Nationwide

Insurance Company, 721 F.2d 894 (3d Cir. 1983), for serving on a jury pursuant to 42

Pa.C.S. § 4501, Reuther v. Fowler & Williams Inc., 255 Pa. Super. 28, 386 A.2d 119

(1978), and for filing a complaint with the Pennsylvania Human Relations Commission

alleging disability discrimination, Nazar v. Clark Distribution Systems, Inc., 46 Pa. D. &

C. 4th 28 (Lacka. Co. 2000).

What has evolved from this body of case law is that "an employer (1) cannot

require an employee to commit a crime, (2) cannot prevent an employee from complying

with a statutorily imposed duty, and (3) cannot discharge an employee when specifically

prohibited from doing so by statute." Greco, 199 A.3d at 436; Mikhail v. Pennsylvania

Organization for Women in Early Recovery, 63 A.3d 313, 317 (Pa. Super. 2013) (quoting

Spierling v. First American Home Health Services, Inc., 737 A.2d 1250, 1252 (Pa. Super.

1999)). Outside of those categories of our legislature's expression of public policy, a

court may find a public policy exception that will sustain a wrongful termination action

only if the public policy "is so obviously for or against public health, safety, morals, or

welfare that there is a virtual unanimity of opinion in regard to it." Weaver, 601 Pa. at

502, 975 A.2d at 563; Stewart, 114 A.3d at 428; Owens, 103 A.3d at 863. The issue

"before any court in deciding such a case is the broader question of whether the employee

alleged that the termination violated **any** clear mandate of a public policy of this

Commonwealth," and the public policy exception does not require an employee to

- 48 -

identify a specific policy "that relates to the employer-employee relationship" between the parties. Mikhail, 63 A.3d at 320 (emphasis in original).

Thus, an at-will employee may state a cognizable claim for wrongful discharge by averring that [s]he was terminated for a reason that a statute expressly prohibits the employer from using as a basis to terminate the employment relationship. *See* Roman, 127 A.3d at 33. Section 2103(b)(1) of the MMA distinctly states that "[n]o employer may discharge...or otherwise discriminate or retaliate against an employee...solely on the basis of such employee's status as an individual who is certified to use medical marijuana." Palmiter has alleged that PHA, Moses Taylor, and Commonwealth Health terminated her employment on January 29, 2019, on the singular ground that she was a certified medical marijuana user. Such a discharge "implicates a clear mandate of public policy" as declared by the General Assembly in the unambiguous language of 35 P.S. § 10231.2103(b)(1). Accepting as true the factual allegations set forth in the third amended complaint, Palmiter has stated a cause of action for wrongful discharge under the public policy exception to the at-will employment doctrine, and the demurrer to Count IV of the third amended complaint will, therefore, be overruled.[14]

---

[14]An at-will employee cannot maintain a separate common law action for wrongful discharge based upon public policy grounds if that employee has a statutory cause of action or remedy. *See* Clay v. Advanced Computer Applications, 522 Pa. 86, 89, 559 A.2d 917, 118 (1989); Jacques v. Akzo International Salt, Inc., 422 Pa. Super. 419, 428-429, 619 A.2d 748, 753 (1993). However, it is also true that Pa.R.C.P. 1020(c) permits a party to plead causes of action in the alternative, even if the claims asserted are inconsistent, so long as they are pled in separate counts of the pleading. Khawaja v. RE/MAX Central, 151 A.3d 626, 633 (Pa. Super. 2016); Lugo v. Farmer's Pride, Inc., 967 A.2d 963, 970 (Pa. Super. 2009), *app. denied*, 602 Pa. 668, 980 A.2d 609 (2009). Therefore, although Palmiter maintains that she has a private cause of action under the MMA, she may plead in the alternative that she has a public policy-based claim for wrongful discharge.

PAMELA PALMITER,                    :    IN THE COURT OF COMMON PLEAS
                                    :        OF LACKAWANNA COUNTY
                                    :
                Plaintiff           :
                                    :
            vs.                     :    CIVIL ACTION - LAW
                                    :
                                    :
COMMONWEALTH HEALTH SYSTEMS,        :
INC. d/b/a COMMONWEALTH HEALTH,     :
PHYSICIANS HEALTH ALLIANCE d/b/a    :
COMMONWEALTH HEALTH, and            :
MOSES TAYLOR HOSPITAL d/b/a         :
COMMONWEALTH HEALTH,                :
                                    :
                                    :
                Defendants          :    NO.  19 CV 1315


## ORDER

AND NOW, this 22nd day of November, 2019, upon consideration of

"Defendants' Preliminary Objections to Plaintiff's Third Amended Complaint," the

memoranda of law submitted by the parties, and the oral argument of counsel, and based

upon the reasoning set forth in the foregoing Memorandum, it is hereby ORDERED and

DECREED that:

1.      Defendant's preliminary objections in the nature of a demurrer to Count I and

Count IV of the plaintiff's third amended complaint are OVERRULED;

2.      Defendant's preliminary objections in the nature of a demurrer to Count II,

Count III, and Count V of plaintiff's third amended complaint are SUSTAINED; and

- 50 -

3.     Within the next twenty (20) days, defendants shall file a responsive pleading to the third amended complaint, with the exception of paragraphs 21-37 and 43-47 which have been stricken pursuant to Pa.R.C.P. 1028(a)(4) by virtue of paragraph two above.

BY THE COURT:

Terrence R. Nealon

cc:     *Written notice of the entry of the foregoing Memorandum and Order has been provided to each party pursuant to Pa. R. C. P. 236 (a)(2) and (d) by transmitting time-stamped copies via electronic mail to:*

Cynthia L. Pollick, Esquire            pollick@lawyer.com
The Employment Law Firm
363 Laurel Street
Pittston, PA  18640
            Counsel for Plaintiff

Sidney R. Steinberg, Esquire          ssteinberg@postschell.com
Kayleen Egan, Esquire                 kegan@postschell.com
Post & Schell, P.C.
14th Floor, Four Penn Center
1600 John F. Kennedy Boulevard
Philadelphia, PA  19103
            Counsel for Defendants