**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **DONNA R. HUDNELL,** | Civil Action No. **2:20-cv-01621-GJP** |
| **Plaintiff,** | |
| v. | |
| **THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC.,** | |
| **Defendant.** | |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2020, it is hereby **ORDERED** that Defendant Thomas Jefferson University Hospitals, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint in Part is **GRANTED** and that Counts One, Two, Three, Four, Five, Eight and Ten of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE**.

**BY THE COURT:**


_____
**GERALD J. PAPPERT, J.**

20621238v3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DONNA R. HUDNELL,** | Civil Action No. 2:20-cv-01621-GJP |
| **Plaintiff,** | |
| **v.** | |
| **THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC.,** | |
| **Defendant.** | |

## <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN PART</u>

Defendant Thomas Jefferson University Hospitals, Inc. ("Jefferson"), by counsel, hereby moves to dismiss Counts One, Two, Three, Four, Five, Eight and Ten of Plaintiff's Second Amended Complaint ("SAC") under Fed. R. Civ. P. 12(b)(1) and (6) for lack of subject-matter jurisdiction and for failure to state any claim upon which relief can be granted.  Jefferson relies upon the accompanying Brief in Support, which is incorporated herein as if set forth at length.

**WHEREFORE**, Jefferson  respectfully requests that this Court dismiss Counts One, Two, Three, Four, Five, Eight and Ten of Plaintiff's SAC with prejudice.

Respectfully submitted,

**POST & SCHELL, P.C.**

Dated:  <u>July 28, 2020</u>

<u>/s/ Sidney R. Steinberg</u>
SIDNEY R. STEINBERG, ESQUIRE
ssteinberg@postschell.com
DANIEL F. THORNTON, ESQUIRE
dthornton@postschell.com
1600 John F. Kennedy Blvd., 14th Floor
Philadelphia, PA 19103
215-587-1000

*Counsel for Defendant*

20621238v3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DONNA R. HUDNELL,** | Civil Action No. 2:20-cv-01621-GJP |
| **Plaintiff,** | |
| **v.** | |
| **THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC.,** | |
| **Defendant.** | |

---

**BRIEF IN SUPPORT OF THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT IN PART**

---

**POST & SCHELL, P.C.**
Sidney R. Steinberg, Esquire
ssteinberg@postschell.com
Daniel F. Thornton, Esquire
dthornton@postschell.com
Four Penn Center
1600 John F. Kennedy Blvd., 14th Floor
Philadelphia, PA 19103
215-587-1000

*Counsel for Defendant*

Sidney R. Steinberg (SBN 54564)
Daniel F. Thornton (SBN 318431)
On the Brief

20621238v3

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

I.      INTRODUCTION ................................................................................................1

II.     PROCEDURAL HISTORY..................................................................................1

III.    ALLEGED FACTS (AS OPPOSED TO LEGAL CONCLUSIONS)...................2

IV.     ARGUMENT .......................................................................................................3

        A.      MOTION TO DISMISS STANDARD.....................................................4

        B.      PLAINTIFF'S MMA DISCRIMINATION AND WRONGFUL
                DISCHARGE CLAIMS SHOULD BE DISMISSED BECAUSE
                SHE WAS NOT AN "INDIVIDUAL WHO IS CERTIFIED TO
                USE MEDICAL MARIJUANA" AT THE TIME OF HER DRUG
                TEST AND BECAUSE A WRONGFUL DISCHARGE CLAIM
                BASED ON DRUG TEST RESULTS IS NOT VIABLE UNDER
                PENNSYLVANIA LAW (COUNTS FIVE AND TEN).......................5

                1.      Since Plaintiff Was Not an "Individual Who Is Certified to Use Medical
                        Marijuana" at the Time of Her Failed Drug Test, She Has No Viable
                        Claim under the MMA...............................................................................5

                2.      Since the MMA Contains No Private Right of Action, Plaintiff's MMA
                        Claim Should Be Dismissed .....................................................................6

                        a.      Private Right of Action Must Be Clearly Implied by Statute ..........7

                        b.      The MMA Does Not Create a "Personal Right" For an
                                Individual, Because it Focuses Exclusively on "the Person
                                Regulated"   Rather Than the "Individual Protected"....................8

                        c.      The MMA Provides No Remedy for a Private Right of Action ....10

                        d.      The MMA Vests Enforcement Authority Solely in the
                                Department of Health...................................................................10

                3.      Since Pennsylvania's Courts Have Never Recognized a Claim for
                        Wrongful Discharge in Violation of Public Policy Based on the
                        Results   of a Drug Test, Plaintiff's Wrongful Discharge Claim
                        Should Be Dismissed ..............................................................................11

C. PLAINTIFF'S PHRA CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW BECAUSE PLAINTIFF HAS FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES (COUNTS ONE, THREE AND EIGHT). ..............................................................................15

D. PLAINTIFF'S DISABILITY DISCRIMINATION AND RETALIATION CLAIMS SHOULD BE DISMISSED BECAUSE SHE HAS NOT ALLEGED SUFFICIENT FACTS TO SUPPORT THAT JEFFERSON FAILED TO REASONABLY ACCOMMODATE HER OR THAT SHE ENGAGED IN ANY PROTECTED CONDUCT (COUNTS ONE, TWO, THREE AND FOUR)..........................................................................................................17

   1. Illegal Drug Use Is Not a Reasonable Accommodation ...........................17

   2. None of Plaintiff's Other Suggested "Accommodations" are Recognized Reasonable Accommodations .................................................19

   3. Plaintiff Never Requested a Reasonable Accommodation .......................21

   4. Plaintiff Fails to State a Facial Retaliation Claim.....................................23

V. CONCLUSION.................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                                                    <u>Page(s)</u>

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ................................................................................................7, 8

*Anspach v. City of Phila.*,
   503 F.3d 256 (3d Cir. 2007) .......................................................................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................4

*Barber v. Gonzales*,
   No. CV-05-0173-EFS, 2005 U.S. Dist. LEXIS 37411 (E.D. Wash. July 1,
   2005) .........................................................................................................................17

*Barrett v. Robert Half Corp.*,
   No. 15-6245, 2017 U.S. Dist. LEXIS 219116 (D.N.J. Feb. 21, 2017) ...................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................4

*Bialy v. Chipotle Mexican Grill*,
   Civil Action No. 16-42, 2018 U.S. Dist. LEXIS 45883 (W.D. Pa. Mar. 21,
   2018) .........................................................................................................................22

*Blakney v. City of Phila.*,
   No. 12-6300, 2013 U.S. Dist. LEXIS 77925 (E.D. Pa. June 4, 2013) ....................24

*Brown v. Priority Health Care Grp.*,
   LLC, No. 1:19-cv-00116, 2019 U.S. Dist. LEXIS 169580 (M.D. Pa. Oct. 1,
   2019) ....................................................................................................................19, 20

*Bruffet v. Warner Comm'ns, Inc.*,
   692 F.2d 910 (3d Cir. 1982) .....................................................................................11

*Clay v. Advanced Computer Applications*,
   522 Pa. 86, 559 A.2d 917 (1989) .......................................................................12, 13

*Commonwealth v. Handley*,
   213 A.3d 1030 (Pa. Super. 2019) ...............................................................................5

*Commonwealth v. Jezzi*,
   208 A.3d 1105 (Pa. Super. 2019) ...............................................................................5

*Commonwealth v. Waddell*,
   61 A.3d 196 (Pa. Super. 2012) ...................................................................................6

*Connelly v. Lane Constr. Corp.*,
  809 F.3d 780 (3d Cir. 2016)........................................................................................4, 5

*Cotto v. Ardagh Glass Packing, Inc.*,
  No. 18-1037, 2018 U.S. Dist. LEXIS 135194 (D.N.J. Aug. 10, 2018) ...................................20

*Demshick v. Del. Valley Convalescent Homes, Inc.*,
  No. 05-2251, 2007 U.S. Dist. LEXIS 31064 (E.D. Pa. Apr. 26, 2007)...................................18

*Donahue v. Federal Express Corporation*,
  753 A.2d 238 (Pa. Super. Ct. 2000) ...................................................................................13

*Evancho v. Fisher*,
  423 F.3d 347 (3d. Cir. 2005)................................................................................................2

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)................................................................................................4

*Fraser v. Nationwide Mut. Ins. Co.*,
  352 F.3d 107 (3d Cir. 2004)..............................................................................................13

*Fuoco v. Lehigh Univ.*,
  981 F. Supp. 2d 352 (E.D. Pa. 2013) ..................................................................................22

*Garcia v. Tractor Supply Co.*,
  154 F. Supp. 3d 1225 (D.N.M. 2016) .................................................................................17

*Garner v. Rentenbach Constructors, Inc.*,
  350 N.C. 567, 515 S.E.2d 438 (1999)................................................................................14

*Gass v. 52nd Judicial Dist.*,
  No. 118 MM 2019, ___ Pa. ___, 2020 Pa. LEXIS 3375 (Pa. June 18, 2020) .....................5, 6

*Gilmore v. Enogex, Inc.*,
  1994 OK 76, 878 P.2d 360.................................................................................................14

*Hassan v. The City of New York*,
  804 F.3d 277 (3d Cir. 2015)................................................................................................4

*Hennessey v. Coastal Eagle Point Oil Co.*,
  129 N.J. 81, 609 A.2d 11 (1992).......................................................................................14

*Hershberger v. Jersey Shore Steel Co.*,
  394 Pa. Super. 363, 575 A.2d 944 (1990)...........................................................................14

*Hunger v. Grand Central Sanitation*,
  447 Pa. Super. 575 (1996).................................................................................................13

20621238v3

*Hurt v. Phila. Hous. Auth.*,
  70 Pa. D. & C. 4th 142 (C.P. 2005) ...................................................................10

*Jacques v. Akzo Int'l Salt, Inc.*
  619 A.2d 748 (Pa. Super. Ct. 1993) ...................................................................12

*James v. City of Costa Mesa*,
  700 F.3d 394 (9th Cir. 2012) ...............................................................................17

*Krajsa v. Keypunch, Inc.*,
  424 Pa. Super. 230 (1993)....................................................................................12

*Macken v. Lord Corp.*,
  585 A.2d 1106 (Pa. Super. Ct. 1991) ..................................................................11

*Majtan v. Weck*,
  No. 99-718, 2000 U.S. Dist. LEXIS 13817 (E.D. Pa. Sep. 21, 2000) ....................18

*Manly v. Allentown Hosp.-Lehigh Valley Hosp. Ctr.*,
  18 Pa. D. & C. 4th 275 (C.P. 1992) ...................................................................14

*Marrero v. City of N.Y.*,
  2011 U.S. Dist. LEXIS 4358 (S.D.N.Y. Jan. 13, 2011)........................................24

*McGonagle v. Union Fid. Corp.*,
  556 A.2d 878 (Pa. Super. 1989)...........................................................................15

*NASDAQ OMX PHLX, Inc. v. Pennmont Sec.*,
  52 A.3d 296 (Pa. Super. Ct. 2012).........................................................................8

*Palmiter v. Commonwealth Health Systems, Inc.*,
  No. 19 CV 1315 (Pa. Com. Pl. Lackawanna Cnty. Nov. 22, 2019), *petition for
  permission to appeal granted*, No. 2 MDM 2020 (Pa. Super. Mar. 20, 2020) ........6

*Parrotta v. PECO Energy Co.*,
  363 F. Supp. 3d 577 (E.D. Pa. 2019) ..................................................................19

*Paul v. Lankenau Hospital*,
  524 Pa. 90 (1990)................................................................................................12

*Phillips v. Cty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008)...................................................................................5

*Popko v. Penn State Milton S. Hershey Med. Ctr.*,
  No. 1:13-cv-01845, 2014 U.S. Dist. LEXIS 95486 (M.D. Pa. July 14, 2014) ........22

*Rinehimer v. Cemcolift*,
  292 F.3d 375 (3d Cir. 2002)................................................................................21

v

*Roe v. Quality Transp. Servs.*,
   67 Wash. App. 604, 838 P.2d 128 (Wash. Ct. App. 1992) ....................................15

*Santiago v. Warminster Twp.*,
   629 F.3d 121 (3d Cir. 2010)........................................................................................4

*Sever v. Henderson*,
   381 F. Supp. 2d 405 (M.D. Pa. 2005), *aff'd*, 220 F. App'x 159 (3d Cir. 2007) ...............21, 22

*Shick v. Shirey*,
   552 Pa. 590 (1998) ..................................................................................................11, 13

*Simpson v. Brand Energy Servs.*,
   LLC, No. 14-184, 2015 U.S. Dist. LEXIS 282 (D.N.J. Jan. 5, 2015) ....................................24

*Stein v. Davidson Hotel Co.*,
   945 S.W.2d 714 (Tenn. 1997) ..................................................................................15

*Swope v. Cent. York Sch. Dist.*,
   796 F. Supp. 2d 592 (M.D. Pa. 2011) .....................................................................15

*Taylor v. Phoenixville Sch. Dist.*,
   184 F.3d 296 (3d Cir. 1999)..........................................................................18, 19, 21

*Thompson v. AT&T Corp.*,
   371 F. Supp. 2d 661 (W.D. Pa. 2005).....................................................................19

*Touche Ross & Co. v. Redington*,
   442 U.S. 560 (1979).................................................................................................10

*Tryboski v. Pa. State Univ.*,
   No. 1208 MDA 2012, 2013 Pa. Super. Unpub. LEXIS 386 (Pa. Super. Ct.
   Apr. 1, 2013) ...........................................................................................................18

*United States v. Jackson*,
   388 F. Supp. 3d 505 (E.D. Pa. 2019) ........................................................................6

*Wilkinson v. Marvin E. Klinger, Inc.*,
   No. 4:15-cv-01916, 2017 U.S. Dist. LEXIS 199497 (M.D. Pa. Dec. 5, 2017) ......................20

*Williams v. Aramark Campus LLC*,
   No. 18-5374, 2020 U.S. Dist. LEXIS 42835 (E.D. Pa. Mar. 11, 2020)................................23

*Wisniewski v. Rodale, Inc.*,
   510 F.3d 294 (3d Cir. 2007)...............................................................................8, 9, 10, 11

*Estate of Witthoeft v. Kiskaddon*,
   733 A.2d 623 (Pa. 1997) ............................................................................................7

vi

*Woodson v. Scott Paper Co.*,
  109 F.3d 913 (3d Cir. 1997)...........................................................................16

*Yetter v. Ward Trucking Corp.*,
  401 Pa. Super. 467 (1991)............................................................................13

**Statutes**

21 U.S.C. § 802......................................................................................................17

21 U.S.C. § 812(b)(1)(C) ......................................................................................17

42 U.S.C. § 1981......................................................................................................2

Civil Rights Act of 1964 Title VII .........................................................................2

Controlled Substances Act section 102.................................................................17

Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act Schedule I...................5, 17

Pennsylvania Human Relations Act, 43 P.S. §§ 951 to 963 .................................. *passim*

Pennsylvania Medical Marijuana Act, 35 P.S. §§ 10231.101 ............................... *passim*

Philadelphia Fair Practices Ordinance, Phila. Code §§ 9-1101 to -1130.............................. *passim*

Postal Reorganization Act Section 3009...........................................................8, 9, 11

**Other Authorities**

21 C.F.R. § 1308.11(d)(23).....................................................................................17

Fed. R. Civ. P. 4........................................................................................................1

Fed. R. Civ. P. 12(b)(1) and (6) .....................................................................4, 15, 16, 24

Fed. R. Civ. P. 15...............................................................................................1, 24

20621238v3

## I.      INTRODUCTION

Plaintiff Donna R. Hudnell admits that she tested positive for marijuana in a return-to-work drug test.  She was not legally authorized to use marijuana at the time of the test.  She also does not allege that she requested any reasonable accommodation before or during the testing process.  Further, she has not exhausted the administrative remedies available to redress her state-law claims.  Nevertheless, she now attempts to bring claims for disability discrimination, race discrimination, medical-marijuana discrimination, retaliation and wrongful discharge against her former employer.  Her attempt should be rejected.

## II.     PROCEDURAL HISTORY

On May 29, 2020, Plaintiff's counsel requested that Defendant Thomas Jefferson University Hospitals, Inc. ("Jefferson") waive service of process pursuant to Fed. R. Civ. P. 4. ECF No. 12.  In response, the undersigned counsel executed a Waiver of Service on Jefferson's behalf, giving Jefferson until July 28, 2020—sixty days after the request was made—to respond to the Complaint.  Fed. R. Civ. P. 4(d)(3).

On June 4, 2020, Plaintiff filed a Second Amended Complaint ("SAC") (ECF No. 17), which filing did not alter Jefferson's response deadline.  *See* Fed. R. Civ. P. 15(a)(3) ("[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.").

The SAC attempts to state claims for disability discrimination based on failure to accommodate under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 to 963 (Count One) and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code §§ 9-1101 to -1130 (Count Two); retaliation in violation of the PHRA (Count Three) and the PFPO (Count Four); medical-marijuana discrimination in violation of the Pennsylvania Medical Marijuana Act

("MMA"), 35 P.S. §§ 10231.101 to .2110 (Count Five); race discrimination in violation of 42
U.S.C. § 1981 (Count Six), Title VII of the Civil Rights Act of 1964 (Count Seven), the PHRA
(Count Eight), and the PFPO (Count Nine); and wrongful discharge in violation of the public
policy set forth in MMA Section 2103(b) (Count Ten).  SAC at ¶¶ 109-160.

### III.    ALLEGED FACTS (AS OPPOSED TO LEGAL CONCLUSIONS)

The following facts are taken as true for the purpose of the instant Motion only.  *Evancho
v. Fisher*, 423 F.3d 347, 350 (3d. Cir. 2005).  Plaintiff's SAC also contains "bald assertions" and
speculations shorn of any factual basis, which should not be taken as true or credited by this
Court.  *Anspach v. City of Phila.*, 503 F.3d 256, 260-61 (3d Cir. 2007).

Plaintiff began her employment with Jefferson as a Security Analyst I in July 2016.  SAC
at ¶¶ 18-19.

In 2018, Plaintiff began to "experience[] significant pain" from unspecified "disabilities."
*Id.* at ¶ 23.  On or about August 21, 2018, Plaintiff's physician certified her to use medical
marijuana under the MMA.  *Id.* at ¶¶ 24-25.

In May 2019, Jefferson accommodated Plaintiff's request to work from home full-time
due to her continued pain.  *Id.* at ¶ 29.  Plaintiff took a medical leave of absence from July 5,
2019 to September 24, 2019.  *Id.* at ¶¶ 30-35.  Plaintiff's medical marijuana card expired on
August 20, 2019.  *Id.* at ¶ 42; MMA § 501(e) ("An identification card of a patient . . . shall expire
within one year from the date of issuance.").  When Plaintiff requested to return to work in
October 2019, Jefferson advised her that she would need to complete a drug test and to submit a
doctor's note clearing her to return to work.  SAC at ¶¶ 36-37.

Plaintiff's drug test took place on October 11, 2019.  *Id.* at ¶ 39.  The nurse
administering the test told Plaintiff that her medical marijuana card had expired.  *Id*. at ¶ 42.

Plaintiff tested positive for marijuana.  Plaintiff asked the nurse if she could submit her medical marijuana card after it was renewed.  *Id.* at ¶ 52.  The nurse advised Plaintiff that she would need to speak to Human Resources "for further instructions."  *Id.*  Jefferson terminated Plaintiff's employment due to her positive marijuana test.  *Id.* at ¶¶ 57-62.

Plaintiff's medical marijuana card was re-certified on October 20, 2019, nine days after her positive marijuana test.  *Id.* at ¶ 56.  On October 21, 2019, Plaintiff admitted in writing to a Jefferson employee that her medical marijuana card was expired at the time of her drug test.  *Id.* at ¶ 67.  On October 24, 2019, Plaintiff spoke with Jefferson Human Resources Business Partner Kristin Kelleher and stated that Jefferson should have offered to postpone her drug test.  *Id.* at ¶¶ 70-74.

In her Complaint, Plaintiff contends that Jefferson should have asked her "if there was an equally effective, alternative medication to medical marijuana that she could use to treat her disabilities that was not objectionable to [Jefferson]."  *Id.* at ¶¶ 99, 115.  She alleges that she requested that Jefferson "postpon[e] her drug test, waiv[e] her drug test, or permit[] her to use an alternative medication" by way of accommodation.  *Id.* at ¶ 113.

## IV.    ARGUMENT

Plaintiff attempts to state claims for disability discrimination based on failure to accommodate and retaliation under the PHRA and the PFPO (Counts One, Two, Three and Four), medical-marijuana discrimination under the MMA (Count Five); race discrimination under Title VII, Section 1981, the PHRA and the PFPO (Counts Six, Seven, Eight and Nine), and wrongful discharge contrary to the MMA (Count Ten).  For the reasons set forth, Counts One, Two, Three, Four, Five and Ten fail to state any viable claim and should be dismissed with prejudice as a matter of law.

A.      **Motion to Dismiss Standard**

Fed. R. Civ. P. Rule 12(b)(6) permits a claim to be dismissed for "failure to state a claim upon which relief can be granted."  A viable claim requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," nor accept as true unsupported conclusions and unwarranted inferences.  *Twombly*, 550 U.S. at 555 (citation omitted).  Accordingly, courts in the Third Circuit engage in a three-step analysis at the motion to dismiss stage:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  *Iqbal*, 129 S. Ct. at 1947.  Second, the court should identify allegations that, "because they are not more than conclusions, are not entitled to the assumption of truth."  *Id.* at 1950.  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  *Id.*

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (alterations in original; footnote omitted); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Without "sufficient factual matter to show that the claim is facially plausible," a complaint must be dismissed.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (noting that *Twombly*'s "plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination.").

While Plaintiff is "not required to establish the elements of a *prima facie* case" in order to prevent dismissal of her claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, such elements serve as a touchstone for courts to assess whether a party has plausibly pled claims for relief.  *Fowler*, 578 F. 3d at 213; *Hassan v. The City of New York*, 804 F.3d 277, 296 n.6 (3d Cir.

2015); *see also Connelly*, 809 F.3d at 789; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (stating that plaintiff must "raise a reasonable expectation that discovery will reveal evidence of the necessary element.").

> **B.      Plaintiff's MMA Discrimination and Wrongful Discharge Claims Should Be Dismissed Because She Was Not an "Individual Who Is Certified to Use Medical Marijuana" at the Time of Her Drug Test and Because a Wrongful Discharge Claim Based on Drug Test Results Is Not Viable under Pennsylvania Law (Counts Five and Ten).**

> > **1.      Since Plaintiff Was Not an "Individual Who Is Certified to Use Medical Marijuana" at the Time of Her Failed Drug Test, She Has No Viable Claim under the MMA**

The MMA only prohibits discrimination against an employee where the action in question is taken "solely on the basis of such employee's status as an individual who is certified to use medical marijuana." MMA § 2103(b)(1). The Act requires that "[a] patient . . . *shall possess* an identification card whenever the patient . . . is in possession of medical marijuana." MMA § 303(b)(7) (emphasis added); *Gass v. 52nd Judicial Dist.*, No. 118 MM 2019, ___ Pa. ___, ___, 2020 Pa. LEXIS 3375, at *2 (Pa. June 18, 2020) (citing MMA §§ 303(b) & 103) ("[M]edical marijuana may only be dispensed, however, to patients who receive certifications from qualified physicians and possess a valid identification card issued by the Pennsylvania Department of Health."). Any other use of marijuana remains unlawful. MMA § 304(a) ("Except as provided in [the MMA], the use of medical marijuana is unlawful."). "The MMA provides a very limited and controlled vehicle for the legal use of medical marijuana by persons qualified under the MMA. Outside the MMA, marijuana remains a prohibited Schedule I controlled substance for the general citizenry who are unqualified under the MMA." *Commonwealth v. Jezzi*, 208 A.3d 1105, 1115 (Pa. Super. 2019) (citing MMA §§ 102(3) & 304); *see also Commonwealth v. Handley*, 213 A.3d 1030, 1040-41 (Pa. Super. 2019) (rejecting the proposition that the MMA's passage renders unconstitutional marijuana's inclusion in Schedule I

of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act); *Commonwealth v. Waddell*, 61 A.3d 196, 198 (Pa. Super. 2012) (rejecting the argument that marijuana no longer qualifies as a Schedule I substance because of its demonstrated medicinal value).

A valid medical marijuana card is a prerequisite in order to access the rights provided by the MMA, including those rights enumerated in Section 2103. *Gass*, *supra*, 2020 Pa. LEXIS 3375, at \*17 ("to the degree that they satisfy the Act's threshold requirements and obtain medical marijuana cards, each [individual] is entitled to the immunity afforded under Section 2103(a)"); *United States v. Jackson*, 388 F. Supp. 3d 505, 508-09 (E.D. Pa. 2019) (quoting MMA § 303) ("The Act also requires a 'patient' . . . to be 'in possession of a valid identification card issued by' the Pennsylvania Department of Health at any time they are in possession of medical marijuana.").

Here, Plaintiff admits that she did not possess a valid MMA identification card at the time of her positive drug test. SAC at ¶¶ 56. She was therefore not an "individual who is certified to use medical marijuana" during the drug test and cannot claim the MMA's protection. For these reasons, Plaintiff's MMA discrimination claim must be dismissed.

### 2. Since the MMA Contains No Private Right of Action, Plaintiff's MMA Claim Should Be Dismissed

Assuming that Plaintiff had possessed a valid medical marijuana card at the time of her drug test, her MMA claim still fails because the Act contains no private right of action.

Though Plaintiff cites Judge Nealon's decision in *Palmiter* on this point, this decision has been accepted for interlocutory appeal by the Pennsylvania Superior Court. *Palmiter v. Commonwealth Health Systems, Inc.*, No. 19 CV 1315 (Pa. Com. Pl. Lackawanna Cnty. Nov. 22, 2019), *petition for permission to appeal granted*, No. 2 MDM 2020 (Pa. Super. Mar. 20, 2020).

While the MMA, at 35 P.S. § 10231.2103(b)(1) ("Section 10231.2103(b)(1)"), provides that "[n]o employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee regarding an employee's compensation, terms, conditions, location or privileges solely on the basis of such employee's status as an individual who is certified to use medical marijuana," there is no explicit right of action by which an employee can directly enforce this prohibition.  Rather, the MMA specifically authorizes the Department of Health to issue civil penalties for violations of the MMA and permits the Department to pursue "any other remedy available to the [D]epartment[.]"  35 P.S. § 10231.1308(b).  Plaintiff, therefore, will be left to argue that the Court should do what the legislature did not—create a private right of action.  The Court should decline.

### a.      Private Right of Action Must Be Clearly Implied by Statute

The Pennsylvania Supreme Court has severely limited the circumstances where private rights of action may be found without express or implied guidance from the statute in question.  That is, a private right of action exists only if provided for in the statute or clearly implied by the statutory language or intent.  *See Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (Pa. 1997); *accord Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (holding that private rights of action "must be created" by legislatures).

In *Witthoeft*, the Pennsylvania Supreme Court looked to the United States Supreme Court for guidance in determining whether a state statute (there the Motor Vehicle Code) created a private right of action.  *Id.* at 627.  As explained by the Supreme Court, in determining whether there is a private cause of action:

> The Judicial task is to interpret the statute [the legislature] has
> passed to determine whether it displays an intent to create not just
> a private right but also a private remedy.  Statutory intent on this
> latter point is determinative.  Without it, a cause of action does not

exist and *courts may not create one*, no matter how desirable that
might be as a policy matter, or how compatible with the statute.

*Sandoval*, 532 U.S. at 286-87 (emphasis added) (citations omitted).

Legislative intent is the "sole touchstone" of the court's inquiry, *Wisniewski v. Rodale,
Inc.*, 510 F.3d 294, 303 (3d Cir. 2007), and this Court has held that "for an implied right of
action to exist, a statute must manifest [the legislature's] intent to create (1) a personal right, and
(2) a private remedy." *NASDAQ OMX PHLX, Inc. v. Pennmont Sec.*, 52 A.3d 296, 308 (Pa.
Super. Ct. 2012) (quoting *Three Rivers Ctr. v. Housing Authority of the City of Pittsburgh*, 382
F.3d 412, 421 (3d Cir. 2004)).  The MMA manifests neither.

> **b.      The MMA Does Not Create a "Personal Right" For an
> Individual, Because it Focuses Exclusively on "the Person
> Regulated" Rather Than the "Individual Protected"**

The issue of whether a statute contains a "personal right" hinges upon its focus on "the
individual" who is seeking protection.  The MMA explicitly focuses on "the person regulated"
rather than "the individual," precluding a finding of a "personal right" under the statute.

*Wisniewski* illustrates the critical distinction.  In *Wisniewski*, the Third Circuit examined
whether Congress intended to provide a private right of action under Section 3009 of the Postal
Reorganization Act ("PRA").  There, the Third Circuit's assessment of whether the statute
evinced legislative intent to create "a personal right" required a review "of the statute to
determine whether the statute contain[s] 'rights-creating' language that focuses on the
'individual protected' rather than 'the person regulated.'"  *Wisniewski*, 510 F.3d at 301-02
(quoting *Sandoval*, 532 U.S. at 288-89).

The court noted that the PRA contains three sections and its analysis of the language of
each illustrates the distinction between a focus on the "individual protected" versus the "person
regulated."  In the first section considered by the court, the PRA provides that merchandise

mailed in violation of the statute "may be treated by as a gift by the recipient, *who shall have the right* to retain, use, discard, or dispose of it in any manner[.]"  *Id.* at 302 (emphasis added) (quoting 39 U.S.C. § 3009(b)).  Because this section contains "an explicit reference to a right and a focus on the individual protected," the court found that it "suffices to demonstrate Congress's intent to create a *personal right* for recipients to treat unsolicited mail as a gift."  *Id.* (emphasis added).

In contrast, the court found that two other parts of the PRA did not contain "rights-creating" language, but rather focused on the "person regulated."  In particular, the second section required mailers (*i.e.*, the persons regulated) to "attach a 'clear and conspicuous statement' informing the recipient of his or her right to treat the merchandise as a gift," while the third section prohibited mailers from "sending a recipient a bill."  *Id.* at 302 (quoting 39 U.S.C. § 3009(b)).  The court concluded that "[t]hese provisions [unlike § 3009(b), which creates a personal right to treat unsolicited mailings as gifts] do not necessarily create 'personal rights' for recipients . . . . [Rather,] Congress worded them as prohibitions on the person regulated[.]"  *Id.*

The MMA, like the PRA, focuses exclusively on prohibiting certain actions by *employers,* rather than creating rights or entitlements for *employees*.  That is, the provision of the MMA referenced in the Complaint—Section 2103(b)(1)—focuses on prohibiting behavior by the person regulated—the employer—not on creating rights for the individual protected ("[n]o employer may discharge . . .").  There appears to be no precedent in Pennsylvania for a finding that a statute contains an implied private right of action where it—like the MMA—focuses exclusively upon the person to be regulated, rather than the individual protected.  For this reason, the MMA does not contain the rights-creating language necessary to create a private right of action.

        **c.**       **The MMA Provides No Remedy for a Private Right of Action**

Plaintiff's claim also fails at the second portion of the "rights-remedies dichotomy," as the MMA "says nothing about the consequences if" someone asserts the private right. *Wisniewski*, 510 F.3d at 306; *Hurt v. Phila. Hous. Auth.*, 70 Pa. D. & C. 4th 142 (C.P. 2005) (emphasis added) (quoting *Sandoval*, 532 U.S. at 286) ("[A] plaintiff suing under an implied right of action still *must* show that the statute manifests an intent 'to create not just a private right but also *a private remedy*'").  In this regard, the MMA provides no direction as to how the Court should fashion a remedy.  Simply put, nothing in the MMA indicates that the General Assembly intended to create a private right under the Act.

Similarly, the legislative history of the MMA provides no indication that the General Assembly intended to create a private right of action.  As the Supreme Court cautions, "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979).

        **d.**       **The MMA Vests Enforcement Authority Solely in the Department of Health**

Most importantly, while the General Assembly was silent as to a private right of action, it explicitly provided a comprehensive enforcement scheme for the Pennsylvania Department of Health ("DOH") that forestalls adding further rights of action by implication.  As noted, the MMA *specifically* authorizes DOH to issue civil penalties for violations of the MMA and permits it to pursue "any other remedy available[.]"  35 P.S. § 10231.1308(b); *see also* SAC Ex. C at 22 (ECF No. 17-3) (listing the MMA provisions that confer specific powers on the DOH). Under this provision, DOH's enforcement authority is not limited to particular portions of the MMA, but rather extends to *any* "violation of this act[,]" including Section 2103's employment provisions.  35 P.S. § 10231.1308(b).  The comprehensive nature of this enforcement scheme

distinguishes the MMA from these statutes under which other jurisdictions have implied private rights of action due to the absence of agency enforcement power.  *Compare* 35 P.S. § 10231.1308(b) *with* SAC Ex. C at 28-32 (ECF No. 17-3) (discussing authority from Arizona, Connecticut, Delaware, and Rhode Island).

"Agency enforcement creates a strong presumption against implied private rights of action that must be overcome."  *Wisniewski*, 510 F.3d at 305 (holding that there is no private right of action under the Postal Reorganization Act because, in part, the Federal Trade Commission is empowered to enforce the statute).  Under the plain language of Section 1308(b), Plaintiff's remedy under the MMA is to file a complaint with DOH—the agency charged with enforcement of the Act.

Since the MMA does not manifest the General Assembly's intent to create either a personal right or a private remedy, since the legislative history is silent on the matter, since the MMA provides no remedy for a private action and since the MMA provides for agency enforcement, Plaintiff cannot state a viable private cause of action under the MMA.

### 3.   Since Pennsylvania's Courts Have Never Recognized a Claim for Wrongful Discharge in Violation of Public Policy Based on the Results of a Drug Test, Plaintiff's Wrongful Discharge Claim Should Be Dismissed

Where, as here, the plaintiff has a statutory remedy available, there is no cause of action for termination in violation of public policy.  *Bruffet v. Warner Comm'ns, Inc.*, 692 F.2d 910, 919 (3d Cir. 1982) ("[T]he only Pennsylvania cases applying the public policy exception have done so where no statutory remedies were available."); *accord Shick v. Shirey*, 552 Pa. 590, 602 (1998) ("Where the legislature has spoken, however, we will not interpret statutory provisions to advance matters of supposed public interest."); *Macken v. Lord Corp.*, 585 A.2d 1106, 1108 (Pa. Super. Ct. 1991) (emphasis added) ("Pennsylvania recognizes a cause of action *in the absence of*

*a statutory remedy* and when an important, well-recognized facet of public policy is at stake"). It is not for any court to usurp the authority of the Legislature in determining that the remedy set forth in the statute is inadequate or that the Legislature "must have" intended to do what it explicitly did not.

In *Clay v. Advanced Computer Applications*, the Pennsylvania Supreme Court determined that an employee could not state a claim for wrongful discharge in violation of public policy by citing to the PHRA as the source of public policy violated by the termination, and that "the remedy that should have been invoked . . . was the one provided for by the PHRA." 522 Pa. 86, 90, 559 A.2d 917, 919 (1989)

Here, the alleged right is likewise one of "purely statutory origin," as there is no common-law cause of action for wrongful termination based on a positive drug test. Like the PHRA, the MMA provides a remedy for aggrieved employees through its administrative enforcement provisions. *See* 35 P.S. § 10231.1308(b). "[I]t is the existence of the remedy, not the success of the statutory claim, which determines preemption." *Jacques v. Akzo Int'l Salt, Inc.* 619 A.2d 748, 753 (Pa. Super. Ct. 1993). Accordingly, since the MMA vests the right of enforcement for alleged violations of the Act exclusively in the Department of Health—thus providing Plaintiff with a statutory remedy—the MMA cannot be the source of the "public policy" violated by Plaintiff's discharge.

Moreover, the Commonwealth's courts have never recognized a claim for wrongful discharge in violation of public policy based on the results of a drug test. "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Clay*, 522 Pa. at 89 (citing *Geary v. U.S. Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974)); *accord Paul v. Lankenau Hospital*, 524 Pa. 90, 93 (1990); *Krajsa v.*

*Keypunch, Inc.*, 424 Pa. Super. 230, 237 (1993).  The Pennsylvania Supreme Court has made clear that "[e]xceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy."  *Clay*, 522 Pa. at 89-90.  "The public policy exception is limited to terminations of employment that have violated a *clearly defined* mandate of public policy which 'strikes at the heart of a citizen's social right, duties and responsibilities.'"  *Yetter v. Ward Trucking Corp.*, 401 Pa. Super. 467, 474 (1991) (emphasis added); *accord Shick*, 552 Pa. at 600 (judicial declaration of public policy must be based on "a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal").  Otherwise, "the exception [would] swallow the general rule."  *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2004).

In applying this doctrine, Pennsylvania's appellate courts have narrowly construed the requirement of a "clearly defined mandate of public policy" and have found viable claims only where an employer terminates an employee (1) for refusing to commit a crime, (2) for complying with a statutorily imposed duty, or (3) where expressly prohibited by statute.  *Donahue v. Federal Express Corporation*, 753 A.2d 238, 244 (Pa. Super. Ct. 2000).  The public-policy basis for such a claim must be legislatively codified or judicially recognized.  *Yetter,* at 474-77.  "To state a public policy exception to the at-will employment doctrine, the employee must point to a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision.  *It is not sufficient that the employer's actions toward the employee are unfair*."  *Hunger v. Grand Central Sanitation*, 447 Pa. Super. 575, 580-81 (1996) (emphasis added).

Turning to Plaintiff's claim, the Pennsylvania Supreme Court has never recognized a cause of action for wrongful termination in violation of public policy based on the results of a

drug test.  Addressing a similar question in *Hershberger v. Jersey Shore Steel Co.*, this Court refused to recognize a wrongful-discharge claim based on an inaccurate drug test, finding that the discharge did not violate a "public policy which strikes at the heart of a citizen's social right, duties, and responsibilities."  394 Pa. Super. 363, 372, 575 A.2d 944, 949 (1990) (internal quotation marks omitted).  As the *Hershberger* Court concluded, there is no "'clear' mandate in the form of public policy allowing for the existence of a cause of action for wrongful discharge founded upon the use of a drug screening test, the results of which are not confirmed by an alternative scientific procedure[.]"  *Id.* at 370; *accord Manly v. Allentown Hosp.-Lehigh Valley Hosp. Ctr.*, 18 Pa. D. & C. 4th 275, 276 (C.P. 1992) ("There is no clear mandate of public policy in Pennsylvania that would prohibit a private employer from discharging its employees for refusing to submit to drug testing.").

   Nor has Jefferson been able to locate any case, in any jurisdiction in the United States, in which a court found a viable claim for wrongful discharge based on a positive drug test.  To the contrary, courts throughout the country have uniformly rejected virtually identical claims.  *See, e.g.*, *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 102, 609 A.2d 11, 21 (1992) (concluding that discharge of employee who failed random drug test did not violate a "clear mandate of public policy"); *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999) ("Under the doctrine of employment at will, an employer who may fire an employee for any reason or no reason at all may certainly terminate an employee for suspected drug use as part of an effort to maintain a drug-free workplace."); *Gilmore v. Enogex, Inc.*, 1994 OK 76, ¶ 9, 878 P.2d 360, 364 ("We hold that private employers have a legitimate interest in ensuring an alcohol/drug-free workplace.  Where, as here, the employer's program is reasonably designed to achieve that end, at-will employees may have no cognizable claim for

wrongful discharge."); *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 719 (Tenn. 1997) ("we find no well-defined public policy which is violated by a private employer discharging an at-will employee who tests positive for drug use on a random drug test"); *Roe v. Quality Transp. Servs.*, 67 Wash. App. 604, 610, 838 P.2d 128, 132 (Wash. Ct. App. 1992) (affirming dismissal of wrongful-discharge claim based on refusal to take drug test after concluding that "[n]o clear mandate of public policy yet exists which would preclude mandatory drug testing by a private employer"). This Court has often sought guidance in the area of wrongful discharge from sister courts and should do so again here. *See, e.g.*, *McGonagle v. Union Fid. Corp.*, 556 A.2d 878, 884 (Pa. Super. 1989) (citing precedents from California and Indiana).

Since Plaintiff already has a statutory remedy for the complained-of public-policy violation, since exceptions to the at-will employment doctrine are extremely limited, since Pennsylvania's courts have never recognized a claim for wrongful termination based on a positive drug test and since persuasive authority from other jurisdictions does not recognize a claim for wrongful termination based on a positive drug test, her claim of wrongful discharge in violation of Pennsylvania public policy should be dismissed.

C. **Plaintiff's PHRA Claims Should Be Dismissed as a Matter of Law Because Plaintiff Has Failed to Exhaust Her Administrative Remedies (Counts One, Three and Eight).**

Plaintiff's failure to exhaust her administrative remedies is a jurisdictional issue appropriate for the Court's consideration on a motion dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. *Swope v. Cent. York Sch. Dist.*, 796 F. Supp. 2d 592, 599 (M.D. Pa. 2011). Specifically, Plaintiff does not allege that she has ever contacted the PHRC, much less exhausted the administrative prerequisite to bringing a claim under the PHRA.

The PHRA sets forth strict procedural requirements. "To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the

15

alleged act of discrimination." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997); 43 P.S. § 959(h) ("Any complaint filed [with the PHRC] must be so filed within one hundred eighty days after the alleged act of discrimination, unless otherwise required by the Fair Housing Act."). After filing such a complaint, the complainant may only institute a civil action if "the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party" within one year of filing. 43 P.S. § 962(c)(1). "If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA. The Pennsylvania courts have strictly interpreted this requirement, and have repeatedly held that 'persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act.'" *Woodson*, *supra*, 109 F.3d at 925 (3d Cir. 1997) (quoting *Vincent v. Fuller Co.*, 532 Pa. 547, 616 A.2d 969, 974 (Pa. 1992)).

Here, Plaintiff was terminated from employment on October 20, 2019. SAC at ¶¶ 56-57. Even now—282 days later—she has yet to file a complaint with the PHRC. Instead, Plaintiff's Complaint states that she chose to dual-file her Charge of Discrimination with the Equal Employment Opportunity Commission and the Philadelphia Commission on Human Relations. SAC at Ex. A (ECF No. 17-1). In doing so, she made a conscious decision to proceed under the procedures of those agencies, rather than those of the PHRC. For these reasons, Plaintiff has not even *attempted* to exhaust the administrative remedies available to her under the PHRA, 43 P.S. §§ 951 to 963, and thus her PHRA-based claims should be dismissed for her failure to comply with the Act's mandatory procedural requirements. Fed. R. Civ. P. 12(b)(1); *Richards*, *supra*, 151 F. Supp. 2d at 612.

**D.      Plaintiff's Disability Discrimination and Retaliation Claims Should Be Dismissed Because She Has Not Alleged Sufficient Facts to Support that Jefferson Failed to Reasonably Accommodate Her or that She Engaged in Any Protected Conduct (Counts One, Two, Three and Four).**

**1.      Illegal Drug Use Is Not a Reasonable Accommodation**

Even assuming that this Court has jurisdiction over Plaintiff's PHRA claim(s) (which it does not), the PHRA's definition of the term "handicap or disability" specifically excludes "current, illegal use of or addiction to a controlled substance, as defined in section 102 of the Controlled Substances Act [("CSA")] (Public Law 91-513, 21 U.S.C. § 802)."  43 P.S. § 954(p.1)(3).  In turn, the CSA lists marijuana as a Schedule I controlled substance, meaning that "[t]here is a lack of accepted safety for use of the drug or other substance under medical supervision."  21 U.S.C. § 812(b)(1)(C); 21 C.F.R. § 1308.11(d)(23) (Schedule I's listing of marijuana).

In this light and because marijuana is a controlled substance, federal courts have held uniformly that marijuana use is not a "reasonable accommodation" under the ADA.  *James v. City of Costa Mesa*, 700 F.3d 394, 403 (9th Cir. 2012) ("[D]octor-supervised marijuana use is an illegal use of drugs not covered by the ADA's supervised use exception. . . . A contrary interpretation . . . would allow a doctor to recommend the use of any controlled substance— including cocaine or heroin—and thereby enable the drug user to avoid the ADA's illegal drug exclusion."); *Garcia v. Tractor Supply Co.*, 154 F. Supp. 3d 1225, 1229-30 (D.N.M. 2016) (granting employer's motion to dismiss and holding that "medical marijuana is not an accommodation that must be provided for by the employer . . . . To affirmatively require [the employer] to accommodate [the employee]'s illegal drug use would mandate [the employer] to permit the very conduct the CSA proscribes."); *Barber v. Gonzales*, No. CV-05-0173-EFS, 2005 U.S. Dist. LEXIS 37411, at *5 (E.D. Wash. July 1, 2005) ("given that [the employee] admits he

was actively using marijuana when the [employer] took the alleged action against him, a federal claim under the ADA does not exist because the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acted on the basis of such use.").  As discussed above, the PHRA incorporates the CSA's definition of illegal drug use, rendering federal guidance on this point both applicable and persuasive.  *See, e.g.*, *Tryboski v. Pa. State Univ.*, No. 1208 MDA 2012, 2013 Pa. Super. Unpub. LEXIS 386, at *6 n.4 (Pa. Super. Ct. Apr. 1, 2013) ("Although not binding precedent for this Court, federal decisions and interpretations in this area have been cited as persuasive authority.").

Since use of illegal substances, including marijuana, is not a "reasonable accommodation" under the ADA, and since the "reasonable accommodation" analyses under the ADA and the PHRA are identical, marijuana use is likewise not a "reasonable accommodation" under the PHRA.  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) ("Before turning to the first issue, whether Taylor has a disability under the ADA, we mention that we will only discuss Taylor's ADA claim because our analysis of an ADA claim applies equally to a PHRA claim."); *Demshick v. Del. Valley Convalescent Homes, Inc.*, No. 05-2251, 2007 U.S. Dist. LEXIS 31064, at *31 n.11 (E.D. Pa. Apr. 26, 2007) ("the analysis of a reasonable accommodation is identical under the PHRA and the ADA"); *Majtan v. Weck*, No. 99-718, 2000 U.S. Dist. LEXIS 13817, at *15 n.5 (E.D. Pa. Sep. 21, 2000) ("The reasonable accommodation analyses under the PHRA and the ADA are identical.").  As these authorities make clear, Jefferson had no obligation to accommodate Plaintiff's alleged disability by permitting her to illegally use a controlled substance.

## 2.    None of Plaintiff's Other Suggested "Accommodations" are Recognized Reasonable Accommodations

To establish a *prima facie* case, for disability discrimination, Plaintiff "must show: (1) [s]he is a disabled person within the meaning of the [PHRA and the PFPO]; (2) [s]he is qualified to perform the essential functions of the job, with or without reasonable accommodations by [Jefferson]; and (3) [s]he has suffered an adverse employment decision as a result of discrimination." *Parrotta v. PECO Energy Co.*, 363 F. Supp. 3d 577, 590 (E.D. Pa. 2019) (internal quotation marks omitted).

In the instant matter, the Complaint posits that Jefferson should have accommodated her alleged disability by postponing or waiving its universally-applied return to work drug test (note that there is no allegation that Plaintiff was disparately singled-out for return to work drug testing) or that Jefferson should have affirmatively proposed some other treatment for her spinal stenosis.   Plaintiff's disability claims fail because there is no other possible reasonable accommodation for her failed drug test.  *See, e.g.*, *Taylor*, *supra*, 184 F.3d at 318 (quoting *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997)) ("The ADA, as far as we are aware, is not intended to punish employers . . . if, in fact, no accommodation for the employee's disability could reasonably have been made."); *Thompson v. AT&T Corp.*, 371 F. Supp. 2d 661, 678 (W.D. Pa. 2005) ("The Defendant cannot be held liable under the ADA when any possible accommodation that could have been given . . . would still not allow the Plaintiff to return to work.").  Notably, none of the accommodations suggested in Plaintiff's Complaint have ever been recognized as reasonable accommodations.

First, Plaintiff contends that Jefferson could have postponed her drug test.  SAC at ¶ 113. But "it is reasonable and commonplace for an employer to request a drug test be carried out immediately[.]"  *Brown v. Priority Health Care Grp.*, LLC, No. 1:19-cv-00116, 2019 U.S. Dist.

LEXIS 169580, at *9 (M.D. Pa. Oct. 1, 2019).  Among other things, "delay could result in the person's body metabolizing any present drugs or enable the person to somehow otherwise obstruct the test."  *Id.*  Critically, all Plaintiff's accommodation suggestions center on her marijuana use—not on her unspecified "disabilities."  *See Wilkinson v. Marvin E. Klinger, Inc.*, No. 4:15-cv-01916, 2017 U.S. Dist. LEXIS 199497, at *22 (M.D. Pa. Dec. 5, 2017) ("[Plaintiff's] reasonable accommodation claim fails because . . . the accommodation requested was not for her disability, but rather as a possible end run around her failed drug test.").  As these authorities make clear, postponing a drug test is not a reasonable accommodation.

Second, Plaintiff suggests that Jefferson could have accommodated her by waiving her drug test entirely.  SAC at ¶ 113.  Though this specific "accommodation" does not appear to have been addressed yet in Pennsylvania, courts in nearby states have uniformly rejected it.  *See, e.g.*, *Cotto v. Ardagh Glass Packing, Inc.*, No. 18-1037, 2018 U.S. Dist. LEXIS 135194, at *25 (D.N.J. Aug. 10, 2018) ("Plaintiff cannot compel an employer to waive a drug test as an accommodation for an employee using marijuana, and so Plaintiff has failed to state a claim for a failure to accommodate.").

Third, Plaintiff contends that Jefferson should have asked her "if there was an equally effective, alternative medication to medical marijuana that she could use to treat her disabilities that was not objectionable to [Jefferson]."  *Id.* at ¶¶ 99, 115.  Based on an exhaustive search, there appears to be no precedent whatsoever for this kind of "accommodation" in Pennsylvania, or indeed anywhere in the Third Circuit.

Since none of Plaintiff's suggested "accommodations" are recognized reasonable accommodations, she has failed to allege that she can perform her job with reasonable accommodations and has thus failed to state a *prima facie* case of disability discrimination.

###### 3.      Plaintiff Never Requested a Reasonable Accommodation

An employee cannot state a failure-to-accommodate claim without alleging that she has

informed her employer of her desire for accommodations for that disability.  In order to support a

claim "that the employer failed to provide a reasonable accommodation, the plaintiff must show

that the employer was aware of the employee's disability"—that is, that she suffers from a

substantial limitation of a major life activity.  *Sever v. Henderson*, 381 F. Supp. 2d 405, 417

(M.D. Pa. 2005), *aff'd*, 220 F. App'x 159 (3d Cir. 2007); *accord Rinehimer v. Cemcolift*, 292

F.3d 375, 380 (3d Cir. 2002) ("to establish discrimination because of a disability, an employer

must know of the disability").

"[W]hile the notice does not have to be in writing, be made by the employee, or formally

invoke the magic words 'reasonable accommodation,' the notice nonetheless must make clear

that the employee wants assistance for his or her disability.  In other words, the employer must

know of both the disability and the employee's desire for accommodations for that disability."

*Taylor*, *supra*, 184 F.3d at 313.

Here, Plaintiff does not allege that she requested accommodations *for her disability* (as

opposed to her drug usage).  To the contrary, Plaintiff admits that—when she made a proper

accommodation request in May 2019—Jefferson reasonably accommodated her (SAC at ¶¶ 29-

35), thus belying any contention that Jefferson refused to reasonably accommodate Plaintiff just

a few months later.  In fact, the Complaint alleges that Plaintiff was approved for a medical leave

from May to September 2019 (SAC at ¶ 35), but says nothing of her medical condition as of the

time in October when she failed the drug test in question.  *See, e.g.*, *Barrett v. Robert Half Corp.*,

No. 15-6245, 2017 U.S. Dist. LEXIS 219116, *3-4 (D.N.J. Feb. 21, 2017) (dismissing an

amended complaint after finding that Plaintiff "still pleads merely that he notified Defendants

that he was licensed to use medical marijuana as part of treatment for his disability, but does not allege that he requested assistance in connection with his disability.").

Nor would an argument that Jefferson "must have known that Plaintiff had 'something' because she was (allegedly) being treated with marijuana" support her claim, as an employer's "knowledge" that an employee has an unspecified condition, with an unspecified impact on her life, is insufficient to put the employer on notice that the employee is "disabled" as defined by the Act.  This is illustrated by *Sever*, in which the Court found that "[t]he fact that plaintiff conveyed a health care professional's initial findings of [PTSD] does not support an inference that Defendants were aware of a disability[,]" since "*simply informing an employer of a particular condition is not tantamount to providing the employer with knowledge that the employee is substantially limited in some major life activity*."  *Id.* at 418 (emphasis added); *accord Bialy v. Chipotle Mexican Grill*, Civil Action No. 16-42, 2018 U.S. Dist. LEXIS 45883, at *18 (W.D. Pa. Mar. 21, 2018) (emphasis added) (quoting *Sever*, 381 F. Supp. 2d at 418) ("'[v]ague or conclusory statements revealing *an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA*'"); *Popko v. Penn State Milton S. Hershey Med. Ctr.*, No. 1:13-cv-01845, 2014 U.S. Dist. LEXIS 95486, at *16 (M.D. Pa. July 14, 2014) (citing *Sever*, 381 F. Supp. 2d at 416) ("the plaintiff must show that the employer believed that a major life activity was substantially limited by the plaintiff's impairment"); *Fuoco v. Lehigh Univ.*, 981 F. Supp. 2d 352, 369 (E.D. Pa. 2013) (employee's statement to supervisor that "I think I got some disability or menopause going on that is affecting my capabilities" was "simply not sufficient to have put [the employer] on notice of a possible disability or what it was").  Here, there is no pleading that Jefferson was aware of any specific or identified disability (*i.e.*, a substantial limitation of a major life activity) at the time of her termination for illegal drug

22

use.  That Plaintiff may have previously had a disability for which (as noted) she received an accommodation (*i.e.*, that she had a history of a disability or was perceived as being disabled) does not support a request for accommodation.  Merely stating "I have disabilities" is not—and cannot be—enough.  Plaintiff's allegations come nowhere close to meeting the threshold for employer knowledge set forth in the cases above.

Thus, Plaintiff never requested a reasonable accommodation and—even assuming that she did so—none was available.

### 4.    Plaintiff Fails to State a Facial Retaliation Claim

Finally, Plaintiff's retaliation claims also fail since she has not alleged a *prima facie* case. "In order to state a *prima facie* case of retaliation" under the PHRA or the PFPO, "a complaint must allege that: "'(1) [plaintiff engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'"  *Williams v. Aramark Campus LLC*, No. 18-5374, 2020 U.S. Dist. LEXIS 42835, at *19-20 (E.D. Pa. Mar. 11, 2020) (quoting *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015)).

Here, Plaintiff fails to allege that she engaged in any protected activity.  As discussed above, there was no possible reasonable accommodation for Plaintiff's failed drug test, so any requests by her for "accommodation" cannot be considered protected conduct under any applicable statute.

Moreover, Plaintiff's report of her medical marijuana usage is not PHRA-protected activity, since her usage falls outside the PHRA's definition of "handicap or disability."  43 P.S. § 954(p.1)(3).  Nor has Plaintiff alleged any evidence tending to show a causal connection between her alleged protected activity and any adverse employment action.  To the contrary,

there is no dispute that Jefferson terminated Plaintiff's employment due to her illegal drug use, not due to any PHRA-defined "handicap" or "disability" nor any PHRA-protected activity.  *See, e.g.*, *Marrero v. City of N.Y.*, 2011 U.S. Dist. LEXIS 4358, at *4-5 (S.D.N.Y. Jan. 13, 2011) (citations omitted) ("[T]he Complaint admits that Plaintiff was terminated "as a result of" his testing positive for alcohol and cocaine.  Therefore, by Plaintiff's own admission, she was not terminated because of his disability and it cannot form the basis of a sustainable ADA claim for wrongful termination."); *Simpson v. Brand Energy Servs.*, LLC, No. 14-184, 2015 U.S. Dist. LEXIS 282, at *9 (D.N.J. Jan. 5, 2015) ("[Defendant] asserts that its client required Plaintiff to submit to a drug test at the client's construction site.  When Plaintiff's urine tested positive for barbiturates, [Defendant] terminated his employment.  If established at trial, the above would constitute a complete defense.").

For these reasons, Plaintiff's retaliation claims must also be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Jefferson's Motion to Dismiss should be granted and Counts One, Two, Three, Four, Five, Eight and Ten of Plaintiff's SAC should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  While leave to amend shall be "freely granted" under Fed. R. Civ. P. 15, futility is a consideration in whether such leave is to be granted.  Here, Plaintiff filed her 10-count, 160-paragraph Second Amended Complaint after retaining experienced counsel.  She has made every possible claim and has tailored her allegations specifically to address anticipated arguments for dismissal.  At this point, there is  no basis to believe that any additional facts can be pled in support of the claims made.  *See, e.g.*, *Blakney v. City of Phila.*, No. 12-6300, 2013 U.S. Dist. LEXIS 77925, at *41 (E.D. Pa. June 4, 2013) ("As Plaintiff has already had the opportunity to amend his Complaint once in response to

a Motion to Dismiss filed by Defendants, the Court finds that any further efforts to amend will be futile.").

Respectfully submitted,

**POST & SCHELL, P.C.**

Dated:  July 28, 2020

*/s/ Sidney R. Steinberg*
SIDNEY R. STEINBERG, ESQUIRE
ssteinberg@postschell.com
DANIEL F. THORNTON, ESQUIRE
dthornton@postschell.com
Four Penn Center
1600 John F. Kennedy Blvd., 14th Floor
Philadelphia, PA 19103
215-587-1000

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2020, I caused the foregoing Motion to Dismiss

Plaintiff's Second Amended Complaint in Part, Brief in Support, and Proposed Order to be

served via electronic mail and electronic filing upon the following persons:

Greg H. Greubel, Esq.
Greubel Legal Services
744 South Street, Suite 715
Philadelphia, PA 19147
267-627-4889
greg@glshelp.com

*Counsel for Plaintiff*

**POST & SCHELL, P.C.**

Dated: <u>July 28, 2020</u>          By:     /s/ Sidney R. Steinberg
                                        SIDNEY R. STEINBERG, ESQUIRE
                                        ssteinberg@postschell.com
                                        DANIEL F. THORNTON, ESQUIRE
                                        dthornton@postschell.com
                                        Four Penn Center
                                        1600 John F. Kennedy Blvd., 14th Floor
                                        Philadelphia, PA 19103
                                        215-587-1000

                                        *Counsel for Defendant*

20621238v3