**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DONNA R. HUDNELL,

     *Plaintiff,*

  v.

THOMAS JEFFERSON UNIVERSITY
HOSPITALS, INC.,
     *Defendant.*

CIVIL ACTION
NO. 20-01621

**PAPPERT, J.**              **September 25, 2020**

<u>**MEMORANDUM**</u>

   Donna Hudnell sued Thomas Jefferson University Hospitals, Inc. alleging

violations of Title VII of the Civil Rights Act of 1964, the Pennsylvania Human

Relations Act ("PHRA"), the Philadelphia Fair Practices Ordinance ("PFPO"), the

Pennsylvania Medical Marijuana Act ("MMA"), 42 U.S.C. § 1981 and Pennsylvania

public policy.  Jefferson moves to dismiss the PHRA claims for failure to exhaust

administrative remedies.  It also moves to dismiss the PFPO claims, the MMA claims

and the public policy claim for failure to state a claim.  The Court grants Jefferson's

Motion in part and denies it in part.

I

   Jefferson hired Hudnell in 2016 as a Security Analyst.  (Sec. Am. Compl. ¶¶ 19–

20, ECF No. 17.)  In 2018, Hudnell began experiencing significant back pain that

limited her ability to perform manual tasks, walk and sleep.  (*Id.* at ¶¶ 3, 23.)  In

August of 2018, she visited Dr. Bracken Babula, a Jefferson internal medicine

specialist, to treat her injuries. (*Id.* at ¶ 24.) Dr. Babula certified Hudnell for medical marijuana use and Hudnell soon thereafter began using medical marijuana to alleviate her back pain. (*Id.* at ¶¶ 25–26.)

Hudnell's pain progressed and by May of 2019 she requested permission to work from home full-time. (*Id.* at ¶ 29.) Jefferson granted this request. (*Id.*) An accident that July further exacerbated Hudnell's injuries, causing her to request a leave of absence and undergo spinal surgery. (*Id.* at ¶¶ 30, 33.) Jefferson approved Hudnell's request for leave from July 5, 2019 to September 24, 2019. (*Id.* at ¶ 35.)

In October of 2019, Hudnell asked to return to work. (*Id.* at ¶ 36.) Jefferson required a drug test because Hudnell had been on leave for over 90 days. (*Id.* at ¶ 37.) Hudnell reported for her drug test on October 11, 2019, and provided the administering nurse copies of her prescriptions, including her medical marijuana card. (*Id.* at ¶¶ 39, 41.) The nurse informed Hudnell that her medical marijuana card had expired in August, and Hudnell responded that she had an appointment with Dr. Babula on October 16 to get recertified. (*Id.* at ¶¶ 42, 44.) Hudnell claims she renewed her card on August 22, about three weeks before her drug test, but had not been recertified. (*Id.* at ¶ 43.) The nurse administered the drug test. (*Id.* ¶ 45.) Hudnell asked if she could submit her card after getting recertified, but the nurse told her she could not and that she should speak to human resources for further instructions. (*Id.* at ¶ 52.)

Dr. Babula recertified Hudnell on October 16, 2019, and Hudnell completed the card renewal process on October 20. (*Id.* at ¶¶ 55–56.) After Hudnell renewed her card, Jefferson's Human Resources Business Partner, Erik Johnson, told Hudnell over the telephone that she was terminated from her employment. (*Id.* at ¶¶ 57–58.)

Hudnell told Johnson she had been recertified and obtained a valid card, and offered to speak to him in person. (*Id.* at ¶¶ 58–59.) Johnson refused to speak with Hudnell and told her he would send her a termination letter. (*Id.* at ¶ 60.) He also said her recertification was irrelevant because she did not have a valid medical marijuana card at the time of the drug test. (*Id.* at ¶ 61.)

Hudnell emailed two Jefferson employees seeking clarification of her rights, and on October 23, Jefferson Human Resources Business Partner, Kristin Kelleher, initiated a conversation with Hudnell regarding a grievance claim. (*Id.* at ¶¶ 64, 67, 69.) During her discussion with Kelleher, Hudnell expressed frustration at the administering nurse's failure to accommodate her to ensure that, given her imminent recertification, her positive drug test would not impact her employment. (*Id.* at ¶¶ 71, 73–74.) Kelleher echoed Johnson, saying Hudnell's recertification did not matter because her card had expired before the drug test. (*Id.* at ¶ 76.)

Hudnell asked Dr. Babula to write a letter to Kelleher. (*Id.* at ¶ 79.) He did, explaining: (1) he had certified Hudnell for medical marijuana use; (2) Hudnell was certified to purchase up to a month's supply of medical marijuana until her card expired on August 21, 2019; and (3) he expects any medical marijuana would remain in Hudnell's system for two months. (*Id.* at ¶ 86.) Kelleher never responded to Dr. Babula's letter or spoke to him about Hudnell. (*Id.* at ¶¶ 88–89.)

On October 29, Kelleher talked to the nurse who administered Hudnell's drug test. (*Id.* at ¶ 90.) The nurse acknowledged—in notes taken during the call—that Kelleher had sent her Dr. Babula's letter, and speculated that Hudnell may have last used marijuana when her card was valid, or she may have used marijuana without

certification.  (*Id.* at ¶¶ 92–93.)  Hudnell insists she legally purchased and used the medical marijuana that triggered her positive test.  (*Id.* at ¶ 95.)

That same day, Kelleher wrote to Hudnell, explaining that Jefferson denied her grievance because she did not have a valid medical marijuana card when she tested positive for marijuana and because "there was insufficient evidence to support overturning" Jefferson's decision to terminate her.  (*Id.* at ¶ 96.)  Hudnell then dual-filed discrimination charges with the Equal Employment Opportunity Commission ("EEOC") and the Philadelphia Commission on Human Relations ("PCHR") on October 25, 2019.  (Sec. Am. Compl., Ex. A, ECF No. 17-1.)  The EEOC issued a Dismissal and Notice of Rights on January 7, 2020.  (Sec. Am. Compl., Ex. B, ECF No. 17-2.)  The PCHR has not yet acted on Hudnell's charge.

Hudnell, a black woman, (*Id.* at ¶ 144), alleges Jefferson did not fire a white male employee after he failed a drug test even though he was not certified to use medical marijuana.  (*Id.* at ¶ 101.)  Instead, Jefferson allowed him to seek treatment.  (*Id.* at ¶ 103.)  Similarly, Hudnell alleges Jefferson has accommodated medical marijuana use by white employees.  (*Id.* at ¶ 105.)  This, according to Hudnell, shows racial bias in Jefferson's decision to fire her.  (*Id.* at ¶ 104.)

II

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim and for failure to exhaust administrative remedies.  *See Anjelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999).  To survive dismissal under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation marks and citation omitted).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

### III

Counts I, III, and VIII of Hudnell's Amended Complaint assert claims of discrimination and retaliation under the PHRA.  Jefferson contends these claims should be dismissed because Hudnell failed to exhaust her remedies by filing a discrimination charge with the Pennsylvania Human Relations Commission ("PHRC"). (Def.'s Mot. 15–16, ECF No. 18.)

Pennsylvania law requires plaintiffs to exhaust administrative remedies under the PHRA before filing a civil action. *See* 43 P.S. § 962(c)(1); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997). When a claimant files a discrimination charge, the PHRC has exclusive jurisdiction over the claim for one year. *See* 43 P.S. § 962(c)(1). A complainant may not file a lawsuit during that period. *See id.* Unlike the process under Title VII, a notice of the right to sue is not required to bring a PHRA claim; rather, once the one-year period has expired, a complainant may file suit notwithstanding the fact that she has not received a letter from the PHRC. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001). This Court has long held that a plaintiff may exhaust her administrative remedies under the PHRA by filing a discrimination charge with the EEOC or Philadelphia Commission on Human Relations, instead of the PHRC. *See, e.g.*, *Dean v. Phila. Gas Works*, No. 19-cv-04266, 2019 WL 6828607, at *12 (E.D. Pa. Dec. 12, 2019) (plaintiff exhausted PHRA requirements by filing with EEOC); *Kedra v. Nazareth Hosp.*, 857 F. Supp. 430, 432 (E.D. Pa. July 7, 1994) (filing complaint with PCHR "is tantamount to [] filing with the [PHRC]").

Although Jefferson is incorrect that Hudnell must file a claim with the PHRC specifically, Hudnell has not exhausted her administrative remedies for her PHRA claims. She dual-filed the discrimination charge with the EEOC and PCHR on October 25, 2019. And, although the EEOC issued a Dismissal and Notice of Rights on January 7, 2020, the PCHR has not acted on Hudnell's charge. It therefore retains exclusive jurisdiction over her PHRA claims until it resolves them or until October 25, 2020,

whichever comes first.  Accordingly, the Court will dismiss Counts I, III and VIII without prejudice.

IV

In Counts II and IV, Hudnell asserts a discrimination claim and a retaliation claim under the PFPO, which prohibits discrimination against employees based on a disability.  *See* Phila. Code § 9-1103(1)(a).  It further bars employer retaliation against employees who "ha[ve] complied with the provisions of th[e PFPO], exercised [their] rights under th[e PFPO], enjoyed the benefits of th[e PFPO], or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing."  *Id.* at § 9-1103(1)(g).

Jefferson moves to dismiss Counts II and IV, arguing Hudnell failed to adequately plead that Jefferson: (1) failed to accommodate her disability; and (2) fired her in retaliation for her request for an accommodation.  But the Court dismisses these claims for the same reason it dismisses Counts I, III and VIII: Hudnell failed to exhaust administrative remedies for each of them.

The Pennsylvania Supreme Court has not decided whether PFPO claims are subject to exhaustion, but the Commonwealth Court and federal courts in our Circuit have said they are.  *See, e.g.*, *Marriott Corp. v. Alexander*, 799 A.2d 205, 208 (Pa. Cmmw. Ct. 2002) (holding plaintiffs must "exhaust administrative remedies available through the Philadelphia or Pennsylvania Commission before filing a civil action under the Philadelphia Ordinance"); *Richards v. Foulke Assocs., Inc.*, 151 F. Supp. 2d 610, 616 (E.D. Pa. 2001) (holding PFPO claims are subject to same exhaustion requirements as

PHRA claims).  To satisfy this requirement, a plaintiff need not cite the PFPO in an administrative charge.  So long as a plaintiff bases her PFPO claims on the same factual allegations and the same "core grievance[s]" alleged in an administrative charge, she satisfies the exhaustion requirement for those claims.  *Waiters v. Parsons*, 729 F.2d 233, 237–38 (3d Cir. 1984) (per curiam); *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996).  Hudnell relies on the same factual allegations for her PFPO and PHRA claims, so the Court dismisses Counts II and IV without prejudice.

V

In Count V, Hudnell asserts a discrimination claim under Pennsylvania's Medical Marijuana Act, which includes employment discrimination protections for patients.  *See* 35 P.S. § 10231.2103(b)(1) ("No employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee regarding an employee's compensation, terms, conditions, location or privileges solely on the basis of such employee's status as an individual who is certified to use medical marijuana.").  Jefferson argues primarily that Hudnell cannot maintain a claim under the MMA because the statute does not provide a private right of action. In the alternative, Jefferson argues the MMA does not apply because Hudnell did not possess a valid medical marijuana card at the time of her drug test.

A

Whether the MMA implies a private right of action for employees alleging discrimination under Section 2103(b)(1) is an issue of first impression in our Circuit.  Although only one Pennsylvania court has addressed the issue, *see Palmiter v.*

8

*Commonwealth Health Sys., Inc.*, 2019 WL 6248350, at \*13 (Pa. Com. Pl. Lackawanna

Cnty. Nov. 22, 2019), at least four courts have considered whether employment

discrimination provisions in other states' similar medical marijuana acts imply a right

of action. *See Callaghan v. Darlington Fabrics Corp.*, No. PC-2014-5680, 2017

WL2321181 (R.I. Super. Ct. May 23, 2017)[1]; *Noffsinger v. SSC Niantic Operating Co.*,

273 F. Supp. 3d 326 (D. Conn. 2017)[2]; *Chance v. Kraft Heinz Food Co.*, No. K18C-01-056

NEP, 2018 WL 6655670 (Del. Super. Ct. Dec. 17, 2018)[3]; *Whitmire v. Wal-Mart Stores,

Inc.*, 359 F. Supp. 3d 761 (D. Ariz. 2019)[4].  Each has held they do.

## B

"When ascertaining Pennsylvania law, the decisions of the Pennsylvania

Supreme Court are the authoritative source."  *In re Trustees of Conneaut Lake Park,

Inc.*, 855 F.3d 519, 522–23 (3d Cir. 2017) (quoting *Spence v. ESAB Grp., Inc.*, 623 F.3d

212, 216 (3d Cir. 2010)).  But when the Pennsylvania Supreme Court has not addressed

an issue, a district court "must predict how it would rule."  *Id.*

---

[1] "No . . . employer . . . may refuse to . . .employ, . . . or otherwise penalize, a person solely for his or her status as a cardholder."  21 R.I. Gen. Laws § 21-28.6-4(d).

[2] "No employer may refuse to hire a person or may discharge, penalize or threaten an employee solely on the basis of such person's or employee's status as a qualifying patient or primary caregiver."  Conn. Gen. Stat. § 21a-408p(b)(3).

[3] "[A]n employer may not discriminate against a person in hiring, termination, or any term or condition of employment . . . based upon . . . [t]he person's status as a cardholder; or [a] positive drug test for marijuana."  16 Del. C. § 4905A(a)(3).

[4] "[A]n employer may not discriminate against a person in hiring, termination or imposing any term or condition of employment or otherwise penalize a person based upon . . . [t]he person's status as a cardholder[, or a] registered qualifying patient's positive drug test for marijuana components or metabolites."  Ariz. Rev. Stat. § 36-2813(B)(1)–(2).

The Pennsylvania Supreme Court applies a three-part test, derived from *Cort v. Ash*, 422 U.S. 66, 78 (1975), to determine whether a state statute implies a private right of action:

> [f]irst, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a . . . right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (Pa. 1999) (alterations and emphasis in original) (quoting *Cort*, 422 U.S. at 78); *see also MERSCORP, Inc. v. Delaware County*, 207 A.3d 855, 870 n.14 (Pa. 2019).

The Pennsylvania Supreme Court would likely apply the *Cort* factors to find an implied private right of action.  The second *Cort* factor is considered the "central inquiry" in a private right of action analysis.  *Estate of Witthoeft*, 733 A.2d at 626 (quoting *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575 (1979)).  The text and context of the statute implicitly suggest legislative intent to create a private right of action.  Most notably, the MMA authorizes agency enforcement of certain provisions of the MMA, *see, e.g.*, 35 P.S. § 10231.2104 (authorizing the Department of Education to develop regulations governing possession and use of medical marijuana on school grounds), but does not authorize agency enforcement of Section 2103(b)(1).  The exclusion of a specific administrative enforcement mechanism suggests the legislature did not intend to bar a private right of action for Section 2103(b)(1).  Given the absence of any other enforcement mechanism in Section 2103(b)(1), the Court believes the Pennsylvania Supreme Court would agree that without a private right of action, "the

mandate contained in Section 2103(b)(1) will ring hollow." *Palmiter*, 2019 WL 6248350, at *13; *see also Callaghan*, 2017 WL 2321181, at *8 (finding an implied right of action because, without one, the anti-discrimination provision would have no practical effect); *Noffsinger*, 273 F. Supp. 3d at 340 (same); *Chance*, 2018 WL 6655670, at *7 (same); *Whitmire*, 359 F. Supp. 3d at 781 (same).[5]

Jefferson argues against an implied right of action by claiming the Pennsylvania Department of Health has the authority to enforce Section 2103(b)(1) through civil penalties pursuant to 35 P.S. § 10231.1308(b) ("In addition to any other remedy available to the department, the department may assess a civil penalty for a violation of this act, a regulation promulgated under this act or an order issued under this act or regulation as provided in this subsection."). (Def.'s Mot. 7, ECF No. 18.)  Read in context, however, Section 1308(b) more reasonably applies only to parties who are participating in the Medical Marijuana Program established by the Act (*i.e.*, operators of a medical marijuana organization).  Jefferson has cited no examples of the Department of Health issuing civil penalties to employers who violate Section 2103(b)(1), nor has it identified any regulations promulgated by the Department for enforcing that section of the MMA.  And, despite the seemingly broad grant of authority in Section 1308(b), other sections of the MMA grant enforcement authority to specific agencies.  Section 2103(b)(1) does not.  The Pennsylvania Supreme Court would likely

---

[5] In addition to not specifically authorizing agency enforcement in Section 2103(b)(1), the MMA does not contain any explicit private rights of action.  Thus, the Court is not precluded from implying a private right of action in Section 2103(b)(1). *See Doe v. Franklin County*, 174 A.3d 593, 608 (Pa. 2017) ("[W]here the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded.") (alteration in original).

interpret this failure to delegate as signaling the General Assembly's intent to imply a private right of action.[6]

Turning to the first *Cort* factor, the legislature crafted Section 2103(b)(1) for the special benefit of employees with medical marijuana cards.  Section 2103 regulates employer conduct, and the Supreme Court has said implied rights of action are less common in "[s]tatutes that focus on the person regulated rather than the individuals protected." *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001).  But there is no mistaking the General Assembly's intent to protect employees from discrimination in Section 2103(b)(1).  That clear intent distinguishes this case from *Estate of Witthoeft*, where the Pennsylvania Supreme Court declined to find an implied right of action because the legislature did not create the Motor Vehicle Code provision at issue for the special benefit of the injured plaintiff.  *See* 733 A.2d at 627.

The third *Cort* factor also supports finding an implied right of action because doing so is consistent with the underlying purposes of the legislative scheme.  In enacting the MMA, the General Assembly intended to provide "'a program of access to medical marijuana which balances the need of patients to have access to the latest treatments with the need to promote patient safety,' to furnish 'a safe and effective method of delivery of medical marijuana to patients,' and to promote 'high quality research into the effectiveness and utility of medical marijuana.'" *Palmiter*, 2019 WL 6248350, at *5 (quoting 35 P.S. § 10231.102(3)(i)–(iii)).  To ensure medical marijuana patients can realize those benefits without fear of adverse employment actions, the

---

[6] The court in *Whitmire* also found an implied right of action for employment discrimination even though the Arizona medical marijuana act contains a civil penalties provision analogous to Section 1308(b).  *See* 359 F. Supp. 3d at 779–81; Ariz. Rev. Stat. § 36-2816.

legislature included Section 2103(b)(1).  Thus, a private remedy "is consistent with the purpose [and] spirit" of the MMA.  *Estate of Witthoeft*, 733 A.2d at 627.

For these reasons, the Court predicts the Pennsylvania Supreme Court would find that the General Assembly "intended to create, . . . by implication, a private cause of action" for Section 2103(b)(1).  *Touche Ross & Co.*, 442 U.S. at 575.

## C

Accepted as true, Hudnell states facts that "plausibly give rise to an entitlement to relief" under Section 2103(b)(1) of the MMA.  *Connelly*, 809 F.3d at 787. She alleges she legally purchased and used medical marijuana, disclosed her status as a cardholder, failed a drug test at work and then was fired the same day she recertified her medical marijuana card.  (Sec. Am. Compl. ¶¶ 26, 41, 56–57, ECF No. 17.)  The Court accordingly denies Jefferson's motion to dismiss Count V of the Second Amended Complaint.

## VI

Finally, Count X alleges a claim for wrongful discharge.  To establish a claim for wrongful discharge in the at-will employment context, Hudnell must show that her termination "threaten[ed] clear mandates of public policy."  *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009) (quoting *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989)).  Hudnell "must do more than show a possible violation . . . that implicates only her own personal interest."  *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 289 (Pa. 2000).  Rather, she must show "that some public policy of this Commonwealth is implicated, undermined, or violated because of

the employer's termination." *Id.* This exception is granted in "only the most limited of circumstances." *Weaver*, 975 A.2d at 563. Pennsylvania Courts have found a clear mandate of public policy threatened on very few occasions. *See, e.g.*, *Field v. Philadelphia Electric Co.*, 565 A.2d 1170 (Pa. Super. Ct. 1989) (plaintiff discharged after reporting nuclear safety violations); *Hunter v. Port Authority*, 419 A.2d 631 (Pa. Super. Ct. 1980) (plaintiff denied public employment on the basis of a prior conviction for which he had been pardoned); *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119 (Pa. Super. Ct. 1978) (plaintiff discharged for fulfilling jury duty). And, as the Third Circuit has observed, most (if not all) "Pennsylvania cases applying the public policy exception have done so where no statutory remedies were available." *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 919 (3d Cir. 1982); *see also Macken v. Lord Corp.*, 585 A.2d 1106, 1108 (Pa. Super. Ct. 1991) ("Pennsylvania recognizes a cause of action for wrongful discharge in the absence of a statutory remedy . . . ."). Because the Court lacks clear indication from the Pennsylvania courts that discharge in violation of the MMA threatens clear mandates of public policy, and because Hudnell has a statutory remedy available in the MMA, the Court declines to extend this "limited" exception. Amendment would be futile, so Count X is dismissed with prejudice.

## VII

District courts must permit a curative amendment to dismissed complaints under Rule 12(b)(6), unless such amendment would be inequitable or futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Hudnell seeks leave to amend her Second Amended Complaint after October 25, 2020 (or after the PCHR acts). (Pl.'s Resp. 14–15, ECF No. 19.) Because amendment would be neither inequitable nor futile, Counts

I, II, III, IV and VIII are dismissed without prejudice to Hudnell's right to amend her complaint after the PCHR dismisses her charge, or after October 25, 2020. Count X is dismissed with prejudice.

    An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.