IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA R. HUDNELL | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 20-01621 |
| v. | : | |
| THOMAS JEFFERSON UNIVERSITY, HOSPITAL, INC. | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

## THIRD AMENDED COMPLAINT

1. Plaintiff Donna Hudnell brings this action against her former employer Defendant Thomas Jefferson University Hospital, Inc. ("TJUH") for unlawfully terminating her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq*. ("PHRA"), the Philadelphia Fair Practices Ordinance, Phila. Code §9-1101, *et seq*. ("PFPO"), and the Pennsylvania Medical Marijuana Act, 35 P.S. § 1023.2103(b)(1) ("MMA").

## PARTIES

2. Plaintiff, Donna Hudnell, is an individual and citizen of the Commonwealth of Pennsylvania. She resides in Chester, Pennsylvania.

3. At all times relevant to this Action, Hudnell was disabled under the PHRA and PFPO because she suffered from a herniated disk and related spinal injuries, which substantially limits one or more major life activities, and/or had a record of impairment and/or was regarded as having such impairment.

4.	At all times relevant to this Action, TJUH employed Hudnell at its 833 Chestnut Street, Philadelphia, Pennsylvania location.

5.	Defendant TJUH is a non-profit corporation existing under Pennsylvania law with a place of business at 111 South 11th Street, Philadelphia, Pennsylvania.

6.	At all times relevant to this Action, TJUH employed more than five hundred (500) employees.

7.	At all times relevant to this Action, TJUH acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with TJUH and in furtherance of its business.

8.	At all times relevant to this Action, TJUH was an employer within the meaning of Title VII, Section 1981, PHRA, PFPO, and MMA.

9.	At all times relevant to this Action, Hudnell was an employee within the meaning of Title VII, Section 1981, PHRA, PFPO, and MMA.

## JURISDICTION AND VENUE

10.	This Court has jurisdiction over Count 6 (1981) and Count 7 (Title VII) under 28 U.S.C. § 1331.

11.	This Court has jurisdiction over Counts 1, 3, 8 (PHRA), Counts 2, 4, 9 (PFPO), and Count 5 (MMA) under 28 U.S.C. § 1367.

12.	Venue is proper under 28 U.S.C. §1391(b).

13.	On October 25, 2019, Hudnell filed a Charge of Discrimination with the Equal Employment Opportunities Commission ("EEOC"). (A copy of Hudnell's Charge of Discrimination is attached as Exhibit A.)

14. Hudnell included the acts of discrimination alleged in this Action in her Charge. *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984) (*per curiam*) (holding that the relevant test for administrative exhaustion "is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.")

15. On January 7, 2020, the EEOC issued Hudnell a Dismissal and Notice of Rights. (A copy of Hudnell's Dismissal and Notice of Rights is attached as Exhibit B.)

16. On March 20, 2020, Hudnell filed her *pro se* Complaint. (Doc. 2.)

17. Hudnell has complied with all administrative prerequisites for the commencement of this action.

## FACTUAL ALLEGATIONS

18. In May 2014, First PRO Staffing Agency assigned Hudnell to work at TJUH.

19. In July 2016, TJUH hired Hudnell as a Security Analyst I in the IS&T Department.

20. As a Security Analyst I, Hudnell was responsible for ensuring that TJUH security controls were properly set and maintained to safeguard TJUH's network and devices.

21. At the time of her termination, Shelby Wyatt supervised Hudnell.

22. During her tenure at TJUH, Hudnell consistently performed her job in an excellent manner.

23. In 2018, Hudnell experienced significant pain due to her disabilities that impaired her ability to perform manual tasks, walk, and sleep.

24. On August 21, 2018, Hudnell visited Dr. Bracken P. Babula, MD, a TJUH internal medicine specialist, to treat her disabilities.

25. Dr. Babula certified Hudnell to use medicinal marijuana because her disabilities are considered a "serious medical condition" under the MMA. *See* 35 P.S. § 10231.103.

26. Near the end of August 2018, Hudnell began using medicinal marijuana legally under Pennsylvania law.

27. Hudnell also received one epidural injection in April 2019 and another in May 2019 in order to alleviate the pain caused by her disabilities.

28. In May 2019, Hudnell began experiencing increased pain due to her disabilities, which even further limited her ability to perform manual tasks, walk, and sleep.

29. Due to her increased pain, Hudnell requested to work from home full-time as a reasonable accommodation for her disabilities, which TJUH granted in May 2019.

30. In July 2019, Hudnell had an accident, which exacerbated her disabilities.

31. After the accident, Hudnell was effectively incapacitated for long periods of time.

32. Even when she was not incapacitated, she was unable to walk or sit for periods of time.

33. As a result of Hudnell's disabilities, her doctor determined that it was medically necessary for her to take a leave of absence and make plans to undergo spinal surgery.

34. Although Hudnell could alleviate some of her pain by having surgery, her surgery would not completely heal her disabilities.

35. In July 2019, TJUH approved Hudnell for medical leave from July 5, 2019 to September 24, 2019.

36. In October 2019, Hudnell requested to return to work on the conditions that she be allowed to work from home at fifty (50) percent of her normal hours.

37. TJUH informed Hudnell that she was required to submit a doctor's note clearing her to return to work and undergo a drug test because she had been on leave for over ninety (90) days.

38. In October 2019, Hudnell's doctor cleared Hudnell to return to work on the conditions that she be allowed to work from home at fifty (50) percent of her normal hours.

39. On October 11, 2019, Hudnell visited TJUH in order to take a drug test.

40. The TJUH nurse informed Hudnell that she was required to provide prescriptions for her medications.

41. Hudnell gave the TJUH nurse copies of her prescriptions, including her medicinal marijuana card.

42. The TJUH nurse advised Hudnell that her medicinal marijuana card had expired in August 2019.

43. Hudnell had successfully renewed her medicinal marijuana card registration on August 22, 2019; however, Dr. Babula had not recertified Hudnell to continue using medicinal marijuana.

44. Hudnell told the TJUH nurse that she had an appointment scheduled with Dr. Babula on October 16, 2019 to get recertified.

45. After mentioning that her card expired, the TJUH nurse asked Hudnell for a urine sample and continued the drug test.

46. Hudnell then asked the nurse if she could return to work on Monday, October 14, 2019.

47. The TJUH nurse told Hudnell that she could not return to work on Monday if her drug test was "positive" because the urine sample would need to be sent to a third party lab.

48. Hudnell told the nurse that she was going to test positive for her prescribed medications, including medicinal marijuana.

49. Hudnell also told the TJUH nurse that she was permitted to work when she was hired in July 2016 even though she tested positive for prescription medications.

50. Hudnell was not using medicinal marijuana when she was hired in 2016.

51. In response, the TJUH nurse told Hudnell to refer to the TJUH drug and alcohol policy and provided her with a copy of it.

52. Hudnell asked if she could submit her renewed medical marijuana card after Dr. Babula recertified her, and the TJUH nurse told her that she could not submit the renewed card and to speak with human resources for further instructions.

53. The TJUH nurse knew that Hudnell used medicinal marijuana because of her disabilities.

54. The TJUH nurse did not engage in a good faith effort to determine if TJUH could accommodate Hudnell's disabilities.

55. On October 16, 2019, Dr. Babula recertified Hudnell to use medicinal marijuana in accordance with the MMA.

56. On October 20, 2019, Hudnell completed the medicinal marijuana card renewal process and had a valid medicinal marijuana card.

57. After leaving Dr. Babula's office, TJUH Human Resources Business Partner Erik Johnson called Hudnell and told her that TJUH decided to terminate her.

58. Hudnell told Johnson that Dr. Babula had just recertified her for medicinal marijuana use, and she successfully renewed her card.

59. Hudnell offered to go speak with Johnson in-person.

60. Johnson told Hudnell that he was about to leave and could not meet with her, and he told her that he would send her a termination letter.

61. Johnson also stated that it did not matter that Dr. Babula had recertified her use of medicinal marijuana because her medicinal marijuana card was expired at the time of her drug test.

62. Johnson further told Hudnell that she could appeal the termination under TJUH's grievance procedures.

63. On October 20, 2019, Hudnell emailed Johnson, copying her supervisor, to tell him that that she received a letter, but she did not understand her right to appeal the termination and would like to speak with him.

64. On October 21, 2019, Johnson emailed Hudnell the following:

> As discussed on October 16, 2019, I would include the Grievance Procedures policy in the information I sent via overnight delivery to you. While you have it via that mail, for ease, I am copying/pasting the policy below my email signature.
>
> The Grievance Procedures for a termination of employment would start on Step Three. As referenced in the 10/16 letter, you can send your grievance to Alyse Williams at [email address redacted]. Your grievance is a letter to Alyse indicating your reasoning for grieving the situation. My recommendation is to submit via email for ease and speed. Alyse will receive your request for grievance and process from there. Please note there are timelines associated with filing a grievance and in this case have 5 days from date of termination to file.

65. Johnson did not have any further communications with Hudnell after his October 21, 2019 email.

66. Johnson did not engage in a good faith effort to determine if TJUH could accommodate Hudnell's disabilities.

67. On October 21, 2019, Hudnell emailed Williams the following:

> I was terminated from Jefferson due to an expired licensed marijuana card issued by Dr. Baraken(sic) Babula (Jefferson Internal medicine). I feel like I was being setup to fail because when the nurse copied my card she mentioned that it was expired and instead of explaining the they will not accept an expired card, she proceeded with the drug screening.

7

> My card was issued in August 2018 and expired in August 2019. Administering the drug screening will show marijuana for at least of to 90 days and I have medication that was purchased at the dispensary. Dr. Babula has agreed to write a letter to explain these facts. The card was renewed by Dr. Babula on 10/16/19.
>
> I felt this was an unfair determination since no one bothered to ask questions of me or my doctor as to how the process works and that the renewal process is as convenient as having the doctor push a button to renew my registration. I asked the nurse if I could bring back the renewed card and she said no and to speak to my HR rep for further instructions.
>
> Please let me know if there is anything else you require from or my doctor.

68. Williams never responded to Hudnell.

69. On October 23, 2019, TJUH Human Resources Business Partner Kristin Kelleher emailed Hudnell stating that she had been assigned to her grievance and asked for her availability for a call.

70. On October 24, 2019, Hudnell spoke with Kelleher.

71. During the call, Hudnell explained that she felt that the nurse who administered her drug test failed to engage in a good faith discussion with her about Hudnell's expired medicinal marijuana card and need for medicinal marijuana to treat her disabilities.

72. Kelleher knew that Hudnell used medicinal marijuana because of her disabilities.

73. Hudnell explained that the TJUH nurse failed to tell her that the drug test would be considered "positive" for illegal drugs due to her expired medicinal marijuana card.

74. Hudnell further explained that the TJUH nurse did not suggest that she postpone her drug test until after Dr. Babula recertified Hudnell for medicinal marijuana use on October 16, 2019.

75. Hudnell also told Kelleher that Dr. Babula had renewed her medicinal marijuana card, and she could send the renewed card to Kelleher.

76. Kelleher told Hudnell that it did not matter that Dr. Babula recertified her card because it was not certified at the time of the drug test.

77. Kelleher also told Hudnell that it would not help her case if she sent TJUH her renewed medicinal marijuana card.

78. Kelleher told Hudnell that it may help her case if Dr. Babula provided TJUH with a letter, but Kelleher did not specify what information she needed to learn from Dr. Babula.

79. After speaking with Kelleher, Hudnell emailed Dr. Babula, copying Kelleher, and asked him to provide a letter.

80. Hudnell stated in the email that Kelleher did not "say specifically what she needs the letter to say, but I would appreciate if I were not terminated on a technicality."

81. Hudnell then wrote about TJUH's lack of good faith communication during the drug test, stating that "The fact that I have a certified medical card and made the nurse aware that I had a schedule appointment to have the card renewed the next day, should have prompted her to advise me to see the doctor before administering the drug test. I would have had no problem waiting until after my visit with you to have my card renewed and then returning to work per the note from my pain management doctor."

82. Hudnell then wrote that "[t]he Jefferson HR Policy states that 'an employee who obtains a registration card from the state's recognized agent to certify medical marijuana must submit a copy of the registration card with a letter to Jefferson Occupational Health Network requesting a reasonable accommodation. Jefferson will then enter into a discussion with the individual and, where applicable, the employee's health care provider to determine if such accommodation is reasonable and appropriate under the circumstances.' To my knowledge no one from HR discussed any such accommodations."

83. Hudnell wrote that "the Jefferson drug and alcohol policy was not honored by the Jefferson Occupational Health network … ."

84. Hudnell also stated that she was aware of other employees who "have tested positive for illegal substances [and who] are given opportunity to complete the appropriate rehabilitation or counseling programs (per the Jefferson policy) and not dismissed immediately … ."

85. Kelleher did not responded to Hudnell's email.

86. On October 25, 2019, Dr. Babula wrote the following to Kelleher:

I certified for Ms. Hudnell for the PA medical marijuana program on 8/21/2018 due to chronic severe back pain. She returned to my office on 10/16/2018(sic), at which I time I confirmed that her chronic back pain was an ongoing medical issue and warranted recertification for the PA medical marijuana program.

She would have been eligible to purchase a month's supply of medical marijuana at a dispensary up until her card expired on 8/21/2019. Due to her chronic use of medical marijuana and the length of time THC remains in the urine, I would expect her urine drug screen to remain positive throughout the 2 months of time between her expired card and her recertification.

87. After reading this letter, Kelleher understood that Dr. Babula believed that Hudnell had legally purchased the medicinal marijuana that resulted in her positive drug test.

88. Kelleher never responded to Dr. Babula's October 25, 2019 letter.

89. Kelleher never spoke to Dr. Babula about Hudnell.

90. On October 29, 2019, Kelleher called the TJUH nurse who administered Hudnell's drug test.

91. The TJUH nurse took notes of the call.

92. In the call notes, the TJUH nurse wrote that Kelleher had sent her Dr. Babula's October 25, 2019 letter.

93. The TJUH nurse expressed doubts about Dr. Babula's medical opinion that Hudnell had tested positive for medicinal marijuana that she purchased legally: "Kristin sent me the note from the doctor re: continued positive due to last use when certification was valid. I advised that it could be true. It also could be true that she was using marijuana without certification."

94. The TJUH's nurse's belief that Hudnell was using medicinal marijuana illegally despite Dr. Babula's medical opinion was based upon racial stereotypes that are detrimental to black Americans.

95. Under Pennsylvania law, Hudnell lawfully purchased and used the medicinal marijuana that resulted in her positive drug test.

96. On October 29, 2019, Kelleher wrote to Hudnell:

> This letter is in response to the grievance you filed regarding your termination on October 16, 2019 for a violation of Jefferson's Drug and Alcohol Policy #200.75.
>
> On October 24, 2019, we spoke and you presented your case for requesting reinstatement of your position. Based on the information I received from you, your physician, and Jefferson's Occupational Health Network, I completed a careful review. Per Jefferson's Return to Work Clearance Policy #200.11, a drug screen was conducted on October 11, 2019, in which resulted positive for a prohibited substance. Because you did not have an active card/certification for medical marijuana use, I have decided that there was insufficient evidence to support overturning the original discipline that was issued. Therefore, your grievance is denied.
>
> This is the final decision by Thomas Jefferson University, and this matter is subsequently closed.

97. TJUH did not ask Hudnell if she was capable of performing the essential functions of her position while engaging in the off-duty use of medicinal marijuana.

98. Hudnell did not pose any risk to the safety of patients or others due to her off-duty use of medicinal marijuana.

11

99. TJUH also did not ask Hudnell if there was an equally effective, alternative medication to medicinal marijuana that she could use to treat her disabilities that was not objectionable to TJUH.

100. Hudnell was capable of performing the essential functions of her position with reasonable accommodations.

101. Upon information and belief, TJUH did not terminate James Doe, a white man who was not certified to use medicinal marijuana under the MMA, after he tested positive for illegal drugs in 2015.[1]

102. Doe did not request any reasonable accommodation due to a disability when he tested positive for illegal drugs.

103. TJUH allowed Doe to seek treatment instead of terminating him.

104. TJUH's decision not to terminate Doe is evidence that TJUH unlawfully considered Hudnell's race, status as an individual certified to use medicinal marijuana under the MMA, and request for an accommodation when it made the decision to terminate her.

105. Upon information and belief, TJUH has accommodated the use of medicinal marijuana by white employees other than Doe.

106. As a direct and proximate result of the unlawful conduct of TJUH complained of in this Action, Hudnell has in the past incurred and in the future will incur a loss of earnings and/or earning capacity, loss of health insurance, loss of other benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and/or loss of life's pleasures, the full extent of which is not known at this time.

---

[1] Out of respect for Doe's privacy, Hudnell has withheld the individual's real last name in this public filing.

107. As a direct and proximate result of TJUH's unlawful behavior, Hudnell has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

108. Hudnell is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the unlawful behavior complained of herein unless and until this Court grants the relief requested herein.

**Counts 1-2**
**Disability Discrimination - Failure to Accommodate - (1) PHRA and (2) PFPO**

109. Hudnell incorporates by reference the paragraphs above.

110. Hudnell suffered from a herniated disk and related spinal injuries, which substantially limits one or more major life activities, and/or had a record of impairment and/or was regarded as having such impairment.

111. Hudnell disabilities continue to substantially limit her ability to perform manual tasks, walk, and sleep.

112. TJUH was aware Hudnell's disabilities, and TJUH perceived Hudnell as disabled.

113. Hudnell requested reasonable accommodations for her disabilities, including but not limited to, postponing her drug test, waiving her drug test, or permitting her to use an alternative medication.

114. TJUH failed to make a good faith effort to engage in the interactive process with Hudnell by, including but not limited to, failing to adhere to its drug policy when it did not "seek to accommodate" Hudnell by reviewing Hudnell's "job functions and ability to maintain the safety of patients and others."

115. TJUH failed to make a good faith effort to engage in the interactive process with Hudnell by, including but not limited to, failing to ask Hudnell if there was an alternative, equally effective medication she could use that was not objectionable to TJUH.

116. TJUH could have reasonably accommodated Hudnell's disabilities but-for TJUH's lack of good faith.

117. Instead of accommodating Hudnell's disabilities, TJUH terminated Hudnell.

118. By committing the foregoing acts of discrimination against Hudnell, TJUH violated the PHRA and PFPO.

119. As a direct and proximate result of TJUH's violation of the PHRA and PFPO, Hudnell has sustained the injuries, damages, and losses set forth herein.

120. TJUH acted willfully and intentionally, and with malice and/or reckless indifference to Hudnell's rights, thereby warranting the imposition of punitive damages under the PFPO.

121. Hudnell is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

### Counts 3-4
### Disability Discrimination - Retaliation - (3) PHRA and (4) PFPO

122. Hudnell incorporates by reference the paragraphs above.

123. Hudnell engaged in a protected activity when she requested an accommodation due to her disabilities in October 2019.

124. TJUH retaliated against Hudnell for requesting a reasonable accommodation by terminating her.

125. TJUH's articulated reason for terminating Hudnell is a pretext.

126. Hudnell's engaging in protected activity, by requesting a reasonable accommodation in connection with her disabilities, was a motivating and/or determinative factor in connection with TJUH's decision to terminate Plaintiffs employment.

127. By committing the foregoing acts of discrimination against Hudnell, TJUH violated the PHRA and PFPO.

128. As a direct and proximate result of TJUH's violation of the PHRA and PFPO, Hudnell has sustained the injuries, damages, and losses set forth herein.

129. TJUH acted willfully and intentionally, and with malice and/or reckless indifference to Hudnell's rights, thereby warranting the imposition of punitive damages under the PFPO.

130. Hudnell is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

## Count 5
## MMA Discrimination

131. Hudnell incorporates by reference the paragraphs above.

132. Section 2103(b) of the MMA states that "[n]o employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee regarding an employee's compensation, terms, conditions, location or privileges solely on the basis of such employee's status as an individual who is certified to use medical marijuana." 35 P.S. § 10231.2103(b).

133. TJUH's articulated reason for terminating Hudnell is a pretext.

134. TJUH would not have terminated Hudnell but-for her "status as an individual who is certified to use medical marijuana." 35 P.S. § 10231.2103(b).

135. At all times relevant to this Action, Hudnell used medicinal marijuana lawfully in accordance with 35 P.S. § 303(i).

136. After Hudnell spoke with Johnson on October 20, 2019, TJUH knew that Hudnell had recertified her medicinal marijuana card in accordance with the MMA.

137. Moreover, based upon the October 25, 2019 letter from Dr. Babula, TJUH knew that Dr. Babula believed that Hudnell tested positive for medicinal marijuana that she purchased legally.

138. By committing the foregoing acts of discrimination against Hudnell, TJUH violated the MMA.

139. As a direct and proximate result of TJUH's violation of the MMA, Hudnell has sustained the injuries, damages, and losses set forth herein.

140. TJUH acted willfully and intentionally, and with malice and/or reckless indifference to Hudnell's rights, thereby warranting the imposition of punitive damages under the MMA.

141. Hudnell is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

**Counts 6-9**
**Race Discrimination - (6) Section 1981, (7) Title VII, (8) PHRA, and (9) PFPO**

142. Hudnell incorporates by reference the paragraphs above.

143. Hudnell is a black woman.

144. TJUH's articulated reason for terminating Hudnell is a pretext.

145. Hudnell's race was a motivating and/or determinate factor in TJUH's decision to terminate her.

146. Doe, a white man, tested positive for an illegal drug, but TJUH did not terminate him.

147. Upon information and belief, TJUH has accommodated the use of medicinal marijuana by white employees other than Doe.

148. By committing the foregoing acts of discrimination against Hudnell, TJUH violated Title VII, Section 1981, PHRA, and PFPO.

149. As a direct and proximate result of TJUH's violation of Title VII, Section 1981, PHRA, and PFPO, Hudnell has sustained the injuries, damages, and losses set forth herein.

150. TJUH acted willfully and intentionally, and with malice and/or reckless indifference to Hudnell's rights, thereby warranting the imposition of punitive damages under Title VII, Section 1981, and PFPO.

151. Hudnell is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

## JURY TRIAL

152. Hudnell demands a trial by jury on all claims triable by a jury in this lawsuit.

## RELIEF

WHEREFORE, Hudnell seeks damages and legal and equitable relief in connection with TJUH's improper conduct, and specifically prays that the Court grant the following relief to Hudnell by:

a. declaring the acts and practices complained of herein to be in violation of the PHRA;

b. declaring the acts and practices complained of herein to be in violation of the PFPO;

c. declaring the acts and practices complained of herein to be in violation of the MMA;

d. declaring the acts and practices complained of herein to be in violation of the Title VII;

e. declaring the acts and practices complained of herein to be in violation of the Section 1981;

f. enjoining and restraining permanently the violations alleged herein;

g. awarding Hudnell back-pay;

h. awarding Hudnell front-pay;

i. awarding interest;

j. awarding compensatory damages to Hudnell for past and future emotional upset and pain and suffering;

k. awarding punitive damages;

l. awarding Hudnell the costs of this action, together with reasonable attorneys' fees;

m. awarding Hudnell such other damages as are appropriate under the PHRA, PFPO, MMA, Title VII, and Section 1981; and

n. granting such other and further relief as this Court deems appropriate.

Date: November 4, 2020                                                 Respectfully Submitted,

*/s/ Greg Harold Greubel*
Greg Harold Greubel
Greubel Legal Services
PA Bar No. 321130
744 South Street, Suite 715
Philadelphia, PA 19147
267-627-4889
greg@glshelp.com