**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DONNA R. HUDNELL,** | Civil Action No. 2:20-cv-01621-GJP |
| **Plaintiff,** | Hon. Gerald J. Pappert, U.S.D.J. |
| **v.** | |
| **THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC.,** | |
| **Defendant.** | |

**REPLY BRIEF IN FURTHER SUPPORT OF
THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC.'S
MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT IN PART**

**POST & SCHELL, P.C.**

Sidney R. Steinberg, Esquire
ssteinberg@postschell.com
Daniel F. Thornton, Esquire
dthornton@postschell.com
Four Penn Center
1600 John F. Kennedy Blvd., 14th Floor
Philadelphia, PA 19103
215-587-1000

*Counsel for Defendant*

I.      **INTRODUCTION**

Defendant Thomas Jefferson University Hospitals, Inc. ("Jefferson"), has moved to dismiss Plaintiff Donna R. Hudnell's Pennsylvania Human Relations Act ("PHRA" or "the Act") disability-discrimination and retaliation counts for failure to state a claim.  Contrary to Plaintiff's arguments in opposition, a plain reading of the PHRA makes clear that medical marijuana use is not a PHRA-protected "disability" and that the use of marijuana under any circumstances is not a reasonable accommodation under the Act.  Indeed, the Legislature's express refusal to modify the PHRA when enacting the Medical Marijuana Act ("MMA") demonstrates its intent *not* to expand the PHRA to cover medical marijuana use.  For these reasons, Plaintiff has not stated a disability-discrimination claim, nor has she stated a viable retaliation claim.  Counts I and III of her Third Amended Complaint ("TAC") should therefore be dismissed for failure to state a claim upon which relief can be granted.

II.     **ARGUMENT**

Plaintiff attempts to state claims for disability discrimination under the PHRA based on an alleged failure to accommodate (Count One) and retaliation under the PHRA (Count Three). For the reasons set forth herein, Counts One and Three fail to state any viable claim and should be dismissed with prejudice as a matter of law.

     A.      **A Plain Reading of the PHRA Makes Clear that Medical Marijuana Use Is
               Not a PHRA-Protected Disability**

Plaintiff's opposition is filled with feints and dodges in an effort to avoid the plain language of the PHRA.  The hyperbole of Plaintiff's arguments exposes their cumulative weakness.

The parties agree that the PHRA's definition of "handicap or disability" specifically excludes "current, illegal use of or addiction to a controlled substance, as defined in Section 102

of the Controlled Substances Act." 43 P.S. § 954(p.1)(3).  Marijuana is defined as a "controlled substance" under the CSA.  21 U.S.C. § 812(b)(1)(C); 21 C.F.R. § 1308.11(d)(23).  As Judge Nealon observed in *Palmiter v. Commonwealth Health Systems*, Docket No. 20-CV-2544 (Lacka. Co. Nov. 10, 2020), "since marijuana is considered to be an illegal 'controlled substance' under the CSA, a person currently using marijuana is expressly excluded from having an impairment that qualifies as a protected 'disability' under the plain language of [43 P.S. § 954(p.1)(3)]."  ECF No. 28-1 at 11.

Virtually every word of Plaintiff's Brief is an effort to circumvent the irresistible reasoning followed by Judge Nealon.  And the core of Plaintiff's argument is the created-from-whole-cloth notion that the PHRA integrates the federal CSA solely for the purpose of "supplying a list of controlled substances *whose legality will be determined by reference to state laws*[.]"  ECF No. 28 at 9-10 (emphasis added).  But when the Legislature wrote the language at issue, it expressly chose to define illegal use of controlled substances by reference to the CSA (and notably, at a time when marijuana use was also illegal under Pennsylvania law—such that the Legislature could have defined illegal drug use "as defined by Pennsylvania criminal statutes" or some similar verbiage).  When the Legislature later passed the MMA, it did not amend the PHRA's "handicap or disability" definition or its reliance upon the federal CSA's substance schedules.

Of course, the Legislature could have done so—it modified many other statutes when it enacted the MMA.  *See* ECF No. 28-1 at 12-13 (Nealon, J.) ("The MMA makes multiple references to other state laws and explains the effect of the MMA on those statutes.") (citing MMA §§ 302(a), 304(a), 402(c), 901(b), 1201(j)(6), 2004(a), and 2101).  Thus, the Legislature *could* have changed the PHRA but—fatally to Plaintiff's position—*chose not to do so*. *See Ross*

*v. RagingWire Telecomms., Inc.,* 42 Cal. 4th 920, 927-28, 70 Cal. Rptr. 3d 382, 388, 174 P.3d 200, 205 (2008) ("Although California's voters had no power to change federal law, certainly they were free to disagree with Congress's assessment of marijuana, and they also were free to view the possibility of beneficial medical use as a sufficient basis for exempting from criminal liability under state law patients whose physicians recommend the drug. The logic of this position, however, did not compel the voters to take the additional step of requiring employers to accommodate marijuana use by their employees. The voters were entitled to change the criminal law without also speaking to employment law."). If this Court substitutes the word "legislature" for "voters" in the above-cited passage, then the *Ross* analysis should be applied to the instant matter.

Next, Plaintiff argues that her proposed interpretation of the PHRA would "avoid" a conflict between that statute and the MMA. ECF No. 28 at 7. But Plaintiff's attempt to conjure up conflict between these two laws fails. The MMA states that MMA-authorized marijuana use shall not subject the user to criminal liability or the "den[ial of] any right or privilege, including civil penalty or disciplinary action by a Commonwealth licensing board or commission" 35 P.S. § 10231.2103(a). This section focuses upon criminal or quasi-criminal liability—not upon any affirmative "rights" created by other statutes. The PHRA's definition of "disability" excludes a list of controlled substances defined by the CSA. *See* 43 P.S. § 954(p.1)(3). The referenced language of the MMA and the PHRA's definition of "disability" pass like ships in the night— they address different issues in terms that do not conflict, and Plaintiff's strained attempt to frame them as conflicting should be rejected.

Plaintiff also places substantial reliance on the Pennsylvania Supreme Court's recent decision in *Gass v. 52nd Judicial Dist.*, 232 A.3d 706 (Pa. 2020), which invalidated a county-

level probation policy that conflicted with the MMA.  Since the case at bar concerns the interplay between two state statutes—the MMA and the PHRA—rather than conflict between state-level and county-level enactments, *Gass* is easily and entirely distinguishable.  *Accord* ECF No. 28-1 at 17 (Nealon, J.) (agreeing with the Commonwealth Court's conclusion that *Gass* is inapplicable to questions of disability discrimination).

After stripping away Plaintiff's interpretive machinations, she is left to maintain that the PHRA as written "would enforce the federal prohibition on marijuana and force MMA cardholders to choose between using their prescribed medication and their right to work free from disability discrimination[,]" such that "[Plaintiff]'s legal use of medical marijuana [would] take[] away her right to work free from disability discrimination under the PHRA."  ECF No. 28 at 8-9, 14.  There is no "conflict" between the MMA and PHRA because the statute providing the "right" to be free from disability discrimination in the workplace (the latter) specifically excludes the use of federally-defined controlled substances.  For this reason, marijuana use is not a PHRA-protected "disability," and marijuana users (medical or otherwise) have never had a PHRA protected "right" to be free from discrimination based on their marijuana use.  The MMA could not, therefore, "deny" a right that employees in Pennsylvania have never had.  *See generally James v. City of Costa Mesa,* 700 F.3d 394, 403 (9th Cir. 2012) (citations omitted) ("Under the ADA, whether a given drug or usage is 'illegal' is determined exclusively by reference to the CSA. While the ADA contains language providing a physician-supervision exemption to the 'current illegal drug user' exclusionary provisions, this exemption does not apply to medical marijuana users.").

For all these reasons, Plaintiff has not alleged discrimination based upon a PHRA-protected disability and her disability-discrimination claim should dismissed.

### B.     The Legislature's Express Refusal to Modify the PHRA When Enacting the MMA Evinces Its Intent Not to Expand the PHRA to Cover Medical Marijuana Use

Notwithstanding Plaintiff's contentions to the contrary, the Legislature's intent to continue excluding marijuana use from PHRA protection is clear from the manner in which it enacted the MMA.  When the Legislature drafted the MMA, it is presumed to have been aware of the PHRA's integration of the federal CSA schedules.  *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if [the Legislature] intends for legislation to change [an existing interpretation], it makes that intent specific."); *Everhart v. PMA Ins. Group*, 938 A.3d 301, 307 (Pa. 2007) ("It is well established that statutes are not presumed to make changes in . . . prior existing law beyond what is expressly declared in their provisions.").  Despite its awareness of the PHRA's reliance on the CSA, the Legislature did not amend—and thus presumably chose not to amend—the PHRA's definition of "handicap or disability" to cover lawful marijuana use when it passed the MMA.  In light of the Legislature's conscious choice, construing the PHRA to include marijuana use (again, medical or otherwise) would contravene this well-established canon of statutory construction.  *Accord Harrisburg Area Cmty. Coll. v. Pa. Human Rels. Comm'n*, 2020 Pa. Commw. LEXIS 722, at *24 (Commw. Ct. Oct. 29, 2020) ("*HACC*") ("The fact that the MMA explicitly amended the Pennsylvania Drug Act, but did not specifically amend [the] PHRA . . . can only be interpreted as meaning the General Assembly did not intend to amend [the] PHRA[.]").

### C.     Plaintiff Has Not Stated a Facial PHRA Disability Discrimination Claim

Since Plaintiff requested accommodation solely for her marijuana use—which as detailed above is not a PHRA-protected "disability"—she has no possible predicate for a failure-to-accommodate claim.  Indeed, where "'reasonable accommodation is impossible, *nothing more*

5

*than communication of this fact is required.*'"  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296,

317 (3d Cir. 1999) (emphasis added) (quoting *Mengine v. Runyon*, 114 F.3d 415, 420-21 (3d Cir.

1997)); *accord id.* at 318 ("The ADA, as far as we are aware, is not intended to punish

employers . . . if, in fact, no accommodation for the employee's disability could reasonably have

been made."); *Thompson v. AT&T Corp.*, 371 F. Supp. 2d 661, 678 (W.D. Pa. 2005) ("The

Defendant cannot be held liable under the ADA when any possible accommodation that could

have been given . . . would still not allow the Plaintiff to return to work.").

In order to avoid this conclusion, Plaintiff attempts to distinguish her situation from those

of the marijuana users in *Palmiter* and *HACC*, claiming that she "is not arguing that her use of

medical marijuana itself is a disability."  ECF No. 28 at 12.  Since all of Plaintiff's requested

accommodations—delaying her drug test, waiving her drug test, exploring alternative treatments

to marijuana—directly address her marijuana use, her proposed distinction fails.

Moreover, none of Plaintiff's suggested accommodations have ever been recognized as a

reasonable accommodation under federal or state law.

First, with regard to drug test delays, "it is reasonable and commonplace for an employer

to request a drug test be carried out immediately[.]"  *Brown v. Priority Health Care Grp.*, LLC,

No. 1:19-cv-00116, 2019 U.S. Dist. LEXIS 169580, at *9 (M.D. Pa. Oct. 1, 2019).  Among other

things, "delay could result in the person's body metabolizing any present drugs or enable the

person to somehow otherwise obstruct the test."  *Id.*  Critically, all of Plaintiff's accommodation

suggestions center on her marijuana use—not on her unspecified "disabilities."  *See Wilkinson v.

Marvin E. Klinger, Inc.*, No. 4:15-cv-01916, 2017 U.S. Dist. LEXIS 199497, at *22 (M.D. Pa.

Dec. 5, 2017) ("[Plaintiff's] reasonable accommodation claim fails because . . . the

accommodation requested was not for her disability, but rather as a possible end run around her

6

failed drug test.").  As these authorities make clear, postponing a drug test is not a reasonable accommodation.

Second, with regard to Plaintiff's proposed drug test waiver, though this specific "accommodation" does not appear to have been addressed yet in Pennsylvania, courts in nearby states have uniformly rejected it.  *See, e.g.*, *Cotto v. Ardagh Glass Packing, Inc.*, No. 18-1037, 2018 U.S. Dist. LEXIS 135194, at *25 (D.N.J. Aug. 10, 2018) ("Plaintiff cannot compel an employer to waive a drug test as an accommodation for an employee using marijuana, and so Plaintiff has failed to state a claim for a failure to accommodate.").

Third, with regard to Plaintiff's contention that Jefferson should have worked with her to determine whether her underlying condition could have been treated with an alternative medication, there appears to be no precedent whatsoever for this kind of "accommodation" in Pennsylvania, or indeed anywhere in the Third Circuit.

Since none of Plaintiff's suggested "accommodations" are recognized as being legally "reasonable," she has failed to allege that she can perform her job with reasonable accommodations and has thus failed to state a *prima facie* case of disability discrimination.

### D.    Plaintiff Has Not Stated a Facial PHRA Retaliation Claim

In response to Jefferson's contention that she never engaged in protected activity (because requesting the right to use an illegal controlled substance is *per se* unreasonable), Plaintiff argues that she requested that Jefferson accommodate her marijuana use under a reasonable, good-faith belief that she was entitled to such an accommodation.  ECF No. 28 at 18. But such is an impossibility, as the plain language of the PHRA states that marijuana use is not a "disability" and thus, its usage cannot ever be considered or believed to be "reasonable" in terms of an accommodation.  One cannot maintain a "reasonable" or "good-faith" belief that directly contradicts the clear and unequivocal text of the controlling statute.

In substance, Plaintiff asked Jefferson to accommodate an illegal act—marijuana usage without a valid medical marijuana card (and, as set forth in the TAC, Plaintiff was aware that at the time she took the drug test, she was not legally "authorized" to take medical marijuana). Requesting an illegal or impossible accommodation is not—and cannot be—protected activity. *See Shellenberger v. Summit Bancorp*, 318 F.3d 183, 191 (3d Cir. 2003) ("Congress clearly did not intend to extend the reach of the ADA's umbrella to employees whose motivation for requesting an accommodation is something other than a good faith belief that an accommodation under the Act is necessary or appropriate.").

Just like the claims advanced in *Palmiter*, Plaintiff's disability-discrimination and retaliation claims must rise or fall together here. As Judge Nealon reasoned in *Palmiter*, "[b]y virtue of [the employee]'s failure to allege a 'disability' under the PHRA, she is unable to state a claim for 'employment discrimination forbidden by the [PHRA].' [Thus] she cannot establish the first element of a retaliation claim by demonstrating that she engaged in 'protected activity[.]'" ECF No. 28-1 at 21-22. The same result should obtain here.

### E.     This Court Should Be Guided by the *HACC* Decision in Predicting the Pennsylvania Supreme Court's Holding

As discussed in Jefferson's Opening Brief, federal courts "adjudicating a case under state law . . . are not free to impose [their] own view of what state law should be; rather, [they] are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before [them]." *Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996) (citations omitted). Moreover, a federal court cannot disregard the decision of an intermediate appellate court unless it is convinced that the state's highest court would decide otherwise. *See Rolick v. Collins Pine Co.,* 925 F.2d 661, 664 (3d Cir. 1991). Plaintiff ignores, and apparently would have this Court ignore as well, the precedent of *Rolick*. This

Court, however, is not free to do so.  The *HACC* decision presents a thorough and well-reasoned basis for finding that the PHRA does not conflict with the MMA in this circumstance and, in addition to the arguments set forth above and in the Opening Brief, should guide this Court's decision here.

## III.    <u>CONCLUSION</u>

For all these reasons, Jefferson's Motion to Dismiss should be granted and Counts One and Three of Plaintiff's TAC should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

**POST & SCHELL, P.C.**

Dated:  <u>December 14, 2020</u>          By:      <u>*/s/ Sidney R. Steinberg*</u>
SIDNEY R. STEINBERG, ESQUIRE
ssteinberg@postschell.com
DANIEL F. THORNTON, ESQUIRE
dthornton@postschell.com
Four Penn Center
1600 John F. Kennedy Blvd., 14th Floor
Philadelphia, PA 19103
215-587-1000

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2020, I caused the foregoing Reply Brief in Further

Support of Defendant Thomas Jefferson University Hospitals, Inc.'s Motion to Dismiss

Plaintiff's Third Amended Complaint in Part to be served via electronic mail and electronic

filing upon the following persons:

Greg H. Greubel, Esq.
Greubel Legal Services
744 South Street, Suite 715
Philadelphia, PA 19147
267-627-4889
greg@glshelp.com

*Counsel for Plaintiff*

**POST & SCHELL, P.C.**

Dated: <u>December 14, 2020</u>          By:     */s/ Daniel F. Thornton*
                                                  SIDNEY R. STEINBERG, ESQUIRE
                                                  ssteinberg@postschell.com
                                                  DANIEL F. THORNTON, ESQUIRE
                                                  dthornton@postschell.com
                                                  Four Penn Center
                                                  1600 John F. Kennedy Blvd., 14th Floor
                                                  Philadelphia, PA 19103
                                                  215-587-1000

                                                  *Counsel for Defendant*